UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SMITH & NEPHEW, INC.,

    Plaintiff,

v.

SURGICAL SOLUTIONS, LLC,

    Defendant.

2004 JUL -9 P 6: 05

Civ.Act. No. 03 CV 12310 PBS

---

### PLAINTIFF SMITH & NEPHEW, INC.'S RESPONSE TO DEFENDANT SURGICAL SOLUTIONS, LLC'S MOTION LEAVE TO FILE COUNTERCLAIMS

Plaintiff Smith & Nephew, Inc. ("Smith & Nephew") opposes only two specific parts of Defendant Surgical Solutions, LLC's ("Surgical Solutions") Motion for Leave to File Counterclaims.

Specifically, Smith & Nephew does not oppose those portions of Surgical Solutions' Motion which seek to add a counterclaim for declaratory judgment of non-infringement (*i.e.*, the First Claim for Relief, as set forth in paragraphs 27-30 of the proposed Counterclaim). Smith & Nephew also does not oppose those portions of Surgical Solutions' Motion which seek to add a counterclaim for declaratory judgment of invalidity under 35 U.S.C. §§ 102 and/or 103 (*i.e.*, *portions* of the Second Claim for Relief, as set forth in paragraphs 31-34 of the proposed Counterclaim). These portions of Surgical Solutions' proposed Counterclaim are proper because they either fairly reflect affirmative defenses that have been pled by Surgical Solutions and/or they relate to issues on which Surgical Solutions has provided discovery regarding its defenses.

However, Smith & Nephew *does oppose* those portions of Surgical Solutions' Motion which seek to add a counterclaim for declaratory judgment of unenforceability (*i.e.*, the third Claim for Relief, as set forth in paragraphs 35-38 of the proposed Counterclaim) because such claim would be futile and is also not properly pled as required by the applicable caselaw. Smith & Nephew also opposes those portions of Surgical Solutions' Motion which seek to add a counterclaim for declaratory judgment of invalidity under 35 U.S.C. §§ 101, 112, 115 and/or 116 (*i.e.*, *portions* of the Second Claim for Relief, as set forth in paragraphs 31-34 of the proposed Counterclaim) because its scope extends far beyond the invalidity contentions Surgical Solutions has provided in discovery, and appears to be brought in bad faith or with dilatory motive.

## I.    SURGICAL SOLUTIONS PROPOSED COUNTERCLAIM FOR DECLARATORY JUDGMENT OF UNENFORCEABILITY IS FUTILE AND HAS NOT BEEN PROPERLY PLED

Surgical Solutions overstates Fed. R. Civ. P. Rule 15(a)'s liberality toward allowing amendment of pleadings. For example, it is well-settled that a motion for leave to amend should be denied when the proposed amendment would be futile. *Freedom Wireless, Inc. v. Boston Comms. Grp., Inc.*, 218 F. Supp. 2d 19, 21 (D. Mass. 2002). An amendment is futile if, for example, it fails to state a claim upon which relief can be granted. *See, e.g., MacNeill Eng'g Co. v. Trisport. Ltd., 59 F. Supp. 2d 199, 200-201 (D. Mass. 1999).* Here, because Surgical Solutions has improperly and inadequately pled inequitable conduct, those portions of the Motion which seek leave to amend to add a claim of unenforceability (*i.e.*, the Third Claim for Relief) should be denied.

The elements to support a charge of inequitable conduct are well known. A patent may be rendered unenforceable for inequitable conduct during prosecution of a patent only if (1) material information was withheld or misrepresented (2) with the intent to

2

deceive. *See PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 318 (Fed. Cir. 2000). Both materiality and intent to deceive must be proven with clear and convincing evidence. *Li Second Family Ltd. P'ship v. Toshiba Corp.*, 231 F.3d 1373, 1378 (Fed. Cir. 2000).

