IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SMITH & NEPHEW, INC., | Civil Action No. 03CV 12310 NMG |
| Plaintiff, | |
| v. | |
| SURGICAL SOLUTIONS, LLC, | |
| Defendant. | |

---

**MEMORANDUM IN SUPPORT OF
DEFENDANT SURGICAL SOLUTIONS, LLC'S
MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT**

---

# Table of Contents

I. Introduction ..................................................................................................1
   A. Background..............................................................................................1
   B. The Parties ..............................................................................................1
   B. The Accused Product...............................................................................2
   C. The '982 Patent........................................................................................3
      (1) The Claims of the '982 Patent ...........................................................4
      (2) The '982 Patent Was Not Commercialized.........................................4
      (3) Overview of the '982 Patent ..............................................................5
      (4) The Prosecution History of the '982 Patent .......................................7
         a. The '747 Patent Application ..........................................................7
         b. The '982 Patent Application ........................................................10

II. The Controlling Law..........................................................................13
   A. A Single Opinion Directed to Claim Construction and Summary
      Judgment Conserves Judicial Resources ................................................13
   B. The Required Analysis...........................................................................13
      (1) Construing the Claims....................................................................14
      (2) Comparing the Claims Against the Accused Product...........................16

III. Independent Claims 1, 19 and 20 are Not Infringed Because the
   ExpresSew® Suture Passer Does Not Include a Needle with Suture
   Attached Thereto .......................................................................................17
   A. The Language of the Independent Claims .................................................19
   B. The '982 Specification Explicitly Defines "Attached" to Mean Crimped
      or Clamped ..........................................................................................21
   C. The Prior Art Schweizer Device Prohibits "Attached" From Being
      Construed So Broadly as to Cover Suture Carried in a Needle Notch........22
      (1) The Schweizer Device in General ......................................................23
      (2) The Schweizer Device Has an Elongated Support Shaft.....................25
   D. The ExpresSew® Suture Passer is virtually identical to the prior art
      Schweizer Device: ................................................................................27

IV. Dependent Claims 2, 3, 5, 22, 24 and 25 are Not Infringed..........................29

V. There Can Be No Infringement by Equivalents Because a
   Hypothetically Expanded Claim Would Ensnare the Prior Art .......................29

VI. Summary ...................................................................................................31

## <u>Table of Authorities</u>

**Cases**

*Abbott Labs. v. Dey, L.P.*, 287 F.3d 1097, 1108 (Fed. Cir. 2002) .....................29

*ACS Hospital Sys., Inc. v. Montefiore Hospital*, 732 F.2d 1572, 1577 (Fec. Cir. 1984) ...................................................................................15, 20

*AFG Industries, Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239, 1249 (Fed. Cir. 2001) ...................................................................................14

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 339 (1961) ...13

*Avia Group Intern., Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988) ...................................................................................15

*Bell & Howell Document Management Products Co. v. Altek Systems*, 132 F.3d 701, 705 (Fed. Cir. 1997) ...................................................................13

*Eltech Systems Corp. v. PPG Industries, Inc.*, 903 F.2d 805, 809, (Fed. Cir. 1990) ...................................................................................15

*Genentech, Inc. v. Hoehringer Mannheim GmbH*, 989 F.Supp. 359, 364 (D. Mass. 1997) ...................................................................................13

*Johnson Worldwide Associates, Inc. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999) ...................................................................................15

*KCJ Corp. v. Kinetic Concepts, Inc.*, 233 F.3d 351 (Fed. Circ. 2000) ................24

*Kraft Foods, Inc. v. International Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000) ...................................................................................14

*Laitram Corp. v. Morehouse Industries, Inc.*, 143 F.3d 1456, 1460, n.2 (Fed. Cir. 1998) ...................................................................................15

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (*en banc*), *aff'd*, 517 U.S. 370 (1996) ...................................................................13, 14

*Phonometrics, Inv. v. Northern Telecom, Inc.*, 133 F.3d 1459, (Fed. Cir. 1998) .15

*Toro Co. v. White Consol. Indus. Inc.*, 266 F.3d 1367, 1370 (Fed. Cir. 2001) ....28

*Vitronics v. Conceptronics, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)..........13, 14

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21, 137 L. Ed. 2d 146, 117 Sc Ct. 1040 (1997) ...........................................................28

*Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 684, 14 USPQ2d 1942, 1948 (Fed. Cir. 1990) ...............................................29

**Statutes**

35 U.S.C. § 102(b) ............................................................................10

35 U.S.C. § 285 ...............................................................................30

Fed. Rules Civ. Proc. R. 56 ...............................................................15

# I. Introduction

Surgical Solutions, LLC ("Surgical Solutions") respectfully moves for summary judgment that Claims 1, 3, 5, 19, 20, 22, 24 and 25 (sometimes hereafter the "asserted claims") of plaintiff Smith & Nephew, Inc.'s U.S. Patent No. 5,947,982 ("the '982 patent") are not infringed by Surgical Solutions' ExpresSew® Suture Passer because it does not include "a suture needle with suture attached thereto."

