IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SMITH & NEPHEW, INC., <br><br> Plaintiff, <br><br> v. <br><br> SURGICAL SOLUTIONS, LLC, <br><br> Defendant. | Civil Action No.  03CV 12310 NMG |

---

**STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

---

In connection with its MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT, and in compliance with Fed. R. Civ. P. § 56 and Rule 56.1 of Local Rules of the United States District Court for the District of Massachusetts ("LR"), defendant Surgical Solutions, LLC ("Surgical Solutions") hereby provides its concise statement of the material facts of record as to which Surgical Solutions contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation:

**The Parties**

1.      Plaintiff Smith & Nephew, Inc. ("Plaintiff") is a Delaware corporation having its principal place of business at 1450 Brooks Road, Memphis, Tennessee and having a further place of business at 150 Minuteman

- 1 -

Road, Andover, Massachusetts.  (*See* Amended Complaint attached to Andras Decl. as Exh. B, ¶ 1; *and see* Andras Decl. ¶ 4)

2.    Defendant Surgical Solutions is a California limited liability company having its principal place of business at 25048 Anza Drive, Valencia, California  91355.  (*See* Andras Decl. ¶5; *and* Defendant's Answer to Amended Complaint attached to Andras Decl. as Exh. C, ¶ 2)

## Structure and Operation of the ExpresSew® Suture Passer

3.    Surgical Solutions makes and sells a suture-passing system known as the ExpresSew® System.  (*See* Weisel Decl., ¶ 17).

4.    The ExpresSew® System has two parts: (1) a hand-operated suture passer (hereafter "the ExpresSew® Suture Passer"); and (2) a long, bendable needle. (*See* Weisel Decl., ¶ 18)

5.    The following image fairly and accurately depicts the ExpresSew® Suture Passer and the bendable needle. (see Weisel Decl., ¶ 19, and the "Instructions for Use" attached thereto as Exh. B, p.1, Figure 1):



Figure 1

6.    The suture passer is re-usable, but each bendable needle is used in just one patient procedure and then discarded. (*See* Weisel Decl., ¶ 20)

7.    The ExpresSew® Suture Passer is used to pass suture through soft tissue in arthroscopic or open surgery. (*See* Weisel Decl., ¶ 21)

8.    The ExpresSew® Suture Passer is particularly suitable for arthroscopic shoulder repair surgery.  (*See* Weisel Decl., ¶ 22)

9.    The following two computer-generated images from Surgical Solutions' website accurately depict the ExpresSew® Suture Passer and its bendable needle being used to pass suture through the main shoulder tendon known as the "rotator cuff" (*See* Weisel Decl., ¶ 23):

 

10.    After the ExpresSew® Suture Passer is clamped on the tissue, the bendable needle is extended up and out of the ExpresSew®'s lower jaw with a loop of suture carried through the tissue within the needle's notch, as shown by the following still images from the video on Surgical Solutions' website:

 

11.     When the bendable needle is retracted back into the lower jaw, the suture loop slides out of the needle's notch and remains on the opposite side of the tissue, as shown by the following still images from the video on Surgical Solutions' website:



12.     The following image fairly and accurately shows the ExpresSew® Suture Passer without the long bendable needle (*See* Weisel Decl., ¶ 24):



13.     The following image fairly and accurately shows the bendable needle used with the ExpresSew® Suture Passer, including a close-up view of its flat, bendable tip and the needle notch that carries the suture through the tissue. (*See* Weisel Decl., ¶ 25):



14.     The ExpresSew® System works with conventional braided or monofilament suture.  (*See* Weisel Decl., ¶ 26)

15.     The following image fairly and accurately shows some braided suture that may be used with the ExpresSew® System (*See* Weisel Decl., ¶ 27):



16.     The suture is not sold as part of the ExpresSew® System. (*See* Weisel Decl., ¶ 28)

17.     The surgeon may choose any suture that is suitable for use in the ExpresSew® system. (*See* Weisel Decl., ¶ 29)

18.    The ExpresSew® Suture Passer has two mechanisms: (1) a needle actuation lever that is designed as a thumb rocker, and (2) a handle that moves back and forth to open and close the jaws.  (*See* Weisel Decl., ¶ 30)

19.    The following image fairly and accurately depicts ExpresSew®'s thumb rocker and handle (*See* Weisel Decl., ¶ 31)

:



20.    The ExpresSew® System is prepared for use by inserting the bendable needle into the suture passer's shaft by inserting the sharp bendable end of the needle into the hole at the back end of the handle (*See* Weisel Decl., ¶ 32)

.

