IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SMITH & NEPHEW, INC., | Civil Action No.  03CV 12310 NMG |
| Plaintiff, | |
| v. | |
| SURGICAL SOLUTIONS, LLC, | |
| Defendant. | |

---

**MEMORANDUM IN SUPPORT OF
DEFENDANT SURGICAL SOLUTIONS, LLC'S
MOTION FOR SUMMARY JUDGMENT
OF PATENT INVALIDITY**

---

## **Table of Contents**

I. Introduction ...............................................................................................1
  A. Background.........................................................................................1
  B. The Parties .......................................................................................1
  C. The '982 Patent................................................................................2
    (1) The Claims of the '982 Patent ....................................................2
    (2) Overview of the '982 Patent .......................................................3
    (3) The Prosecution History of the '982 Patent ..............................4

II. The Controlling Law..............................................................................5
  A. Summary Judgment May be Granted on the Basis of Anticipation ..............5
  B. The Required Analysis.......................................................................5

III. The Claims are Invalid Over Any One of Three Prior Art References
  that Were Not of Record.........................................................................6
  A. The Plaintiff's Old Acufex® Suture Punch.......................................7
    (1) The Acufex® Suture Punch is Prior Art ...................................7
      a. John Duran Testified that He Did Not Invent the Claimed
        Structure ..............................................................................8
      b. John Duran Demonstrated that the Old Acufex® Suture Punch
        Contains the Claimed Structure ...........................................8
    (2) The Acufex® Suture Punch Anticipates the '982 Claims.........11
  B. Fukuda's U.S. Patent.......................................................................15
    (1) Fukuda's EPO Application is Irrelevant ..................................16
    (2) Fukuda's U.S. Patent Anticipates the '982 Claims..................19
  C. The German Sevinc Application ...................................................23

IV. Summary ...........................................................................................27

## <u>Table of Authorities</u>

**Cases**

*Lewmar Marine, Inc. v. Barient, Inc.* 827 F.2d 744 (Fed. Cir. 1987)......................5

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (*en banc*), *aff'd*, 517 U.S. 370 (1996) .............................................................................................5

Telemac Cellular Corp.  v. Topp Telecom, Inc., 247 F.3d 1316, 1327 (Fed. Cir. 2001) .....................................................................................................................5

**Statutes**

35 U.S.C. § 102(e) ...........................................................................................16

35 U.S.C. § 102(f) ..............................................................................................8

35 U.S.C. § 285 ...............................................................................................28

**Rules**

37 C.F.R. § 1.97(h) ...........................................................................................18

Manual of Patent Examining Procedure § 609, Section C(2), "Complying Information Disclosure Statements" ..............................................................18

# I.  Introduction

Surgical Solutions, LLC ("Surgical Solutions") respectfully moves for summary judgment that Claims 1, 3, 5, 19, 20, 22, 24 and 25 (sometimes hereafter the "asserted claims") of plaintiff Smith & Nephew, Inc.'s U.S. Patent No. 5,947,982 ("the '982 patent") are invalid as anticipated by:

(1) Plaintiff's own Acufex® Suture Punch;

(2) Fukuda's U.S. Patent;  and/or

(3) the German Sevinc Application.

## A.    Background

This is a patent case.  The parties compete in the market for surgical instruments called suture-passing forceps.  These devices are used to pass suture through soft tissue during arthroscopic or open surgery.

## B.    The Parties

The plaintiff Smith & Nephew, Inc. ("Plaintiff") is a Delaware corporation having its principal place of business in Memphis, Tennessee, and having a further place of business in Andover, Massachusetts.

The defendant Surgical Solutions, LLC ("Surgical Solutions") is a small startup, limited liability company having its principal place of business in Valencia, California.  Surgical Solutions was formed by Brett Bannerman in 1999, began doing business in 2001, and currently has seven (7) full-time employees.

## C.    The '982 Patent

The Plaintiff accuses Surgical Solution of infringing the '982 patent directed to a "SUTURE-PASSING FORCEPS."  A copy of the '982 patent is attached to the Andras Decl. as Exhibit A.

### (1)    The Claims of the '982 Patent

The '982 patent issued with twenty-six (26) claims, including some apparatus claims and some method claims:

| Claim(s) | Subject |
|----------|---------|
| 1-9 | A suture-passing forceps |
| 10-18 | A method of delivering a suture needle |
| 19 | A surgical apparatus |
| 20-26 | A suture-passing apparatus |

The Plaintiff only accuses Surgical Solutions of infringing eight of its apparatus claims, namely claims 1, 3, 5, 19, 20, 22, 24 and 25.  (see Plaintiff's original and supplemental responses Interrogatory No. 3; Exh. Y, pp.6-8, and Exh. Z, pp.3-10)   The Plaintiff does not assert any of its method claims 10-18.

In the '**982 Claims Table** attached to the Andras Decl., the language of Claims 1, 3, 5, 19, 20, 22, 24, and 25 are correlated with the relevant drawings and text from the specification of '982 patent.