Inequitable conduct is a species of *fraud*. Accordingly, courts have consistently held that allegations of inequitable conduct must be pled with particularity, and must comply with the special pleading requirements of Fed. R. Civ. P. 9(b).[1] This rule provides, in relevant part, that "[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." As commentators have noted, satisfying this rule

> usually requires the claimant to allege at a minimum the identity of the person who made the fraudulent statement, the time, place, and content of the misrepresentation, the resulting injury, and the method by which the misrepresentation was communicated.
>
> In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading.

---

[1] *See, e.g., Davidson v. Yihai Cao*, 211 F. Supp. 2d 264, 285 (D. Mass. 2002); *Regents of the Univ. of Cal. v. Oncor, Inc.*, 44 USPQ2d 1321, 1330 (N.D. Cal. 1997); *Emerson Elec. Co. v. Encon Indus. L.P.*, 42 USPQ2d 1575, 1576 (E.D. Mo. 1997); *Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Inc.*, 42 USPQ2d 1369, 1372 (N.D. Ill. 1996); *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 41 USPQ2d 1770, 1775 (N.D. Cal. 1996); *Wicker Group v. Standard Register Co., Inc.*, 33 USPQ2d 1678, 1679 (E.D. Va. 1994); *Chiron Corp. v. Abbott Labs.*, 31 USPQ2d 1848, 1850 (N.D. Cal. 1994) ("the weight of authority, and sound public policy all require that pleadings which allege inequitable conduct before the PTO comply with Rule 9(b)"); *Laitram Corp. v. OKI Elec. Indus. Co., Ltd.*, 30 USPQ2d 1527, 1533 (E.D. La. 1994); *Energy Absorption Sys., Inc. v. Roadway Safety Serv., Inc.*, 28 USPQ2d 1079, 1080 (N.D. Ill. 1993); *IPPV Enters. v. Cable/Home Communications*, 25 USPQ2d 1894, 1896 (S.D. Cal. 1992); *Sun-Flex Co. v. Softview Computer Prods. Corp.*, 750 F. Supp. 962, 963-64 (N.D. Ill. 1990) ("allegations of inequitable conduct must be measured against the standard of Fed. R. Civ. P. 9(b)" (citations omitted)); *Micro Motion, Inc. v. Exac Corp.*, 112 F.R.D. 2, 3-4 (N.D. Cal. 1985); *Northern Eng'g & Plastics Corp. v. Blackhawk Molding Co, Inc.*, 27 Fed. R. Serv. 2d 1155, 1156 (N.D. Ill. 1979); *PPG Indus., Inc. v. Celanese Coatings Co.*, 176 USPQ 235, 236 (D. Md. 1972).

2 James W. Moore, *Moore's Federal Practice*, § 9.03[1][b], at 9-17 to 9-18 (Matthew Bender 3rd ed. 1998) (citations omitted). Thus, courts have required claims of fraud to "carefully allege which representations were false and exactly how they were false or the omissions misleading." *Rhoades v. Powell*, 644 F. Supp. 645, 660 (E.D. Cal. 1986), *aff'd*, 961 F.2d 217 (9th Cir. 1992). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy Rule 9(b)." 2 *Moore's Federal Practice* § 9.03[1][c] at 9-19.

### A. Surgical Solutions Cannot Establish (and Hasn't Even Pled) Intent to Deceive

Measured against the pleading requirements of Rule 9(b), Surgical Solutions' allegations supporting its claim of unenforceability for inequitable conduct are clearly inadequate. It has failed to allege the necessary intent to deceive *at all*, much less with particularity. Simply speculating that, "upon information and belief," the patent applicant may have been aware of certain references and their purported materiality (*see e.g.* proposed Counterclaim at ¶¶ 19-20) without specifically identifying an intent to deceive is insufficient. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1259 (Fed. Cir. 2000) ("A party alleging that a patent is unenforceable because of the patentee's failure to disclose material information . . . must offer clear and convincing evidence that the patentee intended to mislead the PTO . . . . The omission must be made *with the specific intent to mislead* . . . .") (emphasis added). On this basis alone, Surgical Solutions should be denied leave to add a counterclaim for unenforceability.