## A.    Background

This is a patent case. The parties compete in the market for surgical instruments called suture-passing forceps. These devices are used to pass suture through soft tissue during arthroscopic or open surgery.

## B.    The Parties

The plaintiff Smith & Nephew, Inc. ("Plaintiff") is a Delaware corporation having its principal place of business in Memphis, Tennessee, and having a further place of business in Andover, Massachusetts.

The defendant Surgical Solutions, LLC ("Surgical Solutions") is small startup, a limited liability company having its principal place of business in Valencia, California. Surgical Solutions was formed by Brett Bannerman in 1999, began doing business in 2001, and currently has seven (7) full-time employees.

## B.    The Accused Product

The accused product is Surgical Solutions' ExpresSew® Suture Passer which uses a long, bendable needle that slides back and forth in the suture passer.



As shown below, the bendable needle has a flat tip with a notch in its side that carries the suture.



Surgical Solutions does <u>not</u> even sell suture, but the ExpresSew® Suture Passer works with conventional braided or monofilament suture.  The following image shows some braided suture that an ExpresSew® owner may separately purchased and use with the ExpresSew® Suture Passer:



- 2 -

As explained in detail in the Weisel Decl., ¶¶22-23 et seq., after the ExpresSew® Suture Passer is clamped on the tissue, the bendable needle is extended up and out of the ExpresSew®'s lower jaw with a loop of suture carried through the tissue within the needle's notch:



When the bendable needle is retracted back into the lower jaw, the suture loop slides out of the needle's notch and remains on the opposite side of the tissue:



## C.    The '982 Patent

The Plaintiff accuses Surgical Solutions of infringing the '982 patent directed to a "SUTURE-PASSING FORCEPS."  A copy of the '982 patent is attached to the Andras Decl. as Exhibit A.

### (1)    The Claims of the '982 Patent

The '982 patent issued with twenty-six (26) claims, including some apparatus claims and some method claims:

| Claim(s) | Subject |
|----------|---------|
| 1-9 | A suture-passing forceps |
| 10-18 | A method of delivering a suture needle |
| 19 | A surgical apparatus |
| 20-26 | A suture-passing apparatus |

The Plaintiff only accuses Surgical Solutions of infringing eight of its apparatus claims, namely claim 1, 3, 5, 19, 20, 22, 24 and 25.  (see Plaintiff's original and supplemental responses Interrogatory No. 3; Exh. Y, pp.6-8, and Exh. Z, pp.3-10)   The Plaintiff does <u>not</u> assert any of its method claims 10-18.

In the '**982 Claims Table** attached to the Andras Decl., the language of Claims 1, 3, 5, 19, 20, 22, 24, and 25 are correlated with the relevant drawings and text from the specification of '982 patent.

### (2)    The '982 Patent Was Not Commercialized

We cannot review a commercial embodiment in order to quickly understand the claims of the '982 patent because, according to inventor John Duran[1], his alleged improvement was never sold:

```
        Q.    ***Was your invention commercialized by
Smith & Nephew?

        A.    Not to my knowledge.
```

---

[1] Inventor Duran is no longer employed by the Plaintiff.  Nonetheless, the Plaintiff's attorneys have hired him as a consulting expert, and they are paying him for his time.  The Plaintiff's attorneys also represented Mr. Duran at his deposition.

(Duran Dep. Tr., Exh. C, p.133, lines 18-21)

However, we can review the '982 patent, the prosecution history of the '982 patent which inherently includes the prosecution history of the Plaintiff's earlier-filed and closely-related U.S. Patent No. 5,730,747 (hereafter the '747 patent), and the plaintiff's old Acufex® Suture Punch that is covered by the '747 patent.

### (3)    Overview of the '982 Patent

As shown below, the '982 patent is directed to a suture-passing forceps 10 that works with a so-called "needled suture" 20 (shown in blue and yellow) (Based on Figure 1, Exh. A, p.1):



The "needled suture" 20 consists of a needle 30 (yellow) with suture 32 (blue) <u>attached</u> thereto, as shown



above and in more detail to the right. (Based on Figure 2, Exh. A, p.2):

The '982 patent is directed to a suture-passer that not only supports the suture needle at a selected angle in a "ready to be punched" suturing position (figure on right), but also in a "not ready to be punched" stowed position (figure on left) at an angle <u>less</u> than the selected angle of the suture needle in the "ready to be punched" suturing position (Based on Figure 3, Exh. A, p.3):



Angle in "Not Ready to be Punched"
Stowed Position

Angle in "Ready to be Punched"
Suturing Position

In Figure 6A, the suture passer is supporting the needled suture in the "not ready to be punched" stowed position during delivery to the surgical site, and in Figure 6B, the suture passer is supporting the needled suture in the "ready to be punched" or "ready-for-use suturing position" after arriving at the surgical site:



FIG. 6A                    FIG. 6B

### (4)    The Prosecution History of the '982 Patent

The '982 patent claims should be construed in light of the three prosecution histories that are attached to the Andras Decl. as Exhibits 1, 2 and 3, respectively:

(1) "The '747 Parent Application" - Pat. Appl. No. 08/479,514, filed 06/07/95, abandoned (**Exhibit "1"**).