21.    The following image fairly and accurately depicts the bendable needle being inserted into the shaft via the hole at the back end of the handle of the ExpresSew® Suture Passer (*See* Weisel Decl., ¶ 33, and "Instructions For Use" attached thereto as Exh. B, p1, Figure 2):

- 6 -



Figure 2

    22.      After the bendable needle has been inserted into the shaft of the ExpresSew® Suture Passer, the L-shaped bend at the back of the bendable needle is secured in a hole at the top of the Needle Actuation Lever, or thumb rocker (*See* Weisel Decl., ¶ 34, and  "Instructions For Use" attached thereto as Exh. B, p2., Figure 3):



23.     The top of the thumb rocker is labeled "DEPLOY NEEDLE" and the bottom of the thumb rocker is labeled "LOAD SUTURE."  (*See* Weisel Decl., ¶ 35).

24.     The following image fairly and accurately depicts the ExpresSew® Suture Passer's thumb rocker and its labels (*See* Weisel Decl., ¶ 36)

:



25.     Once the bendable needle is loaded into the ExpresSew® Suture Passer, pressing on the upper "DEPLOY NEEDLE" portion of the thumb rocker pushes the needle forward and ultimately deploys the needle's bendable tip forward, against a curved ramp, upward, and then out of the lower jaw, through and beyond the aperture in the upper jaw.  The following illustrations fairly and accurately depict the needle deployment shaft via the hole at the back

end of the handle of the ExpresSew® Suture Passer (*See* Weisel Decl., ¶ 33,

and  "Instructions For Use" attached thereto as Exh. B, p.2, Figures 4a and 4b):



26.    The ExpresSew®' Suture Passer has a side slot on the right

side of its lower jaw for loading suture into the system, the side slot leading to an

axial slot. (*See* Weisel Decl., ¶ 38).

27.    The following top view of the ExpresSew® Suture Passer's

lower jaw, without the bendable needle contained therein, fairly and accurately

depicts the side slot (item 228) that leads to the axial slot (item 231).  (*See*

Weisel Decl., ¶ 35, and the ExpresSew® patent application, Exh. A, p.15,

Fig. 22):



28.    After the bendable needle is loaded into the ExpresSew®
Suture Passer and the needle's L-shaped bend is inserted into the thumb rocker,
and while the thumb rocker is not pressed one way or the other, then the
bendable needle's notch is located just a few millimeters <u>beyond</u> the lower jaw's
side slot.  (*See* Weisel Decl., ¶ 40)

29.    The following top view of the lower jaw, with the needle in
the lower jaw and partially visible through the axial slot, fairly and accurately
depicts the relationship between the needle's notch and lower jaw's side slot
(item 228) when the thumb rocker is not pressed one way or the other.  (*See*
Weisel Decl., ¶ 41, and the ExpresSew® patent application, Exh. A, p.15,
Fig. 22, modified to include the needle):

- 10 -



    30.    To load the suture, the surgeon presses on the thumb rocker's bottom (labeled "LOAD SUTURE") to momentarily pull the needle back a few millimeters and temporarily align its notch with the lower jaw's opening. (*See* Weisel Decl., ¶ 42).

31.    The following top view of the lower jaw, with the needle in the lower jaw and partially visible through the axial slot, fairly and accurately depicts the relationship between the needle's notch and lower jaw's side slot (item 228) when the "LOAD SUTURE" side of the thumb rocker is pressed.  (*See* Weisel Decl., ¶ 43, and the ExpresSew® patent application, Exh. A, p.15, Fig. 22, modified to include the needle):



32.    Then, with the jaws open and with a loop of suture formed in one hand and with the short tail on the bottom, the surgeon passes the loop over the lower jaw and pulls the loop into the lower jaw's side slot and into both the lower jaw's axial slot and the needle's notch.  (*See* Weisel Decl., ¶ 44).