**(2)    Overview of the '982 Patent**

As shown below, the '982 patent is directed to a suture-passing forceps 10 that works with a so-called "needled suture" 20 (shown in blue and yellow) (Based on Figure 1, Exh. A, p.1):



The "needled suture" 20 consists of a needle 30 (yellow) with suture 32 (blue) <u>attached</u> thereto, as shown above and in more detail to the right. (Based on Figure 2, Exh. A, p.2):



The '982 patent is directed to a suture-passer that not only supports the suture needle at a selected angle in a "ready to be punched" suturing position (figure on right), but also in a "not ready to be punched" stowed position (figure on left) at an angle <u>less</u> than the selected angle of the suture needle in the "ready to be punched" suturing position (Based on Figure 3,  Exh. A, p.3):

- 3 -



Angle in "Not Ready to be Punched"
Stowed Position



Angle in "Ready to be Punched"
Suturing Position

In Figure 6A, the suture passer is supporting the needled suture in the "not ready to be punched" stowed position during delivery to the surgical site, and in Figure 6B, the suture passer is supporting the needled suture in the "ready to be punched" or "ready-for-use suturing position" after arriving at the surgical site:



FIG. 6A                    FIG. 6B

### (3)    The Prosecution History of the '982 Patent

The '982 patent claims should be construed in light of the three prosecution histories that are attached to the Andras Decl. as Exhibits 1, 2 and 3, respectively, as fully discussed in the accompanying Motion for Summary Judgment of Non-Infringement hereby incorporated by reference.

# II.    The Controlling Law

## A.    Summary Judgment May be Granted on the Basis of Anticipation

"Although anticipation is a question of fact, it may be decided on summary judgment if the record reveals no genuine dispute of material fact." Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1327 (Fed. Cir. 2001). "Summary Judgment is proper if no reasonable jury could find that the patent is not anticipated." *Id.* A claim is anticipated where a single prior art reference contains every limitation of the claimed invention. *Id. See also Lewmar Marine, Inc. v. Barient, Inc.* 827 F.2d 744 (Fed. Cir. 1987).

The analysis for anticipation is the same as for infringement, except that the asserted claim is compared to a prior art reference, rather than an accused device. *See Lewmar Marine* 827 F.2d at 747 ("That which would literally infringe if later in time anticipates if earlier than the date of the invention."). Because the Acufex® Suture Punch, Fukuda's U.S. Patent, and the German Sevinc Application contain every limitation of the asserted claims, they would literally infringe if later in time. But because each reference is earlier than the '982 patent, they anticipate the claims.

## B.    The Required Analysis

A patent infringement analysis involves two steps: (1) claim construction and, (2) application of the properly construed claim to the accused product. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (*en banc*), *aff'd*, 517 U.S. 370 (1996). In the context of anticipation, of course, the claims would be reviewed against the prior art.

- 5 -

The claims are construed pursuant to the law set forth in the accompanying Motion for Summary Judgment of Non-Infringement, hereby incorporated by reference for the sake of avoiding repetition.  Where validity is the issue, rather than infringement, the properly construed claims are compared with the prior art, rather than to the accused device.

This motion can be decided solely by reviewing the claims and specification of the '982 patent relative to the specification and the prior art of record when the claims were allowed, on the one hand, and by reviewing the structure of anticipating references, on the other hand.  There is no need to go beyond the intrinsic evidence contained within the four corners of the '982 patent and the prior art over which its claims were allowed.

Once the Court construes the relevant claim terms, and then compares the claims with the anticipating references, it will find no reasonable jury could find that the claims of the patent valid in light of the anticipating disclosures and that, as a matter of law, Surgical Solutions is entitled to entry of summary judgment against Plaintiff on the issue of validity.

## III.   The Claims are Invalid Over Any One of Three Prior Art References that Were Not of Record

The accompanying Motion for Summary Judgment of Non-Infringement hinges on the Court's interpretation of a "needle with suture attached thereto" and the Court's finding that the accused device does not include suture, that the suture is not attached to the needle, or both.  However, those claim construction issues are relevant to this motion for summary judgment

of <u>invalidity</u> because the prior art references literally include suture, have that suture permanently affixed to the needle, and otherwise have structure that is so closely aligned with the Plaintiff's preferred embodiment that they all fall within even the narrowest of possible claim constructions.

The relevant prior art references are: (1) Plaintiff's own Acufex® Suture Punch; (2) the U.S. Fukuda Patent; and (3) and the German Sevinc Application. As discussed below, and as shown in the **Acufex Table**, the **Fukuda Table**, and the **Sevinc Table** attached to the Andras Decl., the asserted claims are invalid as anticipated by each one of these three references.

### A.    The Plaintiff's Old Acufex® Suture Punch

The claims are invalid over the Plaintiff's own Acufex® Suture Punch. As shown in the **Acufex Table**, the Acufex® Suture Punch is virtually identical to the '982 device, and Claims 1, 3, 5, 19, 20, 22, 24 and 25 are invalid for reading squarely on the old Acufex® Suture Punch.