Moreover, Surgical Solutions' allegations are intentionally vague as to the time that Smith & Nephew is alleged to have known about the references. All Surgical Solutions alleges is that "upon information of belief" Smith & Nephew knew about the references

4

*either* before the patent issued *or* before filing suit (*see* proposed Counterclaim at 17-19). But even if the allegation is accepted as true, and even if Surgical Solutions is able to prove, *e.g.*, that Smith & Nephew knew of these references before filing suit, that is of absolutely no moment. As a matter of law, inequitable conduct relates to activities during prosecution of a patent application in the Patent and Trademark Office ("PTO"), and there is no duty to disclose prior art after the patent issues. *See* 37 C.F.R. § 1.56(a).

There is absolutely no evidence that Smith & Nephew knew of either reference during either time period. Instead, Surgical Solutions is recklessly making these serious allegations without any basis in fact. However, even allegations that are made only "upon information and belief" must still comply with Rule 11. *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683-84 (7th Cir. 1992); *cf. Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 928 (N.D. Ill. 2000) (explaining that the rule of *Bankers Trust Co.* applies to allegations of fraud).

Instead of actual evidence, Surgical Solutions relies on mere speculation. Its sole basis for thinking that Smith & Nephew might have been aware of one of the references, "the Fukuda U.S. patent", is that Smith & Nephew was aware of the European counterpart to that patent (which it cited to the PTO), which was filed by the same applicant (*see* proposed Counterclaim at § 10). With respect to the other reference it cites, the "German Sevinc application," its sole basis for thinking that Smith & Nephew might know about that reference was merely that it was cited in another reference that Smith & Nephew did know about (see proposed Counterclaim at ¶ 8). Such speculation does not satisfy the pleading requirements of Rule 11.

### B.   Surgical Solutions Cannot Establish Materiality

The proposed inequitable conduct counterclaim is also futile because Surgical Solutions cannot demonstrate by clear and convincing evidence that either reference on which it relies is material. Surgical Solutions alleges that Smith & Nephew committed inequitable conduct by not citing "the Fukuda U.S. patent" to the PTO (*see* proposed Counterclaim at ¶ 21). However, what Surgical Solutions does not tell this Court is that Smith & Nephew *did* cite to the PTO the European counterpart to the Fukuda U.S. patent, which includes the *identical* disclosure of the Fukuda U.S. patent.[2] Thus, the Fukuda U.S. patent cannot possibly be material to patentability because it is cumulative to art already of record -- the European Fukuda application -- and cumulative references are, by definition, "not material." *J.P. Stevens & Co., Inc. v. Lex Tex, Ltd.*, 747 F.2d 1553, 1559-60 (Fed. Cir. 1984).[3]

Likewise, the other reference upon which Surgical Solutions relies, the "German Sevinc application" (*see* proposed Counterclaim at ¶ 23), is also not material and, in fact, Smith & Nephew was not even aware of it until it was produced by Surgical Solutions during discovery in this litigation. Indeed, the notion that the Sevinc application is material to patentability is strongly undercut by the fact that it was cited by the European

---

[2] The European Fukuda application is EP 0 778 004 A1 (Exhibit A), and is clearly listed on the face of the Smith & Nephew patent in suit under "Foreign Patent Documents" (Exhibit B). The European Fukuda application was cited to the PTO by Smith & Nephew in an Information Disclosure Statement filed on Aug. 6, 1998 (Exhibit C). Even a cursory review shows that the disclosure of the Fukuda U.S. Patent (Exhibit D) is identical to the European Fukuda application (Exhibit A) cited by Smith & Nephew.

[3] Moreover, Smith & Nephew's submission to the PTO of the corresponding European Fukuda application strongly undermines any suggestion of an intent to deceive.