(2) "The '747 Child Application" - Pat. Appl. No. 08/603,859, filed 02/22/96 as a continuation-in-part ("CIP") of Pat. Appl. No. 08/479,514, and issued as the '747 patent (**Exhibit "2"**); and

(3) "The '982 Application" - Pat. Appl. No. 08/832,061, filed 04/02/97, and issued as the '982 patent (**Exhibit "3"**).

### a.    The '747 Patent Application

The '747 patent issued on March 24, 1998 from the '747 Child Application filed on February 22, 1996 by Steven W. Ek, Richard E. Walton, and Paul Alex Torrie, which patent application was a continuation-in-part of the '747 Parent Application filed on January 7, 1995 by Steven W. Ek and Richard E. Walton.  (*See* '747 patent, Exh. E, p.1)

The prosecution history of the '747 patent is contained, in chronological order, in the '747 Parent Application and '747 Child Application. (See Exh. 1 and Exh. 2)

**Scissors-Like Devices:** The Plaintiff may assert that the Schweizer patent, discussed below, is irrelevant to the patentability of the '982 claims because it is a "scissors-like" device.  However, the patent Examiner reviewing the '747 Parent and Child Applications repeatedly rejected the

- 7 -

Plaintiff's claims based on the scissors-like device in U.S. Pat. No. 3,349,772 to Rygg ("the Rygg patent").  A true and correct copy of the Rygg patent is attached to the Andras Decl. as **Exhibit "F"**.  (See '747 Parent Application Prosecution History, Exh. 1, p.58; '747 CIP Application Prosecution History, Exh. 2, p.83, and Exh. 2 p.106; *see also* the Rygg patent, Exh. F).

The Rygg patent discloses a scissors-like suturing device.  (*See* Rygg patent, Exh. F, Figure 1).  Nonetheless, the '747 application claims that required "an axially elongated support shaft" were rejected over the Rygg patent. (*See* '747 Parent Application Prosecution History, Claim 1, Exh. 1, p.18; '747 CIP Application Prosecution History, Claim 1, Exh. 2, p.41).

In each of his three Office Action rejections, the Examiner reviewing the '747 application claims asserted that Rygg discloses <u>an elongated support shaft</u> at the "proximal end of 11", as follows:

> Rygg discloses a suture passing forceps (10), <u>an elongated support shaft (the proximal end of 11)</u>, a suture holder (25), a suture inlet (19), and an actuatable member (12).

(7/19/96 Office Action, Exh. 1, p.58, ¶9; 11/19/96 Office Action, Exh. 2, p.83, ¶10; and 4/20/97 Office Action, Exh. 2. p.106, ¶3, emphasis added).

The following annotated figure fairly and accurately depicts the Rygg patent's scissors-like suturing apparatus, with emphasis added to the "proximal end of 11" that is referenced by the Examiner as an "elongated support shaft" (See Rygg patent, Exh. F, Figure 1):



The Plaintiff never took any issue with the Examiner's multiple assertions that Rygg's scissors-like device includes an elongated support shaft. (See '747 Parent Application Prosecution History, Exh. 1; '747 Parent Application Prosecution History, Exh. 2)

In the '747 parent application, the Plaintiff did not respond to the Examiner's first rejection over the Rygg patent, and the '747 Parent Application went abandoned in favor of the '747 CIP Application.  (See '747 Parent Application Prosecution History, Exh. 1, p.63)

In the '747 CIP application, in response to the Examiner's second and third rejections over the Rygg patent, the Plaintiff's written Responses took issue with some of the Examiner's other assertions, but conceded through silence that Rygg's scissors-like device includes an elongated support shaft (See

'747 CIP Application Prosecution History, Exh. 2, pp.98-104; *see also* Exh. 2, pp.113-120).

      **b.    The '982 Patent Application**

      The '982 patent application was filed on April 2, 1997 with twenty-one original claims -- application claims 1-21.  (Exh. 3, pp.30-33).  The Plaintiff also filed an Information Disclosure Statement ("IDS") on April 2, 1997. ("Plaintiff's First IDS") (Exh. 3, pp.39-42).  The Plaintiff's First IDS listed a number of references, including one that is particularly relevant to claim construction, U.S. Pat. No. 3,946,840  to Schweizer ("the Schweizer '840 patent").  A copy of the Schweizer '840 patent is attached to the Andras Decl. as **Exhibit "G"**.

      On August 4, 1998, the Examiner allowed the original application claims 1-21, as filed and without comment, while citing the '747 patent on a Notice of References Cited.  (Exh. 3, pp.43-45).