33.    The following illustrations fairly and accurately depicts the loading of suture into the ExpresSew® Suture Passer. (See Weisel Decl., ¶ 45, and the ExpresSew® patent application, Exh. A, p.15, Fig. 22, modified to

include the needle and the suture; and see "Instructions for Use", Exh. B, p.2, Fig. 5):





Figure 5

Slot

Tension

Short Tail of Suture Loop
Below Bottom Jaw.

34.    After the surgeon has pulled the loop of suture through the lower jaw's side opening and thence into both the lower jaw's axial slot and the needle's notch, the surgeon releases the thumb rocker and the needle springs forward a few millimeters such that the needle's notch and the suture carried in the needle's notch move forward within the lower jaw's axial slot.   (*See* Weisel Decl., ¶46).

35.    The following illustrations fairly and accurately depict the suture's position after being loaded into the ExpresSew® System (See Weisel Decl., ¶ 47, and the "Instructions For Use", Exh. B, p.2, Fig. 7):





36.     The following illustration also fairly and accurately depicts the position of the needle (yellow) and suture (blue) after the suture has been loaded into the ExpresSew® System and it is in a "ready-to-punch" suturing position (*See* Weisel Decl., ¶ 48):



37.     When the ExpresSew® System is in the "ready-to-punch" suturing position, as emphasized in Surgical Solutions' written literature, the doctor must make sure that the suture slides freely and is literally <u>not</u> attached to any part of the ExpresSew® System.  (*See* Weisel Decl., ¶ 49).

38.     When properly loaded, the suture will slide up and down within the ExpresSew® Suture Passer.  (*See* Weisel Decl., ¶ 50, and the "Instructions for Use" provided to medical professionals, Exh. B, p.2, bottom paragraph ("The suture will slide freely if properly loaded") and the "Evaluation Tips" provided to salesmen, Exh. C, p.1, ¶2 ("Demonstrate loading of suture and the 'suture sliding' test.")).

- 15 -

39.    The following image fairly and accurately depicts the "suture sliding" test (*See* Weisel Decl., ¶ 51, and the "Instructions For Use", Exh. B, p.2, Fig. 7; and the "Evaluation Tips" provided to salesmen, Exh. C, p.1, ¶2):



Figure 7

40.    With the suture loaded and the jaws closed, the tip of the Suture Passer is delivered to the surgical site via a so-called cannula.  Next, the jaws are opened and the Suture Passer is positioned at the desired location to pass suture.  Next, the jaws are closed to gently grasp the tissue through which the suture will be passed.  Finally, the thumb rocker is pressed forward at the top ("DEPLOY NEEDLE") to push the needle forward and then upward.   (See Weisel Decl., ¶ 52).

41.    The following illustrations fairly and accurately depict the ExpresSew® Suture Passer inserted through a cannula so that its distal end is located at the surgical site, the jaws being closed about some tissue to be sutured, and the thumb rocker being pressed forward to move the needle forward

and ultimately up and out of the lower jaw (see Weisel Decl., ¶53, and the "Instructions For Use", Exh. B, p.3, Figs. 8a and 8b):



Figure 8a

Figure 8b

42.     The following illustration fairly and accurately depict the position of the needle (yellow) and suture (blue) as the needle is pushed partially forward and partially deployed up and out of the lower jaw with the suture (blue) carried in the needle's notch (see Weisel Decl., ¶54):



43.     The following illustration fairly and accurately depicts the position of the needle (yellow) and suture (blue) as the needle is pushed fully forward and fully deployed up and out of the lower jaw with the suture (blue) carried in the needle's notch (see Weisel decl., ¶ 55):



44.     The following illustration fairly and accurately depicts the position of the needle (yellow) and suture (blue) <u>after</u> the needle has been retracted into the ExpresSew® Suture Passer, the suture now having been passed through the tissue and ultimately retained by the tissue so that the suture pulled out of the needle's notch as the needle was retracted (see Weisel decl., ¶ 56):