In particular, even though the '982 patent was directed to an improvement of the old Acufex® Suture Punch covered by the '747 patent, the claims of the '982 patent are so broad that they are invalid as anticipated by the <u>structure</u> of the Acufex® Suture Punch.

### (1)    The Acufex® Suture Punch is Prior Art

The Acufex® Suture Punch is prior art to the '982 patent under 35 U.S.C. § 102(f), which provides that an inventor is entitled to a patent <u>unless</u> "he did not himself invent the subject matter sought to be patented."

- 7 -

The Acufex® Suture Punch was <u>not</u> invented by John Duran himself as evidenced by Mr. Duran's testimony and the face of the '747 patent (See Exh. E, p.1).   The asserted apparatus claims are invalid since they demonstrably cover the structure of the Acufex® Suture Punch.

### a.    John Duran Testified that He Did Not Invent the Claimed Structure

John Duran allegedly conceived of the method and apparatus of the '982 patent while flying back home from Missouri with the old Acufex® suture punch in hand.  (See Duran Dep. Tr., Exh. P, p.91, line 1 to p.92, line 1).

Mr. Duran said that he visited various surgeons in order to get their feedback on the performance of the Acufex® Suture Punch.  And, according to Mr. Duran, some surgeons were concerned over the height of its distal tip.  He further testified that, during the flight, he had a "eureka" event when he realized that he could tilt the needle down in a stowed position and further close the jaws to provide a lower profile for insertion through a smaller cannula.   Evidently, this eureka concept led to the "oval hole" '982 patent, the oval hole helping to support the needle in the stowed position.

### b.    John Duran Demonstrated that the Old Acufex® Suture Punch Contains the Claimed Structure

During his videotaped deposition, John Duran gutted Plaintiff's case when he demonstrated that the old Acufex® Suture Punch[1] is <u>already</u> structured

---

[1] The Acufex® Suture Punch was produced by Plaintiff under Bates No. SNE 14794 and was marked at the May 7, 2004 Deposition of '982 Inventor John Duran as Exhibit 6 (Exhibit 6 - Box with Contents; Exhibit 6A - Instructions; Exhibit 6B - Acufex® Suture Punch)

to support the needle in a low-profile, not-ready-to-punch, stowed position and then support the needle in an upstanding, ready-to-punch suturing position:



Inventor John Duran With
Prior Art Acufex® Suture Punch



Acufex® Suture Punch
Stowed Position



Acufex® Suture Punch
Suturing Position

The following photographs of the Acufex® Suture Punch's tip show what Mr. Duran is demonstrating above in close-up detail (*see* Exh. Q):


Acufex® Suture Punch with Needle Tilted Back
in the "Stowed Position"
as Demonstrated by John Duran


Acufex® Suture Punch with Needle Pulled into
the "Suturing Position"
as Demonstrated by John Duran

Mr. Duran even emphasized that the '982 patent claims cover "<u>any</u>

<u>construction</u>" that is "configured" to support the needle in a low-profile stowed

position.  (Duran Dep. Tr., Exh. P, p.188, line 9 to p.189, line 9):

> Q.  I'm trying to understand, I guess, Mr. Duran, if the
> word configured was put in this claim that you helped write to
> describe a particular structure or rather to describe any
> structure that accomplished the function that follows the
> word configured.
>
> MR. HEBERT:  Objection.  Asked and answered.
> You can answer again.
>
> A.  Any construction?
>
> Q.  Any construction.
>
> A.  Okay   That is – that's the patent.
>
> Q.  Mr. Hebert will object, but basically any means for
> performing that function?
>
> MR. HEBERT:  I'll take Mr. Andras' suggestion and I'll
> object.  Calls for legal conclusion.
>
> A.  Low profile, yes.  I mean that is what – that is what
> I was trying to describe there.
>
> Q.  Anything, anything.

A.  (witness indicated affirmatively)

Q.  That's a yes.

A.  Yes.

As can be appreciated from Mr. Duran's sworn testimony, in combination with his videotaped demonstration, the Acufex® Suture Punch is <u>already</u> structured to permit the suture needle to lie down at an inclined or reduced angle (See Duran Dep. Tr., Exh. P, p.86, lines 1-14).  Consequently, Mr. Duran's claims are invalid for being so broad that they cover the Acufex® Suture Punch that he was trying to improve.