Patent Office ("EPO") against the Fukuda European application, but *was not* cited by the EPO against the European counterpart to the patent in suit.[4]

As there is no evidence to support the allegations of inequitable conduct levied by Surgical Solutions, one is left with the conviction that its is simply an ill-conceived attempt to create a claim where none exists. Unfortunately, this practice of alleging inequitable conduct as a matter of course is far too common in patent cases, and rarely appropriate, as the Federal Circuit has noted:

> [T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague. Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds, to represent their client's interests adequately, perhaps. They do not get anywhere with the accusation in but a small percentage of the cases, but such charges are not inconsequential on that account. They destroy the respect for one another's integrity .... A patent litigant should be made to feel, therefore, that an unsupported charge of "inequitable conduct in the Patent Office" is a negative contribution to the rightful administration of justice.

*Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988). *See also*, *FMC Corp. v. Manitowoc Co., Inc.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987) ("'Inequitable conduct' is not, or should not be, a magic incantation to be asserted against every patentee."); *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1454 (Fed. Cir. 1984).

In view of the concerns expressed by the courts quoted above, it is particularly important that a party be held strictly to the requirements of Fed. R. Civ. P. 9(b) when charging another party with inequitable conduct. *See, e.g., Chiron*, 31 USPQ2d at 1850-51. Here, by any objective measure, Surgical Solutions has failed to meet this standard.

---

[4] *See* Exhibits E and F, which are the European counterpart to the patent in suit (Exhibit B) and the EPO search report which does *not* cite the German Sevinc application.

II. **SURGICAL SOLUTIONS PROPOSED COUNTERCLAIM FOR DECLARATORY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 101, 112, 115 AND/OR 116 IS IMPROPER**

Surgical Solutions has known from the inception of this lawsuit that it was charged with patent infringement. In its Answer, it alleged invalidity as an affirmative defense, including allegations based upon 35 U.S.C. §§ 102, 103, and 112. Based upon these allegations, Smith & Nephew has conducted discovery to develop its case and begin to prepare for trial. For example, in its interrogatory No. 4, Smith & Nephew asked Surgical Solutions to "state the basis" for any of its allegations of invalidity under any portion of the patent statute (*i.e.*, "under 35 U.S.C. § 101 *et seq.*"). (*See* Exhibit G). In response, Surgical Solutions has provided its invalidity contentions under 35 U.S.C. §§ 102, 103 (*see Id.*). However, it has never asserted or even provided any information as to its contentions of invalidity under 35 U.S.C. § 101, 112, 115, and 116. Well into the discovery period, Surgical Solutions seeks leave to file counterclaims that it could have (and should have) asserted when it filed its Answer. Allowing it to do so now compounds the efforts Smith & Nephew must take in discovery and in its preparation of its case, without good cause.

## CONCLUSION

For the foregoing reasons, Smith & Nephew respectfully requests that Surgical Solutions' Motion for Leave to File Counterclaims be denied as to the Third Claim for Relief (inequitable conduct), and also as to those portions of the Second Claim for Relief that relate to invalidity under 35 U.S.C. § 101, 112, 115 and/or 116.

Respectfully submitted,

Dated: July 9, 2004					By: _____
							Mark J. Hebert (BBO No. 546,712)
							Thomas M. Johnston (BBO No. 546,712)
							FISH & RICHARDSON P.C.
							225 Franklin Street
							Boston, MA 02110-2804
							Telephone: (617) 542-5070
							Facsimile: (617) 542-8906

						Attorneys for SMITH & NEPHEW, INC.

						Of Counsel:
							Ruffin B. Cordell
							Ahmed J. Davis
							FISH & RICHARDSON P.C.
							1425 K Street, NW, 11th Floor
							Washington, DC 20005
							Telephone: (202) 783-5070
							Facsimile: (202) 783-2331

I hereby certify that a true copy of the foregoing document was served on counsel for each other party by mail on July 9, 2004.

_____