      On August 6, 1998, presumably before it received the Notice of Allowance mailed on August 4, 1998, the Plaintiff filed another IDS ("Plaintiff's Second IDS"), listing six additional references that were cited in a July 24, 1998 communication from a foreign patent office in a counterpart application.  (Exh. 3, pp.50-54).  The following references were among those listed in the Plaintiff's Second IDS (Exh. 3, p.51):

            5,318,577          Li

            EP 0 778 004 A1    Fukuda (hereafter "Fukuda's EPO Application")

After receiving the Plaintiff's Second IDS, the Examiner withdrew his Notice of Allowance and issued an Office Action rejecting application claims 1-4 and 11-15 under 35 U.S.C. § 102(b) as anticipated by U.S. Patent No. 5,318,577 to Li (the "Li patent")(Exh. 3, pp.46-49).   A copy of the Li patent is attached hereto as Exhibit H.   A copy of Fukuda's EPO Application is attached to the Andras Decl. as **Exhibit "K"**.

As best shown below, viewed from the side, Li's suture passer uses a needle with suture attached thereto.  Moreover, just like in the '982 patent, the surgeon pulls on the suture (blue) to move the needle (yellow) from a low-profile, not ready to be punched, stowed position into an upright, ready to be punched, suturing position:



Based on Figures 1, 23, 26, and 27 (Exh. I, pp. 2 and 6-7)

What Li's suture passer does not have… are jaws.  Accordingly, even though he rejected claims over Li, the Examiner encouraged the Plaintiff to add forceps jaws to the claims in order to overcome his rejection.  In the Office Action, the Examiner said:

> Li discloses a suture device having a support shaft 100, a suturing assembly 300… at the distal end of the shaft and the assembly [has a] member including a passage for supporting a suturing needle at selected angular positions. Concerning claim 3, see figure 10.
>
> NOTE:  The [Examiner] suggest[s] applicant positively recite the forceps jaws to overcome this rejection.

(Exh. 3, p.48).

In its Response dated December 29, 1998, the Plaintiff amended the claims to positively recite "jaws" as suggested by the Examiner.  (Exh. 3, pp.55-61).   In particular, the applicant amended apparatus claim 1 to require that the claimed combination include "a member underlined as a first jaw" (Exh. 3, p.55, underlined words added), and amended method claim 10 to clarify that the recited method is used "with suture-passing forceps having a ~~member~~ first jaw." (Exh. 3, p.56, struck-out word deleted, underlined words added).  The Plaintiff also conceded that "passing" the needle from jaw to jaw is necessary to overcome the Li patent by amending method claim 10 to add the additional step of:

> punching the suture needle through tissue to be sutured, by passing the suture needle from the first jaw to a second jaw pivotally attached to the first jaw for movement toward and away from the first jaw.

(Exh. 3, p.57, underlined words added)

# II.   The Controlling Law

## A.   A Single Opinion Directed to Claim Construction and Summary Judgment Conserves Judicial Resources

Surgical Solutions urges the Court to find that the claims of the '982 patent are not infringed by the ExpresSew® Suture Passer as set forth below, and/or that the claims are invalid as discussed in the accompanying Motion for Summary Judgment of Invalidity.

In order to decide its motions for summary judgment, the Court will need to construe at least some of the disputed claim terms in order to determine their scope. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (*en banc*), *aff'd*, 517 U.S. 370 (1996)  The Court can construe the claims and decide its motion for summary judgment together.

This District, in fact, has noted that "[m]any courts address claim construction and summary judgment in a single opinion, since the way in which a patent claim is construed often affects the determination of whether it has been infringed." *Genentech, Inc. v. Hoehringer Mannheim GmbH*, 989 F.Supp. 359, 364 (D. Mass. 1997).  Moreover, by construing the claims in the context of a motion for summary judgment, only those claim terms that need to be construed for purpose of the motion need be addressed.  This combined approach, therefore, conserves the Court's resources.

## B.   The Required Analysis

A patent infringement analysis involves two steps: (1) claim construction and, (2) application of the properly construed claim to the accused

product.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (*en banc*),

*aff'd*, 517 U.S. 370 (1996).  In the context of anticipation, of course, the claims

would be reviewed against the prior art.

### (1) Construing the Claims

The starting point for claim construction is the language of the

disputed claims themselves, for they are the measure of a patent's scope.  *Aro*

*Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 339 (1961);

*Markman v. Westview Instruments*, 52 F.3d 967 (Fed. Cir. 1995) (*en banc*), *aff'd*,

517 U.S. 370 (1996)(hereafter "*Markman I*"); *Vitronics v. Conceptronics, Inc.*, 90

F.3d 1576, 1582 (Fed. Cir. 1996).

In construing a claim term, the Court should look to the intrinsic

evidence--the claim language, the written description and the prosecution history.

*Bell & Howell Document Management Products Co. v. Altek Systems*, 132 F.3d

701, 705 (Fed. Cir. 1997).

The words of an asserted claim are looked to first and are to be

given their ordinary meaning -- unless a special meaning is clearly defined in the

specification.  *Markman I*, 52 F.3d at 980.