**The '982 Patent**

45.    Plaintiff alleges it owns United States Patent No. 5,947,982 entitled SUTURE-PASSING FORCEPS (hereafter "the '982 patent").  (*See* Andras Decl. ¶¶3-4; '982 patent attached to Andras Decl. as Exh. A, p.1; and Amended Complaint attached to Andras Decl. as Exh. B, ¶ 6)

**The Plaintiff's Patent Infringement Allegations**

46.    The Plaintiff alleges that Surgical Solutions has been and is now infringing, actively inducing infringement of, and/or contributing to the infringement of, the '982 patent.  (*See* Andras Decl. ¶4; *and* Amended Complaint attached to Andras Decl. as Exh. B, ¶ 7)

47.    The '982 patent issued with twenty-six (26) claims, including some apparatus claims and some method claims (*See* Andras Decl. ¶¶ 4 and 8; and '982 patent attached to Andras Decl. as Exh. A, pp.9-10):

| Claim(s) | Subject |
|---|---|
| 1-9 | A suture-passing forceps |
| 10-18 | A method of delivering a suture needle |
| 19 | A surgical apparatus |
| 20-26 | A suture-passing apparatus |

48.    The Plaintiff alleges that apparatus Claims 1, 3, 5, 19, 20, 22, 24, and 25 of the '982 patent are infringed by Surgical Solutions' ExpresSew® Suture Passer.  (*See* Andras Decl. ¶¶ 100-101; *and see* excerpts

from Plaintiff's original and supplemental responses to Interrogatory No. 3 attached to Andras Decl. as Exh. Y, pp.6-8 and Exh. Z, pp.3-10)

49.    Three of the asserted claims are in independent form, i.e. claims 1, 19 and 20, and five of the asserted claims are dependent form, i.e. claims 3, 5, 22, 24, and 25.  (*See* Andras Decl. ¶ 4; and '982 patent attached to Andras Decl. as Exh. A., pp.9-10)

50.    Claim 1 of the '982 patent reads as follows (with emphasis, formatting, and alphabetic clause designations added for ease of reference) (*See* Andras Decl. ¶ 4; and '982 patent attached to Andras Decl., Exh. A, p.9; *see also* Weisel Decl. ¶¶ 57-58 and the '982 Claims Table, Claim 1):

a    1. A suture-passing forceps

b    for passing **a suture needle, having suture attached thereto**, through tissue at a surgical site, the suture-passing forceps comprising:

c    a support shaft elongated along a longitudinal axis; and

d    a suturing assembly disposed at a distal end of the support shaft and including:

e    a member configured as a first jaw and supported by the support shaft,

f    the member having a passage transverse to the length of the member for supporting the suture needle in a suturing position at a selected angular orientation inclined relative to the length of the member

g    and for supporting the suture needle in a stowed position at an angle less than the selected angle of the suture needle in the suturing position.

51.    Claim 19 of the '982 patent reads as follows (with emphasis, formatting, and alphabetic clause designations added for ease of reference) (*See* Andras Decl. ¶ 4; and '982 patent attached to Andras Decl., Exh. A, p.10; *see also* Weisel Decl. ¶¶ 57-58 and the '982 Claims Table, Claim 19):

a    19. A surgical apparatus comprising:

b    **a suture needle having suture attached thereto**;

c    a suture-passing forceps for passing the suture

| | needle through tissue at a surgical site, |
|---|---|
| | the suture-passing forceps including: |
| d | a support shaft elongated along a longitudinal axis; and |
| e | a suturing assembly disposed at a distal end of the support shaft and including: |
| f | first and second jaw members, each supported by the support shaft, |
| g | the first jaw member having a passage transverse to the length of the first jaw member for supporting the suture needle in a suturing position at a selected angular orientation relative to the length of the member, |
| h | the first jaw member configured to support the suture needle in a stowed position at an angle less than the selected angle of the suture needle in the suturing position. |