**(2)    The Acufex® Suture Punch Anticipates the '982 Claims**

The Acufex® Suture Punch is very similar to the '982 device and each of the asserted apparatus claims from the '982 patent is invalid as anticipated by the structure of the Acufex® Suture Punch.  The following table shows how Claim 19 is anticipated by the Acufex® Suture Punch:

| '982 Claim | '982 Patent | Acufex® Suture Punch - Exh. "Q" |
|---|---|---|
| 19. A surgical apparatus comprising: | <br>(Fig. 1) | <br>Photo of Ex. 6 from Duran Depo |

| '982 Claim | '982 Patent | Acufex® Suture Punch - Exh. "Q" |
|---|---|---|
| a suture needle having suture attached thereto; | The '982 patent discloses a suture needle (yellow) having suture (blue) attached thereto:<br><br><br><br>*FIG. 2*<br><br>("needled suture" 20, from Fig. 2)<br><br>"Referring to FIG. 2, needled suture 20 includes a needle 30 co-axially aligned with suture thread 32 and attached (e.g., by crimping or clamping) to suture thread 32 at an attachment area 34." (3:43-46) | The Acufex® Suture Punch uses a suture needle (yellow) having suture (blue) attached thereto:<br><br> |
| a suture-passing forceps for passing the suture needle through tissue at a surgical site, the suture-passing forceps including: | <br><br>*FIG. 1*<br>(Fig. 1) | <br><br>Photo of Ex. 6 from Duran Depo |
| a support shaft elongated along a longitudinal axis; and | The '982 patent discloses an elongated support shaft (green):<br><br><br><br>(support shaft 18, from Fig. 1) | The Acufex® Suture Punch also includes an elongated support shaft (green):<br><br> |

| '982 Claim | '982 Patent | Acufex® Suture Punch - Exh. "Q" |
|---|---|---|
| a suturing assembly disposed at a distal end of the support shaft and including | The '982 patent discloses a suturing assembly (circled in red) disposed at a distal end of the elongated support shaft:<br><br><br><br>(From Fig. 1) | The Acufex® Suture Punch also includes a suturing assembly (circled in red) disposed at a distal end of the elongated support shaft:<br><br> |
| first and second jaw members, each supported by the support shaft, | The '982 patent discloses first and second jaw members (orange and purple) that are each supported by the support shaft (green):<br><br><br><br>(From Fig. 1)<br><br>"Forceps 10 includes a suturing assembly 12 having a lower stationary jaw 14 and an upper moveable jaw 16, both of which are pivotally supported by a support shaft 18." (3:1-4) | The Acufex® Suture Punch also includes first and second jaw members (orange and purple) supported by the support shaft (green):<br><br> |

| '982 Claim | '982 Patent | Acufex® Suture Punch - Exh. "Q" |
|---|---|---|
| the first jaw member having a passage transverse to the length of the first jaw member for supporting the suture needle in a suturing position at a selected angular orientation relative to the length of the member, | The '982 patent discloses a first jaw member, the lower jaw member, having a passage transverse to its length:  (Based on Fig. 3) <br><br> "…suture passage 42 … extends through the lower jaw 14 from a lower opening 44 to a larger, upper opening 46…" (3:5-56). <br><br>  (Based on Fig. 3) <br><br> "Continuously pulling suture 32 causes needle 30 to 'snap' in to lower opening 44 alerting the user that needled suture 20 is in the suturing position." (4:46-49) | The Acufex® Suture Punch also includes a first jaw member, its lower jaw, having a passage transverse to its length:   <br><br> The first jaw member supports the suture needle at a selected angular orientation that is inclined relative to the length of the member:  |

- 14 -

| '982 Claim | '982 Patent | Acufex® Suture Punch - Exh. "Q" |
|---|---|---|
| the first jaw member configured to support the suture needle in a stowed position at an angle less than the selected angle of the suture needle in the suturing position. | The '982 patent discloses that the first jaw member is configured to support the needle in a stowed position at an angle less than the selected angle of the suture needle in the suturing position:<br><br><br><br>(From Fig. 3)<br><br>"[S]uturing assembly 12 is configured to support needled suture 20 in a stowed, non-suturing position (i.e., not ready to be punched) prior to delivering suture-passing forceps 10 to the surgical site." (3:36-40).<br><br>"Wall 52 serves to support body portion 36 of needle 30 in its inclined, non-suturing position. Upper opening 46 has a shape resembling an elongated groove …" (3:59-61) | The Acufex® Suture Punch also includes a first jaw member that is configured to support the needle in a stowed position at an angle less than the selected angle of the suture needle in the suturing position:<br><br><br><br>(*See* Duran Depo. Tr., Exh. P, p.89, lines 2-11) |

Surgical Solutions respectfully submits that each of the asserted claims is invalid as anticipated by the Acufex® Suture Punch as set forth in the **Acufex Table**.

## B.    Fukuda's U.S. Patent

The claims are invalid over U.S. Patent No. 5,824,009 to Fukuda et al. (hereafter "Fukuda's U.S. Patent"), a copy of which is attached to the Andras Decl. as Exhibit L. As shown in the **Fukuda Table**, the Fukuda device discloses suture passing forceps that use a needle that has suture attached thereto and is moved from a stowed position to a suturing position, and Claims 1, 3, 5, 19, 20, 22, 24 and 25 are invalid for reading squarely on Fukuda's U.S. Patent.