Claims must be read in light of the specification of which they are a

part.  *Markman I*, 52 F.3d at 979.  Because it provides essential context for even

the most ordinary of claim terms, "the specification is always highly relevant to

the claim construction analysis."  *Vitronics v. Conceptronics, Inc.*, 90 F.3d 1576,

1582 (Fed. Cir. 1996).

The specification provides essential context for even the most ordinary of claim terms and general dictionaries should be used with caution. "Dictionary definitions of ordinary words are rarely dispositive of their meanings in a technological context." *AFG Industries, Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239, 1249 (Fed. Cir. 2001).

While other claims may shed light on the construction pursuant to the doctrine of claim differentiation, "claim differentiation can not broaden claims beyond their correct scope" as it appears from the specification. *Kraft Foods, Inc. v. International Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000).

The cited prior art is also an intrinsic evidentiary source since it is a part of the prosecution history and was considered by the examiner in allowing the claims. The prior art offers clues as to what the claims do <u>not</u> cover. *Vitronics v. Conceptronics, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).

Claims should be construed to sustain their validity in view of the prior art. *ACS Hospital Sys., Inc. v. Montefiore Hospital*, 732 F.2d 1572, 1577 (Fec. Cir. 1984). Hence, if a claim is susceptible to two interpretations, one rendering the claim valid and the other rendering the claim invalid, the interpretation sustaining the validity of the claim should be adopted.

Depending on the degree of relatedness, the specification or prosecution history of another application or patent can be relied upon in construing the same claim term in the patent-in-suit. *Laitram Corp. v. Morehouse Industries, Inc.*, 143 F.3d 1456, 1460, n.2 (Fed. Cir. 1998); and *Eltech Systems Corp. v. PPG Industries, Inc.*, 903 F.2d 805, 809, (Fed. Cir. 1990).

### (2) Comparing the Claims Against the Accused Product

After the Court construes the claims by examining the language of the claims, the patent specification and the prosecution history, the Court then compares the claims, as properly construed, to the accused product. *Johnson Worldwide Associates, Inc. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999).

In the summary judgment context, a court performs this analysis under the well established standards of Rule 56. As the Federal Circuit has "repeatedly emphasized," summary judgment is appropriate in a patent case, as in any other case, when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Avia Group Intern., Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988).

A good faith dispute about the meaning and scope of asserted claims does not, in and of itself, create a genuine dispute to preclude summary judgment in patent cases. *Phonometrics, Inv. v. Northern Telecom, Inc.*, 133 F.3d 1459, (Fed. Cir. 1998).

This motion can be decided solely by reviewing the claims and specification of the '982 Patent relative to the specification and the prior art of record when the claims were allowed, on the one hand, and by reviewing the structure of the ExpresSew® Suture Passer, on the other hand. There is no need to go beyond the intrinsic evidence contained within the four corners of the '982 Patent and the prior art over which its claims were allowed.

Once the Court construes the relevant claim terms, and then compares the claims with the ExpresSew® Suture Passer, it will find no reasonable jury could find that the claims of the patent are infringed and that, as

- 16 -

a matter of law, Surgical Solutions is entitled to entry of summary judgment

against Plaintiff on the issue of infringement.

## III.   Independent Claims 1, 19 and 20 are Not Infringed Because the ExpresSew® Suture Passer Does Not Include a Needle with Suture Attached Thereto

The '982 patent relates to a suture passer that uses "needled

suture" formed from a permanent combination of needle and suture.  The

ExpresSew® Suture Passer, by contrast, uses a bendable needle with a notch

that is designed to loosely carry some separately provided suture that slides

freely within the notch.  As a result, the Plaintiff's case hinges on an

unreasonably broad construction of the following claim element:

"a suture needle with suture <u>attached</u> thereto"

There is no infringement because the claim element of "a needle

with suture attached thereto" must be construed to require suture, and to require

a needle with the suture actually attached to the needle, in light of the plain

language of the claims, the specification of the '982 patent, and the prior art

Schweizer patent that the claims were allowed over during the prosecution of the

'982 patent.

Surgical Solutions anticipates that Plaintiff will argue that "attached"

is not limited to crimping or clamping, and that crimping and clamping are merely

examples of what "attached" can possibly mean.  No matter how many other

forms of attachment might possibly exist, however, one thing is absolutely

undeniable – the term "attached" cannot be so broadly interpreted so as to mean

unattached.  As clearly evidenced by the discussion and figures below, suture that is loosely carried by a notch of a needle and that can slide freely through the notch is simply unattached to the needle.  Just as sand can be carried by a cup and then emptied from the cup, the suture in Defendant's device is removed from contact with the needle when the needle is retracted.  <u>Bottom line: "attached" cannot mean unattached</u>.   Yet, in order for the asserted claims to cover Surgical Solutions' device, Plaintiff will attempt to persuade this Court of such an incredible definition.