52.     Claim 20 of the '982 patent reads as follows (with emphasis, formatting, and alphabetic clause designations added for ease of reference) (*See* Andras Decl. ¶ 4; and '982 patent attached to Andras Decl., Exh. A, p.10; *see also* Weisel Decl. ¶¶ 57-58 and the '982 Claims Table, Claim 20):

| | |
|---|---|
| a | 20. A suture-passing apparatus |
| b | for passing **a suture needle, having suture attached thereto**, through tissue at a surgical site, |
| | the suture-passing apparatus comprising: |
| c | a support shaft elongated along a longitudinal axis; and |
| d | a suturing assembly disposed at a distal end of the support shaft and including: |
| e | a member configured to be immovably supported by the support shaft, |
| f | the member having a passage transverse to the length of the member for supporting the suture needle in a suturing position at a selected angular orientation relative to the length of the member, |
| g | the member configured to support the needle in a stowed position at an angle less than the selected angle of the suture needle in the suturing position. |

53.     Independent Claims 1, 19 and 20 require a suture needle having suture "attached" thereto. (*See* Andras Decl. ¶ 4; and '982 patent attached to Andras Decl., Exh. A, pp.9-10; *see also* Weisel Decl. ¶¶ 57-58 and the '982 Claims Table, Claims 1, 19, and  20)

**Plaintiff's '982 Patent is Closely Related to Plaintiff's '747 Patent**

54.     In addition to the '982 patent, the Plaintiff also owns U.S. Patent No. 5,730,747 (hereafter "the '747 patent").  (*See* Andras Decl. ¶19; and 747 patent attached to Andras Decl. as Exh. E).

55.     The '747 and '982 patents contain many figures that are virtually identical.  (*See* Andras Decl. ¶ 20; and see e.g. '747 patent attached to Andras Decl. as Exh. E, p.3, Figure 1 and p.5, Figure 3; and '982 patent attached to Andras Decl. as Exh. A, p.2, Figures 1 and 2)

56.     The '982 patent explicitly incorporates the disclosure of the '747 CIP Application by reference.  (*See* Andras Decl. ¶ 21; *and see* '982 patent attached to Andras Decl. as Exh. A, p.1 and p.8, Col.3, lines 26-29) (referred to there as "application U.S. Ser. No. 08/603,859").

57.     The '747 patent is closely related to the '982 patent such that its content and prosecution history are useful for construing the claims of the '982 patent. (*See* Andras Decl. ¶ 22; and see '747 patent attached to Andras Decl. as Exh. E, and '982 patent attached to Andras Decl. as Exh. A).

## Prosecution Histories of the '747 and '982 Patents

58.     The United States Patent and Trademark Office ("USPTO")

retains a public record of the prosecution history for all patent applications.  The

prosecution history of the '747 and '982 patents, include, among other things, all

documents filed by the applicant and all documents issued by the USPTO during

the prosecution of the patent application.   (See Andras Decl. ¶ 23 ; '747 Parent

Application Prosecution History attached to Andras Decl. as Exh. 1; '747 CIP

Application Prosecution History attached to Andras Decl  as Exh. 2; and '982

patent prosecution history attached to Andras Decl. as Exh. 3).

### (a) The Plaintiff's '747 Patent

59.     The '747 patent issued on March 24, 1998 from U.S.

Application No. 603,859 filed on February 22, 1996 by Steven W. Ek, Richard E.

Walton, and Paul Alex Torrie (hereafter "the '747 CIP Application"), which patent

application was a continuation-in-part of Application No. 479,514 filed on January

7, 1995 by Steven W. Ek and Richard E. Walton (hereafter "the '747 Parent

Application").  (See Andras Decl. ¶ 24; and see '747 patent attached to Andras

Decl. as Exh. E, p.1)

60.     The prosecution history of the '747 patent is contained, in

chronological order, in the '747 Parent Application Prosecution History and '747

CIP Application Prosecution History.  (See Andras Decl. ¶ 25; and see '747

Parent Application Prosecution History and '747 CIP Application Prosecution

History attached to the Andras Decl. as Exh. 1 and Exh. 2)

61.    The patent Examiner reviewing the '747 Parent and CIP Applications (see Exh. 1 and Exh. 2) repeatedly rejected the Plaintiff's claims based on U.S. Pat. No. 3,349,772 to Rygg ("the Rygg patent").  (*See* Andras Decl. ¶ 26; *and see* '747 Parent Application Prosecution History, Exh. 1, p.58; *and see* '747 CIP Application Prosecution History, Exh. 2, p.83, and Exh. 2 p.106; *see also* the Rygg patent, Exh. F).