### (1)    Fukuda's EPO Application is Irrelevant

There are two "Fukudas" in this case.  There is a European version that is not prior art even though it was disclosed to the USPTO, and a U.S. version that is prior art but was <u>not</u> disclosed to the USPTO.  They should not be confused.

The Plaintiff evidently learned of the European version as follows. On or about March 31, 1998, based on its U.S. application that was filed on April 2, 1997, Plaintiff filed an International Patent Application No. PCT/US98/06357 under the Patent Cooperation Treaty ("Plaintiff's International  Application").

On or about July 24, 1998, in its role as the International Searching Authority, the European Patent Office ("EPO") issued an International Search Report that cited European Patent Application No. 0778004A1 to Fukuda ("Fukuda's EPO Application"). Of significance, Fukuda's EPO Application was cited as a <u>novelty-destroying</u> "X" reference against Plaintiff's International Application. (*see* Exh. J. p.23)

However, with respect to the '982 patent, Fukuda's EPO Application is not prior art[2].  On the other hand, Fukuda's U.S. Patent clearly <u>is</u> prior art[3]. The distinction between the two publications is critically important to this case.

---

[2] Fukuda's EPO Application is <u>not</u> prior art under Section 102 because it was published two months <u>after</u> Duran filed his U.S. patent application.

[3] Fukuda's U.S. Patent is prior art because it was filed in 1995, <u>prior</u> to inventor John Duran's conception of the invention disclosed in the '982 patent ("some time in late 1996 or early 1997" per Plaintiff's Response to Interrogatory No. 5, Exh. Y, p.11).  Under 35 U.S.C. § 102(e), an inventor is entitled to a patent <u>unless</u> "the invention was described in … a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent…"

The Plaintiff may try to dismiss Fukuda's U.S. Patent by noting that it filed an Information Disclosure Statement ("IDS") listing Fukuda's EPO Application during the prosecution of the '982 patent. Plaintiff may even note that Fukuda's EPO Application (0 778 004 A1) is printed on the front of the '982 patent under "References Cited":

FOREIGN PATENT DOCUMENTS

0 778 004 A1    6/1997    European Pat. Off. .

Plaintiff may then argue that the Patent Examiner effectively "considered" Fukuda's U.S. Patent when it allowed the claims in the '982 patent because Fukuda's EPO Application is equivalent Fukuda's U.S. Patent.

It does not work that way. An applicant cannot disclose a prior art reference by disclosing a different, non-art reference.

The mere listing of a publication on an IDS does not cause the Patent Examiner to regard the publication as prior art. As noted by the United States Claims Court, for example, "The Patent & Trademark Office clearly recognize[s] that <u>an applicant may choose to furnish material information in an Information Disclosure Statement which does not necessarily depict prior art</u>. The Court, therefore, finds that [applicant's] disclosure of the document in question in the required disclosure statement should not be considered an acknowledgment, declaration, concession or any kind of recognition of the fact that the disclosed publication is prior art." <u>Standard Manufacturing Company v. United States</u>, 25 Cl. Ct. 1, 61 (1991) (emphasis added).

Moreover, at 37 C.F.R. § 1.97(h), the Patent Rules provide that "[t]he filing of an information disclosure statement shall not be construed to be an

admission that the information cited in the statement is, or is considered to be, material to patentability."

It obviously works both ways. If the applicant does not concede that a listed publication is prior art, it also follows that the Examiner does not automatically treat a listed publication as prior art.

As already established, Fukuda's EPO Application does not qualify as prior art to the '982 patent. By putting his initials on the IDS, the Patent Examiner simply acknowledged that Fukuda's EPO Application was listed in the IDS, and that a copy was received, nothing more:.

> Consideration by the examiner of the information submitted in an IDS means that the examiner will consider the documents in the same manner as other documents in Office search files are considered by the examiner while conducting a search of the prior art in a proper field of search. The initials of the examiner placed adjacent to the citations on the PTO--1449 or PTO/SB/08A and 08B or its equivalent mean that the information has been considered by the examiner to the extent noted above.

Manual of Patent Examining Procedure § 609, Section C(2), "Complying Information Disclosure Statements" (see Exh. O)

As a matter of law and common sense, therefore, the Patent Examiner did <u>not</u> test the patentability of the '982 patent's claims against Fukuda's EPO publication. And, of significance, the Examiner was completely unaware of Fukuda's U.S. Patent.