## A.    The Language of the Independent Claims

As emphasized below in red, each of the three independent claims

requires "a suture needle having suture attached thereto" (see Exh. A).

| Claim 1 | Claim 19 | Claim 20 |
|---|---|---|
| 1. A suture-passing forceps | 19. A surgical apparatus comprising: | 20. A suture-passing apparatus |
| for passing a suture needle, having suture attached thereto, through tissue at a surgical site, | a suture needle having suture attached thereto; <br><br> a suture-passing forceps for passing the suture needle through tissue at a surgical site, | for passing a suture needle, having suture attached thereto, through tissue at a surgical site, |
| the suture-passing forceps comprising: | the suture-passing forceps including: | the suture-passing apparatus comprising: |
| a support shaft elongated along a longitudinal axis; and | a support shaft elongated along a longitudinal axis; and | a support shaft elongated along a longitudinal axis; and |
| a suturing assembly disposed at a distal end of the support shaft and including: | a suturing assembly disposed at a distal end of the support shaft and including: | a suturing assembly disposed at a distal end of the support shaft and including: |
| a member configured as a first jaw and supported by the support shaft, | first and second jaw members, each supported by the support shaft, | a member configured to be immovably supported by the support shaft, |
| the member having a passage transverse to the length of the member for supporting the suture needle in a suturing position at a selected angular orientation inclined relative to the length of the member | the first jaw member having a passage transverse to the length of the first jaw member for supporting the suture needle in a suturing position at a selected angular orientation relative to the length of the member, | the member having a passage transverse to the length of the member for supporting the suture needle in a suturing position at a selected angular orientation relative to the length of the member, |
| and for supporting the suture needle in a stowed position at an angle less than the selected angle of the suture needle in the suturing position. | the first jaw member configured to support the suture needle in a stowed position at an angle less than the selected angle of the suture needle in the suturing position. | the member configured to support the needle in a stowed position at an angle less than the selected angle of the suture needle in the suturing position. |

The '982 claims positively and necessarily require suture and Surgical Solutions does not even sell suture.  Moreover, by reviewing the specification of the '982 patent, and the prior art Schweizer patent cited during prosecution, it is clear that "attached" does not mean "unattached," but rather means permanently affixed.

The following diagram illustrates the obvious difference between attached and unattached suture:



'982 Needle
with its <u>Attached</u> Suture

The Schweizer '840 and ExpresSew®
Needles Carry <u>Unattached</u> Suture

### B.    The '982 Specification Explicitly Defines "Attached" to Mean Crimped or Clamped

The '982 specification shows only one embodiment of a needle 30 with suture 32 "attached thereto"; the one reproduced to the right with the needle in yellow and the suture in blue.



**FIG. 2**

Moreover, the specification explicitly defines "attached" when it explains that the suture thread 32 is "<u>attached</u>" to a constricted "<u>attachment area</u> 34" by "<u>crimping</u>" or "<u>clamping</u>"[2]:

> Referring to FIG. 2, needled suture 20 includes a needle 30 co-axially aligned with suture thread 32 and attached (e.g., by crimping or clamping) to suture thread 32 at an attachment area 34.

('982 Patent, col. 3, lines 43-46, emphasis added)

The specification offers other intrinsic evidence that a "needle with suture <u>attached</u> thereto" requires a needle with suture that is crimped or clamped thereto.  In particular, the '982 patent repeatedly describes the permanent combination of needle and attached suture as "<u>needled</u> suture," i.e. as a type of suture.   The first sentence in the patent focuses on "<u>needled</u> suture."  The first sentence in the summary of invention also focuses on "<u>needled</u> suture."  The

---

[2] The specification defines "attached" as "(e.g. crimping or clamping)" with reference to Figure 2 which shows a needle with a so-called "attachment area."  The inventor does not describe or illustrate anything else. Consequently, in an effort to avoid this definition and stretch the claims onto the ExpresSew®, the Plaintiff will likely note that the definition is preceded by "e.g.," the Latin abbreviation that means "for example."  While true, one cannot use this fact to construe the claims onto the ExpresSew® because of the prior art Schweizer '840 device discussed below.  In other words, while "crimping or clamping" might reasonably include "squeezing" or "compressing" or "swaging," it cannot be construed to cover the mere "carrying" of suture within a needle notch as was already accomplished by the prior art Schweizer '840 device.
.

inventor used the "<u>needled</u> suture" phrase throughout the specification -- dozens of times.  The specification does not reference any other type of needle, nor does it reference any other type of suture.

Properly construed in light of the specification, therefore, it is clear that a "needle with suture attached thereto" should be construed to mean "needled suture" or, in other words, a needle that is permanently affixed to the suture thread through some form on mechanical constriction, e.g. crimping or clamping.

### C.  The Prior Art Schweizer Device Prohibits "Attached" From Being Construed So Broadly as to Cover a Needle Notch that Carries Unattached Suture

A common maxim of construction is that claims should be construed to sustain their validity in view of the prior art.  *ACS Hospital Sys., Inc. v. Montefiore Hospital*, 732 F.2d 1572, 1577 (Fec. Cir. 1984).   Because of the prior art Schweizer patent that was of record when the claims were allowed, the "needle with suture attached thereto" element cannot be interpreted to cover a needle notch.   See Schweizer patent attached to the Andras Dec. as **Exhibit "G"**.