62.    The Rygg patent discloses a scissors-like suturing device. (*See* Andras Decl. ¶ 27; and see Rygg patent, Exh. F, Figure 1).

63.    The '747 application claims that required "an axially elongated support shaft" were rejected over the Rygg patent.  (*See* Andras Decl. ¶ 28; '747 Parent Application Prosecution History, Claim 1, Exh. 1, p.18; and '747 CIP Application Prosecution History, Claim 1, Exh. 2, p.41).

64.    In each of his three Office Action rejections, the Examiner reviewing the '747 application claims asserted that Rygg discloses <u>an elongated support shaft</u> at the "proximal end of 11", as follows:

> Rygg discloses a suture passing forceps (10), <u>an elongated support shaft (the proximal end of 11)</u>, a suture holder (25), a suture inlet (19), and an actuatable member (12).

(*See* Andras Decl. ¶ 29; 7/19/96 Office Action, Exh. 1, p.58, ¶9; 11/19/96 Office Action,  Exh. 2, p.83, ¶10; and 4/20/97 Office Action, Exh. 2. p.106, ¶3, emphasis added).

65.    The following annotated figure fairly and accurately depicts the Rygg patent's scissors-like suturing apparatus, with emphasis added to the "proximal end of 11" that is referenced by the Examiner as an "elongated support shaft" (*See* Andras Decl. ¶ 30; *and* Rygg patent, Exh. F, Figure 1):



66.    The Plaintiff never took any issue with the Examiner's multiple assertions that Rygg's scissors-like device includes an elongated support shaft.  (*See* Andras Decl. ¶ 31; *and* '747 Parent Application Prosecution History, Exh. 1; *and* '747 Parent Application Prosecution History, Exh. 2)

67.    In the '747 parent application, the Plaintiff did not respond to the Examiner's first rejection over the Rygg patent, and the '747 Parent Application went abandoned in favor of the '747 CIP Application.  (*See* Andras Decl. ¶ 32; '747 Parent Application Prosecution History, Exh. 1, p.63)

68.    In the '747 CIP application, in response to the Examiner's second and third rejections over the Rygg patent, the Plaintiff's written Responses took issue with some of the Examiner's other assertions, but conceded through silence that Rygg's scissors-like device includes an elongated

support shaft (*See* Andras Decl. ¶ 33; '747 CIP Application Prosecution History, Exh. 2, pp.98-104 and pp.113-120).

<u>*(b) The Plaintiff's '982 Patent*</u>

69.    The Plaintiff's '982 patent issued on September 7, 1999 from U.S. Application No. 08/832,061 filed on April 2, 1997.  (*See* Andras Decl. ¶ 34; '982 patent, Exh. A, p.1).

70.    The prosecution history of the '982 patent is contained in the '982 Patent Prosecution History.  (*See* Andras Decl. ¶ 35, '982 Patent Prosecution History, Exh. 3)

71.    The '982 patent application was filed on April 2, 1997 with twenty-one original claims -- application claims 1-21.  (*See* Andras Decl. ¶ 36; *and* '982 Patent Prosecution History, Exh. 3, pp.30-33).

72.    The Plaintiff also filed an Information Disclosure Statement ("IDS") on April 2, 1997. ("Plaintiff's First IDS") (*See* Andras Decl. ¶ 37; *and* '982 Patent Prosecution History, Exh. 3, pp.39-42).

73.    The Plaintiff's First IDS listed a number of references, including U.S. Pat. No. 3,946,840  to Schweizer ("the Schweizer '840 patent") (*See* Andras Decl. ¶ 38; *and* '982 Patent Prosecution History, Exh. 3, pp.39-42; *and also see* Schweizer '840, Exh. G).

74.    On August 4, 1998, the Examiner allowed the original application claims 1-21, as filed, without comment, while citing the '747 patent on a Notice of References Cited. (*See* Andras Decl. ¶ 39; *and* '982 Patent Prosecution History, Exh. 3, pp.43-45).