**(2)     Fukuda's U.S. Patent Anticipates the '982 Claims**

The Fukuda device is very similar to the '982 device and each of

the asserted '982 claims is invalid as anticipated by Fukuda's U.S. Patent.  The

following table directed to Claim 19 should make this clear:

| '982 Claim | '982 Patent | Fukuda's U.S. Patent - Exhibit "L" |
|---|---|---|
| 19. A surgical apparatus comprising: | <br>(Fig. 1) | <br>FIG. 12 |
| a suture needle having suture attached thereto; | In the '982 patent, the suture-passing forceps are used for passing a suture needle (yellow), having suture (blue) attached thereto:<br><br><br>FIG. 2<br>("needled suture" 20, from Fig. 2)<br><br>"Referring to FIG. 2, needled suture 20 includes a needle 30 co-axially aligned with suture thread 32 and attached (e.g., by crimping or clamping) to suture thread 32 at an attachment area 34."  (3:43-46) | In Fukuda's U.S. Patent, the disclosed suture-passing forceps are used for passing a suture needle (yellow), having suture (blue) attached thereto:<br><br><br>FIG. 7D<br>"The needle with thread 3 is constituted of a needle body 3a … and of a thread 3b attached to one end…" (5:37-43)<br><br>"When the thread 3b is <u>attached</u> to the needle body 3a, a part of the needle body 3a on a side of the proximal end surface 3a3 may be caulked to reduce its diameter, as shown in Fig. … 7(d)" (6:28-31) |
| a suture-passing forceps for passing the suture needle through tissue at a surgical site, the suture-passing forceps including: | <br>FIG. 1<br>(Fig. 1) | <br>FIG. 12<br>(Fig. 12) |

- 19 -

| | | |
|---|---|---|
| a support shaft elongated along a longitudinal axis; and | In the '982 patent, the suture-passing forceps include an elongated support shaft (green):<br><br><br><br>(support shaft 18, from Fig. 1) | In Fukuda's U.S. Patent, the suture-passing forceps include an elongated support shaft (green):<br><br><br><br>(Fig. 12)<br><br>Casing 14. |
| a suturing assembly disposed at a distal end of the support shaft and including | In the '982 patent, the suture-passing forceps include a suturing assembly (circled in red) disposed at a distal end of the elongated support shaft (green):<br><br><br><br>(From Fig. 1) | In Fukuda's U.S. Patent, the suture-passing forceps include a suturing assembly (circled in red) disposed at a distal end of the elongated support shaft (green):<br><br><br><br>(From Fig. 12) |
| first and second jaw members, each supported by the support shaft, | In the '982 patent, the suturing assembly includes first and second jaw members (orange and purple), each supported by the support shaft (green):<br><br><br><br>(From Fig. 1)<br><br>"Forceps 10 includes a suturing assembly 12 having a lower stationary jaw 14 and an upper moveable jaw 16, both of which are pivotally supported by a support shaft 18." (3:1-4) | In Fukuda's U.S. Patent, the suturing assembly includes first and second jaw members (orange and purple), each supported by the support shaft (green):<br><br><br><br>(From Fig. 12)<br><br>"In Fig. 12, the shafts 1, 2 are disposed on a tip of a casing 14…" (12:66-67).<br><br>As to moveability, the roles may be reversed. Fig. 12 shows the upper member ("shaft 1") as movable, but the inventors explicitly note |

| | | |
|---|---|---|
| | | that the roles may be reversed: "[O]ne shaft, <u>for example</u>, the second shaft 2, formed with the needle receiver 5 and the container 6, is fixedly connected to the casing 14; the other shaft, <u>for example</u>, the first shaft 1 formed with the needle stand 4, is pivotally mounted to the casing 14." (13:2-6, emphasis added) |
| the first jaw member having a passage transverse to the length of the first jaw member for supporting the suture needle in a suturing position at a selected angular orientation relative to the length of the member, | In the '982 patent, the first jaw member has a passage (pink) transverse to the length of the first jaw member for supporting the suture needle (yellow) in a suturing position at a selected angular orientation relative to the length of the member:  (Based on Fig. 3) "…suture passage 42 … extends through the lower jaw 14 from a lower opening 44 to a larger, upper opening 46…" (3:5-56).  (Based on Fig. 3) "Continuously pulling suture 32 causes needle 30 to 'snap' in to lower opening 44 alerting the user that needled suture 20 is in the suturing position." (4:46-49) | In Fukuda's U.S. Patent, the suturing assembly's member has a passage (pink) transverse to the length of the member for supporting the suture needle in a suturing position at a selected angular orientation inclined relative to the length of the member: Fukuda discloses several embodiments. In one embodiment, Fukuda discloses a so-called "needle stand 4" and a hole 1b (6:52-53).:  (Based on Fig. 2)  (From Fig. 6a) "[T]he shafts 1, 2 are made open as shown in FIG. 5(a). At the same time, tension is given to the thread 3b … and this power is transmitted to the needle body 3a through the thread 3b, thereby pulling the needle body 3a down to the hole 1b, thereby rotating the needle body 3a around the corner of the proximal end surface 3a3 in contact with the needle stand 4 formed inclusively with the hole 1b, and thereby rendering the needle body 3a stand up as shown in Fig. 7(a)." (10:13-22). In another embodiment, the hole 1b opens into a "stepwise stage 4a" that further opens into a groove 6a (11: 40-41):  (Based on Fig. 9A) |