Accordingly, it would be improper to construe "a needle with suture attached thereto" so broadly as to cover the ExpresSew® Suture Passer, which carries suture in a needle notch, because the claims containing such element

would then cover the prior art Schweizer patent, which also carries suture in a needle notch[3].

### (1)    The Schweizer Device in General

The Schweizer Device is best understood with reference to the following figures[4] where the needle is shown in yellow and the suture in blue:



FIG.-1-

FIG.-3-

---

[3] Inventor John Duran actually testified that the Schweizer needle is "attached" to the suture as that term is used in the '982 patent (*See* Duran Depo. Tr., Exh. P, p.169-171). Mr. Duran's testimony is contrary to a proper construction of the claims, but if he were correct, then Claims 1, 19 and 20 are invalid for covering the Schweizer '840 patent.

[4] The '982 patent's suture passer and the ExpresSew® Suture Passer have generally been illustrated in a horizontal position. In order to simplify a visual comparison, the Schweizer figures were re-oriented so that they lie horizontally too.

Like the ExpresSew® Suture Passer, Schweizer's needle has a notch for carrying suture up and out of the jaw.  As clearly shown in the end view of the jaw containing Schweizer's needle (yellow), the needle includes a so-called "V-notch" 63.  Exh. G, Schweizer, col.2, line 61.



Schweizer's "V-notch" 63 is located at the end of a curved needle that is rigid, while the ExpresSew®'s notch is located on the side of a flat needle that is bendable.  Nonetheless, as shown by the following figure[5], the Schweizer needle is functionally identical to the ExpresSew® needle in that one can conceptually morph the Schweizer needle into the ExpresSew® needle by simply "pulling" one of its points forward and over in front of the other point:



Prior Art
Schweizer Needle

ExpresSew®
Needle

---

[5]   This figure was created under the guidance of Tom Weisel.

The ExpresSew®'s needle notch is comparable to Schweizer's needle notch. And, in light of the prior art Schweizer patent, the claims cannot be interpreted so broadly as to cover the Schweizer patent, or any other device with "unattached" suture that is carried in and ultimately slides out of a needle notch.

### (2)    The Schweizer Device Has an Elongated Support Shaft

The Plaintiff may argue that Schweizer is not relevant to the construction of the claims because it is a "scissors-like" device that does not have "a support shaft elongated along a longitudinal axis" as required by the claims. However, under the general rules of claim construction, the customary meaning of the indefinite articles "a" or "an" is "one or more" or "at least one":

> This court has repeatedly emphasized that an indefinite article "a" or "an" in patent parlance carries the meaning of "one or more" in open-ended claims containing the transitional phrase "comprising" (citations omitted)  Unless the claim is specific as to the number of elements, the article "a" receive a singular interpretation only in rare circumstances when the patentee evinces a clear intent to so limit the article.  (citation omitted)  Under this conventional rule, the claim limitation "a," without more, requires at least one.  *KCJ Corp. v. Kinetic Concepts, Inc.*, 233 F.3d 351 (Fed. Circ. 2000)

Here, the requirement of "a support shaft elongated along a longitudinal axis" covers any device that includes one or more support shafts. The element obviously covers Schweizer's scissors-like device, though, because Schweizer discloses not just one, but two support shafts that are elongated along a longitudinal axis:



Moreover, during the prosecution of the related '747 patent discussed above, the Plaintiff already conceded that Rygg's similar scissors-like device has an elongated shaft.



Based on the Rygg patent, Figure 1, Exh. F, p.1

Schweizer, like Rygg, meets the requirement of "a support shaft elongated along a longitudinal axis." Clearly, the Plaintiff cannot dismiss the Schweizer patent simply because it is a scissors-like device[6].

---

[6] The Plaintiff may also try to dismiss Schweizer by asserting that Tom Weisel "admitted" that the suture is not attached to Schweizer's needle when testifying on behalf of Surgical Solutions pursuant to Rule 30(b)(6). However, this testimony simply reflects Surgical Solutions' contention that "attached" should not be interpreted so broadly as to cover the ExpresSew® Suture Passer since it also has a needle that carries suture within a notch.

### D. In The Context of the '982 Patent, the ExpresSew® Suture Passer is virtually identical to the prior art Schweizer Device:

As shown in the **Schweizer Versus ExpresSew Table** attached to

the Weisel Decl., and reproduced below, the prior art Schweizer Device is very

similar to the ExpresSew® Suture Passer in the manner in which the suture is

carried by, but not attached to, the needle:

| | Prior Art  Schweizer Device | ExpresSew® Suture Passer |
|---|---|---|
| Both use a needle with a notch. |  |  |
| Both start with the needle (yellow) and the suture (blue) in one jaw. |  |  |
| Both devices push the needle forward so that it emerges from a passageway with the suture carried within the needle's notch. |  |  |

| | Prior Art  Schweizer Device | ExpresSew® Suture Passer |
|---|---|---|
| Both devices carry the suture within a notch in the needle. |  |  |
| Both devices retract the needle back into the jaw, without passing the needle to the other jaw, thereby leaving a loop of suture on the other side of the tissue after it slips out of the notch. |  |  |

Based on all of the foregoing, it is clear that "attached" cannot be construed so broadly as to cover the ExpresSew® Suture Passer which carries the suture in the notch of its needle because the claims would then be invalid for covering the prior art Schweizer patent.  As such, no reasonably jury could find that the ExpresSew® Suture Passer includes a needle with suture "attached" thereto.