75.     On August 6, 1998, presumably before it received the Notice of Allowance mailed on August 4, 1998, the Plaintiff filed another IDS ("Plaintiff's Second IDS"), listing six additional references that were cited in a July 24, 1998 communication from a foreign patent office in a counterpart application.  (*See* Andras Decl. ¶ 40; *and* '982 Patent Prosecution History, Exh. 3, pp.50-54; see also Plaintiff's International Application, Exh. J, pp. 23-24).

76.     The following references were among those listed in the Plaintiff's Second IDS (*See* Andras Decl. ¶ 41; *and* '982 Patent Prosecution History, Exh. 3, p.51; *and* Li patent, Exh. I):

        5,318,577          Li

        5,397,325          Della Badia et al.

        EP 0 778 004 A1    Fukuda (hereafter "Fukuda's EPO Application")

77.     After receiving the Plaintiff's Second IDS, the Examiner withdrew his Notice of Allowance and issued an Office Action rejecting application claims 1-4 and 11-15 under 35 U.S.C. § 102(b) as anticipated by U.S. Patent No. 5,318,577 to Li (the "Li patent") (*See* Andras Decl. ¶ 42; *and* '982 Patent Prosecution History, Exh. 3, pp.46-49).

78.     The following composite figure based on Figures 1, 23, 26, and 27 from the Li patent, and annotated by the undersigned attorney, fairly and accurately depicts the suture-passing forceps shown in the Li patent (*See* Andras Decl. ¶ 43; *and see* Li patent Exh. I, pp. 2 and 6-7):



79.    As shown in the composite figure above, Li's suture passer uses a needle with suture attached thereto and, just like in the '982 patent, the user pulls the suture (blue) to rotate Li's needle (yellow) from a low-profile, not ready to be punched, stowed position into an upright, ready to be punched, suturing position.  (*See* Andras Decl. ¶ 44; *and* Li patent, Exh. I)

80.    However, Li's suture passer does not have jaws. (*See* Andras Decl. ¶ 45; *and* Li patent, Exh. I)

81.    The Examiner rejected the Plaintiff's claims over Li, but encouraged the Plaintiff to add jaws to the claims in order to overcome his rejection.  In the Office Action, the Examiner said:

> Li discloses a suture device having a support shaft 100, a suturing assembly 300… at the distal end of the shaft and the assembly [has a] member including a passage for supporting a suturing needle at selected angular positions. Concerning claim 3, see figure 10.
>
> NOTE:  The [Examiner] suggest[s] applicant positively recite the forceps jaws to overcome this rejection.

(*See* Andras Decl. ¶ 46; *and* '982 Patent Prosecution History, Exh. 3, p.48).

82.    On December 29, 1998, the Plaintiff filed a Response to the Examiner's Office Action, amending the claims to positively recite "jaws" as suggested by the Examiner.  (*See* Andras Decl. ¶ 47; *and* '982 Patent Prosecution History, Exh. 3, pp.55-61).

83.    In more detail, the Plaintiff amended apparatus claim 1 to require that the claimed combination include "a member <u>configured as a first jaw</u>" (Exh. 3, p.55, underlined words added), and amended method claim 10 to clarify that the recited method is used "with suture-passing forceps having a ~~member~~ <u>first jaw</u>." (*See* Andras Decl. ¶ 48; *and* '982 Patent Prosecution History, Exh. 3, p.56, struck-out word deleted, underlined words added).

84.    The Plaintiff also differentiated method Claim 10 from the Li patent by adding the additional step of "passing the suture needle from the first jaw to a second jaw":

> <u>punching the suture needle through tissue to be sutured, by passing the suture needle from the first jaw to a second jaw pivotally attached to the first jaw for movement toward and away from the first jaw</u>.

(*See* Andras Decl. ¶ 49; *and* '982 Patent Prosecution History, Exh. 3, p.57, underlined words added)

### The Meaning of "Attached" as Used in the '982 Specification

85.    In the '982 patent, a needle with suture attached thereto is called a "needled suture 20".  (*See* Andras Decl. ¶ 4; and '982 patent attached to Andras Decl. as Exh. A, passim).