| | | |
|---|---|---|
| the first jaw member configured to support the suture needle in a stowed position at an angle less than the selected angle of the suture needle in the suturing position. | In the '982 patent, the jaw member is configured to support the suture needle (yellow) in a stowed position at an angle less than the selected angle of the suture needle in the suturing position:<br><br><br>(From Fig. 3)<br><br>"[S]uturing assembly 12 is configured to support needled suture 20 in a stowed, non-suturing position (i.e., not ready to be punched) prior to delivering suture-passing forceps 10 to the surgical site." (3:36-40).<br><br>"Wall 52 serves to support body portion 36 of needle 30 in its inclined, non-suturing position. Upper opening 46 has a shape resembling an elongated groove …" (3:59-61) | In Fukuda's U.S. Patent, the jaw member is configured to support the suture needle (yellow) in a stowed position at an angle less than the selected angle of the suture needle in the suturing position:<br><br><br>(Fig. 9A - Container 6 in Both Jaws)<br><br>"The needle body 3a is … contained so that … the needle body 3a is placed to a side of the hole 1b formed on the shaft 1, and a part of the thread 3b remains out toward the tip of the second shaft 2. The handle 7 is controlled to make the shafts 1, 2 close, and the container 6 is covered by the first shaft 1." (9:52-58)<br><br>-OR-<br><br><br>(Fig. 8 - Container 6 in Jaw 1)<br><br>-OR-<br><br>(Fig. 2 - Container 6 in Jaw 2) |

Surgical Solutions respectfully submits that each of the asserted

claims is invalid as anticipated by the Fukuda's U.S. Patent as set forth in the

**Fukuda Table**.

### C.    The German Sevinc Application

The claims are also invalid over German Patent Application No. DE 42 35 602 A1 to Sevinc (hereafter "the German Sevinc Application"), a copy of which is attached to the Andras Decl. as **Exhibit "N"**.  A complete English translation of the German Sevinc Application is also attached to the Andras Decl. as **Exhibit "O"**.  As shown in the table under the **Sevinc Tab**, the Sevinc device is very similar to the '982 device, and Claims 1, 3, 5, 19, 20, 22, 24 and 25 are invalid for reading squarely on the German Sevinc Application.

The German Sevinc Application was listed as a novelty-destroying "X" reference to Fukuda's EPO Application, provided to Plaintiff with the International Search Report mailed on or about July 24, 1998, but it was never disclosed to the USPTO  (*see* Exh. K, p.23).

The Sevinc device is also very similar to the '982 device and each of the asserted '982 claims is invalid as anticipated by the German Sevinc Application.  The following table directed to Claim 19 should make this clear:

| '982 Claim | '982 Patent | German Sevinc Application - Exhs. "N" & "O" |
|---|---|---|
| 19. A surgical apparatus comprising: | <br>(Fig. 1) | The German Sevinc Application is directed to a "suturing device", or "surgical forceps," but it does not include an illustration of the overall device. (1:1-3). |

| '982 Claim | '982 Patent | German Sevinc Application - Exhs. "N" & "O" |
|---|---|---|
| a suture needle having suture attached thereto; | The '982 patent discloses a suture needle (yellow) having suture (blue) attached thereto:<br><br><br>**FIG. 2**<br>("needled suture" 20, from Fig. 2)<br><br>"Referring to FIG. 2, needled suture 20 includes a needle 30 co-axially aligned with suture thread 32 and attached (e.g., by crimping or clamping) to suture thread 32 at an attachment area 34."  (3:43-46) | The German Sevinc Device also includes a suture needle (yellow) having suture (blue) attached thereto:<br><br><br>(From Fig. 1)<br><br>"[A] surgical needle [10] with a thread [12] which is joined in one piece to the head [11] of the same…" (3:5-6) |
| a suture-passing forceps for passing the suture needle through tissue at a surgical site, the suture-passing forceps including: | <br>(Fig. 1) | <br>(Fig. 1) |
| a support shaft elongated along a longitudinal axis; and | The '982 patent discloses an elongated support shaft (green):<br><br><br>(support shaft 18, from Fig. 1) | The German Sevinc device also includes an elongated support shaft (green):<br><br><br>(Fig. 1)<br><br>Shaft 6. |

| '982 Claim | '982 Patent | German Sevinc Application - Exhs. "N" & "O" |
|---|---|---|
| a suturing assembly disposed at a distal end of the support shaft and including | The '982 patent discloses a suturing assembly (circled in red) disposed at a distal end of the elongated support shaft:<br><br><br><br>(From Fig. 1) | The German Sevinc device also includes a suturing assembly (circled in red) disposed at a distal end of the elongated support shaft:<br><br><br><br>(From Fig. 1) |
| first and second jaw members, each supported by the support shaft, | The '982 patent discloses first and second jaw members (orange and purple) that are each supported by the support shaft (green):<br><br><br><br>(From Fig. 1)<br><br>"Forceps 10 includes a suturing assembly 12 having a lower stationary jaw 14 and an upper moveable jaw 16, both of which are pivotally supported by a support shaft 18." (3:1-4) | The German Sevinc device also includes first and second jaw members (orange and purple) that are each supported by the support shaft (green):<br><br><br><br>(From Fig. 1)<br><br>As shown above, the jaw parts 2, 3 are supported by shaft 6. |