# IV.   Dependent Claims 2, 3, 5, 22, 24 and 25 are Not Infringed

The Plaintiff also asserts that dependent claims 2, 3, 5, 22, 24, and 25 are infringed.  However, at 35 U.S.C. §112, paragraph 4, the Patent Law provides as follows:

> A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.

If the accused product does not infringe an independent claim, then, as a matter of law, it does not infringe any dependent claim that includes those same limitations. *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994).

Accordingly, once the Court determines that the '982 patent's independent claims 1, 19 and 20 are not infringed, it follows as a matter of law that dependent claims 2, 3, 5, 22, 24 and 25 are also not infringed.

# V.  There Can Be No Infringement by Equivalents Because a Hypothetically Expanded Claim Would Ensnare the Prior Art

Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21, 137 L. Ed. 2d 146, 117 Sc Ct. 1040 (1997).  "To infringe a claim under the doctrine of equivalents,

an accused device must include an equivalent for each literally absent claim limitation." *Toro Co. v. White Consol. Indus. Inc.*, 266 F.3d 1367, 1370 (Fed. Cir. 2001).

The doctrine of equivalents, of course, cannot be used to ensnare the prior art:

> To determine the scope of the doctrine of equivalents in light of the prior art, a court can consider a "hypothetical claim" that literally recites the range of equivalents asserted to infringe. "The pertinent question then becomes whether that hypothetical claim could have been allowed by the PTO over the prior art."

*Abbott Labs. v. Dey, L.P.*, 287 F.3d 1097, 1108 (Fed. Cir. 2002)(citing *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 684, 14 USPQ2d 1942, 1948 (Fed. Cir. 1990))

As evidenced by the **Schweizer Table** attached to the Weisel Decl., the "suture needle with suture <u>attached thereto</u>" element (clause "b" in each of the claims) is the <u>only</u> claim limitation that prevents Claims 1, 19 and 20 from encompassing the prior-art Schweizer Device.  If "a suture needle with suture <u>attached thereto</u>" was hypothetically expanded under the doctrine of equivalents to means "a suture needle with suture <u>carried thereby</u>," in order to cover the ExpresSew® Suture Passer's notched needle, then the hypothetical version of Claims 1, 19 or 20 containing the expanded element would <u>not</u> have been allowed by the USPTO because they would be anticipated by the prior-art Schweizer Device which also uses a notched needle.

Accordingly, there can be no infringement under the doctrine of equivalents as a matter of law because no reasonable jury could find that there is infringement by equivalents.

# VI.  Summary

As noted above, the '982 patents defines "attached" to mean permanently affixed by crimping or clamping and "attached" cannot be construed so broadly as to cover the suture carried in the notch of the ExpresSew®'s needle because the claims would then be invalid for covering the prior art Schweizer patent.  Accordingly, Surgical Solutions respectfully requests that the Court construe "attached" to mean permanently affixed and then grant summary judgment in favor of Surgical Solutions because no reasonably jury could find that the ExpresSew® Suture Passer includes a needle with suture "attached" thereto.

In order to cover the ExpresSew® Suture Passer where the needle has a notch that temporarily carries the suture, "a needle with suture attached thereto" would have to be construed in conflict with the '982 patent's explicit definition of "attached" (e.g. by crimping or clamping), in conflict with the '982 patent's repeated reference to "needled suture", and so as to be invalid for covering the prior art Schweizer device.

Surgical Solutions respectfully requests, therefore, that the Court enter summary judgment in favor of Surgical Solutions, finding the that the asserted claims of the '982 patent are not infringed by the ExpresSew® Suture Passer.

Surgical Solutions also respectfully requests that, subsequent to considering and granting this motion for summary judgment, the Court designate this as an exceptional case under 35 U.S.C. § 285, and thereafter award Surgical Solutions its attorneys' fees for having to defend this action.

SURGICAL SOLUTIONS, LLC

Date: August  27, 2004          By:     /S/: Joseph C. Andras_____
Joseph C. Andras (CA Bar No. 138,181)
Vic Y. Lin (CA Bar No. 192,292)
Myers Dawes Andras & Sherman, LLP
19900 MacArthur Boulevard, 11th Floor
Irvine, CA 92612
Tel: (949) 223-9600
Fax: (949) 223-9610

/S/: Louis M. Ciavarra_____
Louis M. Ciavarra (546,481)
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
Tel:  (508) 926-3408
Fax: (508) 929-3011