86.    The '982 patent shows only one embodiment of a needle with suture attached thereto (*See* Andras Decl. ¶ 4; and '982 patent attached to Andras Decl. as Exh. A, p.8, col.3, lines 43-46, and Fig.2 (shown here with the needle in yellow and the suture in blue), *and also* Weisel Decl. ¶¶ 57-58 and the '982 Claims Table, Claims 1, 19, and 20, clauses b ):



FIG. 2

87.    The '982 patent defines "attached" as "(.e.g. crimping or clamping)" with reference to Figure 2 which show a needle having a constricted "attachment area 34" that permanently affixes the suture to the needle. (*See* Andras Decl. ¶ 4; and '982 patent attached to Andras Decl. as Exh. A, p.8, col.3, lines 43-46, and Fig.2 (shown here with the needle in yellow and the suture in blue), *and also* Weisel Decl. ¶¶ 57-58 and the '982 Claims Table, Claims 1, 19, and 20, clauses b ).

## <u>(The Schweizer '840 Patent)</u>

## <u>"Attached" Must Be Construed So the Claims are Valid</u>

88.    The USPTO was aware of the Schweizer '840 patent when it allowed the '982 patent's claims.  (*See* Andras Decl. ¶ 38; *and* '982 Patent Prosecution History, Exh. 3, pp.39-42; *and also see* Schweizer '840, Exh. G).

89.    The "needle with suture attached thereto" element of Claims 1, 19 and 20 must be construed to require a needle with suture permanently affixed thereto in order for the claims to valid over the Schweizer '840 patent. (See Weisel Decl., ¶¶70-71, and the **Schweizer Table** attached thereto)

**Claims 1, 19, and 20 are Not Infringed by ExpresSew® Suture Passer**

90.     The ExpresSew® Suture Passer and Schweizer '840 device both use a needle with a notch. (see Weisel Decl. ¶73 and the **Schweizer/ExpresSew Table** attached thereto).

91.     The ExpresSew® Suture Passer and Schweizer '840 device both start with the needle (yellow) and the suture (blue) in one jaw. (see Weisel Decl. ¶73 and the **Schweizer/ExpresSew Table** attached thereto).

92.     The ExpresSew® Suture Passer and Schweizer '840 device both push the needle forward so that it emerges from a passageway with the suture carried within the needle's notch. (see Weisel Decl. ¶73 and the **Schweizer/ExpresSew Table** attached thereto).

93.     The ExpresSew® Suture Passer and Schweizer '840 device both carry the suture within a notch in the needle. (see Weisel Decl. ¶73 and the **Schweizer/ExpresSew Table** attached thereto).

94.     The ExpresSew® Suture Passer and Schweizer '840 device both retract the needle back into the jaw, without passing the needle to the other jaw, thereby leaving a loop of suture on the other side of the tissue after it slips out of the notch. (see Weisel Decl. ¶73 and the **Schweizer/ExpresSew Table** attached thereto).

95.     As noted above, when the ExpresSew® System is in the "ready-to-punch" suturing position, as emphasized in Surgical Solutions' written literature, the doctor must make sure that the suture slides freely and is literally <u>not</u> attached to any part of the ExpresSew® System.  (*See* Weisel Decl., ¶ 49).

- 33 -

96.    Claims 1, 19, and 20 are not Infringed by the ExpresSew® Suture Passer because it does not meet the requirement of a "needle with suture attached thereto."

### Summary

97.    Surgical Solutions respectfully requests an order granting Surgical Solutions' Motion for Summary Judgment of Non-Infringement, Surgical Solutions' Motion for Summary Judgment of Invalidity, or both.

SURGICAL SOLUTIONS, LLC

Date: August  27, 2004          By:    /S/: Joseph C. Andras
                                        Joseph C. Andras (CA Bar No. 138,181)
                                        Vic Y. Lin (CA Bar No. 192,292)
                                        Myers Dawes Andras & Sherman, LLP
                                        19900 MacArthur Boulevard, 11th Floor
                                        Irvine, CA 92612
                                        Tel: (949) 223-9600
                                        Fax: (949) 223-9610

                                        /S/: Louis M. Ciavarra
                                        Louis M. Ciavarra (546,481)
                                        Bowditch & Dewey, LLP
                                        311 Main Street, P.O. Box 15156
                                        Worcester, MA 01615-0156
                                        Tel:  (508) 926-3408
                                        Fax: (508) 929-3011