| '982 Claim | '982 Patent | German Sevinc Application - Exhs. "N" & "O" |
|---|---|---|
| the first jaw member having a passage transverse to the length of the first jaw member for supporting the suture needle in a suturing position at a selected angular orientation relative to the length of the member, | The '982 patent discloses a first jaw member, the lower jaw member, having a passage transverse to its length:<br><br><br><br>(Based on Fig. 3)<br><br>"…suture passage 42 … extends through the lower jaw 14 from a lower opening 44 to a larger, upper opening 46…" (3:5-56).<br><br><br><br>(Based on Fig. 3)<br><br>"Continuously pulling suture 32 causes needle 30 to 'snap' in to lower opening 44 alerting the user that needled suture 20 is in the suturing position."  (4:46-49) | The German Sevinc device also includes a first jaw member, its lower jaw, having a passage transverse to its length:<br><br><br><br>(Based on Fig. 1)<br><br>"The bore 8 is used for taking up a surgical needle 10, at the head 11 of which is joined a thread 12…" (6:10-11)<br><br><br><br>(From Fig. 1)<br><br>"In the present case, this bore 8 runs at an angle of approximately 60°  relative to the inner surface of the rigid jaw part 2.  If it is necessary, the bore 8 may also run at another angle between 45° and 90"…" (6:1-3).<br><br>"[T]he needle 10 can be pulled by [thread 12] into the bore 8 and thus into position, which is shown in Fig. 1…" (6:20-21). |

| '982 Claim | '982 Patent | German Sevinc Application - Exhs. "N" & "O" |
|---|---|---|
| the first jaw member configured to support the suture needle in a stowed position at an angle less than the selected angle of the suture needle in the suturing position. | The '982 patent discloses that the first jaw member is configured to support the needle in a stowed position at an angle less than the selected angle of the suture needle in the suturing position:<br><br><br><br>(From Fig. 3)<br><br>"[S]uturing assembly 12 is configured to support needled suture 20 in a stowed, non-suturing position (i.e., not ready to be punched) prior to delivering suture-passing forceps 10 to the surgical site." (3:36-40).<br><br>"Wall 52 serves to support body portion 36 of needle 30 in its inclined, non-suturing position. Upper opening 46 has a shape resembling an elongated groove …" (3:59-61) | The German Sevinc device also includes a first jaw member that is cofigured to support the needle in a stowed position at an angle less than the selected angle of the suture needle in the suturing position:<br><br><br><br>(Based on Fig. 1)<br><br>"In the rigid jaw part 2, in the side which is turned toward the moveable jaw part 3, a groove-like hollow part 16 is incorporated, the length and cross section of which are selected in such a way that they can take up the needle 10… The needle 10 is secured in its position in the hollow part 16 by means of the closed or folded-together jaw part 3." (7:18 to 8:1) |

Surgical Solutions respectfully submits that each of the asserted claims is invalid as anticipated by the German Sevinc Application as set forth in the **Sevinc Table**.

# IV.  Summary

The USPTO was not aware of the Acufex® Suture Punch, Fukuda's U.S. Patent, or the German Sevinc Application when it issued the '982 patent. If the USPTO had been aware of what this Court knows, the asserted claims of the '982 patent would not have issued.

Based upon the above, Surgical Solutions respectfully requests that the Court enter summary judgment in favor of Surgical Solutions, finding that the

- 27 -

asserted claims of the '982 patent are invalid as anticipated by the Acufex® Suture Punch, Fukuda's U.S. Patent, and/or the German Sevinc Application.

      Surgical Solutions also respectfully requests that, subsequent to considering and granting this motion for summary judgment, the Court designate this as an exceptional case under 35 U.S.C. § 285, and thereafter award Surgical Solutions its attorneys' fees for having to defend this action.

SURGICAL SOLUTIONS, LLC

Date: August 27, 2004    By:    /S/: Joseph C. Andras
    Joseph C. Andras (CA Bar No. 138,181)
    Vic Y. Lin (CA Bar No. 192,292)
    Myers Dawes Andras & Sherman, LLP
    19900 MacArthur Boulevard, 11th Floor
    Irvine, CA 92612
    Tel: (949) 223-9600
    Fax: (949) 223-9610

    /S/: Louis M. Ciavarra
    Louis M. Ciavarra (546,481)
    Bowditch & Dewey, LLP
    311 Main Street, P.O. Box 15156
    Worcester, MA 01615-0156
    Tel: (508) 926-3408
    Fax: (508) 929-3011