IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SMITH & NEPHEW, INC., | Civil Action No.  03CV 12310 NMG |
| Plaintiff, | |
| v. | |
| SURGICAL SOLUTIONS, LLC, | |
| Defendant. | |

---

**DECLARATION OF JOSEPH C. ANDRAS IN SUPPORT OF
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT OF
NON-INFRINGEMENT AND INVALIDITY**

---

I, Joseph C. Andras, declare and state as follows:

1.      I am a partner in the law firm of Myers, Dawes Andras & Sherman, LLP and am licensed to practice law in the State of California.  I have been admitted *pro hac vice* for the purposes of representing Defendant Surgical Solutions, LLC (hereinafter "Surgical Solutions") before this Court in this matter and make this declaration in support of Surgical Solutions' Motion For Summary Judgment of Non-Infringement and in support of Surgical Solutions' Motion For Summary Judgment of Invalidity.

2.      Surgical Solutions respectfully moves for summary judgment that its ExpresSew® suture passer does not infringe plaintiff Smith & Nephew, Inc.'s U.S. Patent No. 5,947,982 (hereafter "the '982 patent"), and that the '982 patent is invalid as anticipated by the prior art.  In further support of its motions,

Surgical Solutions is also submitting a declaration of Tom Weisel, Surgical's Vice President of Engineering, and Memorandums in Support.

3.    A true and correct copy of the '982 patent is attached hereto as **Exhibit "A"**.

4.    S&N commenced this action by filing a Complaint on November 19, 2003, and a First Amended Complaint dated December 12, 2003 (hereafter "Complaint"), seeking damages and injunctive relief for Surgical Solutions' alleged infringement of its '982 patent.  A copy of the Second Amended Complaint is attached hereto as **Exhibit "B"**.

5.    Surgical Solutions answered S&N's Complaint on January 20, 2004.  A copy of Defendant's Answer to Amended Complaint is attached hereto as **Exhibit "C"**.

6.    Surgical Solutions filed a Motion for Leave to File Counterclaims on June 25, 2004, and lodged a proposed counterclaim with the Court, a copy of which is attached hereto as **Exhibit "D"**.  As of this date, the motion for leave to file is still pending.

## The Plaintiff's Patent Infringement Allegations

7.    The Plaintiff alleges that Surgical Solutions has been and is now infringing, actively inducing infringement of, and/or contributing to the infringement of, the '982 patent.  (*See* First Amended Complaint, Exh. B, ¶ 7)

8.    The '982 patent issued with twenty-six (26) claims, including some apparatus claims and some method claims (See '982 patent, Exh. A, pp.9-10):

| Claim(s) | Subject |
|----------|---------|
| 1-9 | A suture-passing forceps |
| 10-18 | A method of delivering a suture needle |
| 19 | A surgical apparatus |
| 20-26 | A suture-passing apparatus |

9.      The Plaintiff alleges that apparatus Claims 1, 3, 5, 19, 20, 22, 24, and 25 of the '982 patent are infringed by Surgical Solutions' ExpresSew® Suture Passer.  (*See* excerpts from Plaintiff's original and supplemental responses to Interrogatory No. 3, Exh. Y, pp.6-8 and Exh. Z, pp.3-10)

10.      Three of the asserted claims are in independent form, i.e. claims 1, 19 and 20, and five of the asserted claims are dependent form, i.e. claims 3, 5, 22, 24, and 25.  (See '982 patent, Exh. A., pp.9-10)

11.      Claim 1 of the '982 patent reads as follows (with formatting and alphabetic clause designations added for purpose of reference)(*See* '982 patent, Exh. A, p.9):

| | |
|---|---|
| a | 1. A suture-passing forceps |
| b | for passing a suture needle, having suture attached thereto, through tissue at a surgical site, the suture-passing forceps comprising: |
| c | a support shaft elongated along a longitudinal axis; and |
| d | a suturing assembly disposed at a distal end of the support shaft and including: |
| e | a member configured as a first jaw and supported by the support shaft, |
| f | the member having a passage transverse to the length of the member for supporting the suture needle in a suturing position at a selected angular orientation inclined relative to the length of the member |
| g | and for supporting the suture needle in a stowed position at an angle less than the selected angle of the suture needle in the suturing position. |

12.    Claim 3 of the '982 patent of the '982 patent reads as follows (with formatting and alphabetic clause designations added for purpose of reference)(*See* '982 patent, Exh. A, p.9)(*See* '982 patent, Exh. A, p.9):

|   |   |
|---|---|
|   | 3. The suture-passing forceps of claim 1 wherein |
| a | the passage |
| b | includes a wall inclined relative to the passage, |
| c | the wall extending from a first opening having a diameter approximately that of the needle |
| d | to a second opening, larger than the first opening. |

13.    Claim 5 of the '982 patent reads as follows (with formatting and alphabetic clause designations added for purpose of reference)(*See* '982 patent, Exh. A, p.9)(*See* '982 patent, Exh. A, p.9):

|   |   |
|---|---|
|   | 5. The suture-passing forceps of claim 1 wherein |
| a | the suturing assembly |
| b | further includes a second jaw pivotally attached to the support shaft for movement toward and away from the first jaw. |

14.    Claim 19 of the '982 patent reads as follows (with formatting and alphabetic clause designations added for purpose of reference)(*See* '982 patent, Exh. A, p.9)(*See* '982 patent, Exh. A, p.10):

|   |   |
|---|---|
| a | 19. A surgical apparatus comprising: |
| b | a suture needle having suture attached thereto; |
| c | a suture-passing forceps for passing the suture needle through tissue at a surgical site, the suture-passing forceps including: |
| d | a support shaft elongated along a longitudinal axis; and |
| e | a suturing assembly disposed at a distal end of the support shaft and including: |
| f | first and second jaw members, each supported by the support shaft, |
| g | the first jaw member having a passage transverse to the length of the first jaw member for supporting the |

|   | suture needle in a suturing position at a selected angular orientation relative to the length of the member, |
|---|---|
| h | the first jaw member configured to support the suture needle in a stowed position at an angle less than the selected angle of the suture needle in the suturing position. |

15.    Claim 20 of the '982 patent reads as follows (with formatting and alphabetic clause designations added for purpose of reference)(*See* '982 patent, Exh. A, p.10):

|   |   |
|---|---|
| a | 20. A suture-passing apparatus |
| b | for passing a suture needle, having suture attached thereto, through tissue at a surgical site, |
|   | the suture-passing apparatus comprising: |
| c | a support shaft elongated along a longitudinal axis; and |
| d | a suturing assembly disposed at a distal end of the support shaft and including: |
| e | a member configured to be immovably supported by the support shaft, |
| f | the member having a passage transverse to the length of the member for supporting the suture needle in a suturing position at a selected angular orientation relative to the length of the member, |
| g | the member configured to support the needle in a stowed position at an angle less than the selected angle of the suture needle in the suturing position. |

16.    Claim 22 of the '982 patent reads as follows (with formatting and alphabetic clause designations added for purpose of reference)(*See* '982 patent, Exh. A, p.10):

|   |   |
|---|---|
|   | 22. The suture-passing forceps of claim 20 wherein |
| a | the passage |
| b | includes a wall inclined relative to the passage, |
| c | the wall extending from a first opening having a diameter approximately that of the needle |
| d | to a second opening, larger than the first opening. |

17.    Claim 24 of the '982 patent reads as follows (with formatting and alphabetic clause designations added for purpose of reference)(*See* '982 patent, Exh. A, p.10):

|   | 24. The suture-passing forceps of claim 20 wherein |
|---|---|
| a | the member is a first jaw |
| b | configured to support the suture needle in an inclined position. |

18.    Claim 25 of the '982 patent reads as follows (with formatting and alphabetic clause designations added for purpose of reference)(*See* '982 patent, Exh. A, p.10):

|   | 25. The suture-passing forceps of claim 24 wherein |
|---|---|
| a | the suturing assembly |
| b | further includes a second jaw pivotally attached to the support shaft for movement toward and away from the first jaw. |

**Plaintiff's '982 Patent is Closely Related to Plaintiff's '747 Patent**

19.    In addition to the '982 patent, the Plaintiff also owns U.S. Patent No. 5,730,747 (hereafter "the '747 patent").  A true and correct copy of the '747 patent is attached hereto as **Exhibit "E"**.  (*See* '982 patent, Exh. A, p.1; '747 patent, Exh. E, p.1).

20.    The '747 and '982 patents contain many figures that are virtually identical.  (*See* e.g. '747 patent, Exh. E, p.3, Figure 1 and p.5, Figure 3; and '982 patent, Exh. A, p.2, Figures 1 and 2)

21.    The '982 patent explicitly incorporates the disclosure of the '747 patent application by reference.  (*See* '982 patent, Exh. A, p.1 and p.8, Col.3, lines 26-29)(referring to it as "application U.S. Ser. No. 08/603,859").

22.     The '747 patent is closely related to the '982 patent such that its content and prosecution history are useful for construing the claims of the '982 patent.

## Prosecution Histories of the '747 and '982 Patents

23.     The United States Patent and Trademark Office ("USPTO") retains a public record of the prosecution history for all patent applications.  The prosecution history of the '747 and '982 patents, include, among other things, all documents filed by the applicant and all documents issued by the USPTO during the prosecution of the patent application.   (*See* '747 Parent Application Prosecution History, Exh. 1; '747 CIP Application Prosecution History, Exh. 2; and '982 patent prosecution history, Exh. 3).

### (a) The Plaintiff's '747 Patent

24.     The '747 patent issued on March 24, 1998 from U.S. Application No. 603,859 filed on February 22, 1996 by Steven W. Ek, Richard E. Walton, and Paul Alex Torrie (hereafter "the '747 CIP Application"), which patent application was a continuation-in-part of Application No. 479,514 filed on January 7, 1995 by Steven W. Ek and Richard E. Walton (hereafter "the '747 Parent Application").  ('747 patent, Exh. E, p.1)

25.     The prosecution history of the '747 patent is contained, in chronological order,  in the '747 Parent Application Prosecution History and '747 CIP Application Prosecution History.  (See Exh. 1 and Exh. 2)

26.    The patent Examiner reviewing the '747 Parent and CIP Applications (*See* Exh. 1 and Exh. 2) repeatedly rejected the Plaintiff's claims based on U.S. Pat. No. 3,349,772 to Rygg ("the Rygg patent").  A true and correct copy of the Rygg patent is attached hereto as **Exhibit "F"**.  (See '747 Parent Application Prosecution History, Exh. 1, p.58; '747 CIP Application Prosecution History, Exh. 2, p.83, and Exh. 2 p.106; *see also* the Rygg patent, Exh. F).

27.    The Rygg patent discloses a scissors-like suturing device. (*See* Rygg patent, Exh. F, Figure 1).

28.    The '747 application claims that required "an axially elongated support shaft" were rejected over the Rygg patent.  (*See* '747 Parent Application Prosecution History, Claim 1, Exh. 1, p.18; '747 CIP Application Prosecution History, Claim 1, Exh. 2, p.41).

29.    In each of his three Office Action rejections, the Examiner reviewing the '747 application claims asserted that Rygg discloses <u>an elongated support shaft</u> at the "proximal end of 11", as follows:

> Rygg discloses a suture passing forceps (10), <u>an elongated support shaft (the proximal end of 11)</u>, a suture holder (25), a suture inlet (19), and an actuatable member (12).

> (7/19/96 Office Action, Exh. 1, p.58, ¶9; 11/19/96 Office Action, Exh. 2, p.83, ¶10; and 4/20/97 Office Action, Exh. 2. p.106, ¶3, emphasis added).

30.    The following annotated figure fairly and accurately depicts the Rygg patent's scissors-like suturing apparatus, with emphasis added to the

"proximal end of 11" that is referenced by the Examiner as an "elongated support shaft" (See Rygg patent, Exh. F, Figure 1):



31.     The Plaintiff never took any issue with the Examiner's multiple assertions that Rygg's scissors-like device includes an elongated support shaft.  (See '747 Parent Application Prosecution History, Exh. 1; '747 Parent Application Prosecution History, Exh. 2)

32.     In the '747 parent application, the Plaintiff did not respond to the Examiner's first rejection over the Rygg patent, and the '747 Parent Application went abandoned in favor of the '747 CIP Application.  (See '747 Parent Application Prosecution History, Exh. 1, p.63)

33.     In the '747 CIP application, in response to the Examiner's second and third rejections over the Rygg patent, the Plaintiff's written Responses took issue with some of the Examiner's other assertions, but conceded through silence that Rygg's scissors-like device includes an elongated support shaft (See '747 CIP Application Prosecution History, Exh. 2, pp.98-104; *see also* Exh. 2, pp.113-120).

<u>(b) The Plaintiff's '982 Patent</u>

34.    The Plaintiff's '982 patent issued on September 7, 1999 from U.S. Application No. 08/832,061 filed on April 2, 1997.  (See '982 patent, Exh. A, p.1).

35.    The prosecution history of the '982 patent is contained in the '982 Patent Application Prosecution History.  (See Exh. 3)

36.    The '982 patent application was filed on April 2, 1997 with twenty-one original claims -- application claims 1-21.  (See '982 patent prosecution history, Exh. 3, pp.30-33).

37.    The Plaintiff also filed an Information Disclosure Statement ("IDS") on April 2, 1997. ("Plaintiff's First IDS") (See '982 patent prosecution history, Exh. 3, pp.39-42).

38.    The Plaintiff's First IDS listed a number of references, including U.S. Pat. No. 3,946,840  to Schweizer ("the Schweizer '840 patent") (See '982 patent prosecution history, Exh. 3, pp.39-42; Schweizer '840, Exh. G). A true and correct copy of the Schweizer '840 patent is attached hereto as **Exhibit "G"**.

39.    On August 4, 1998, the Examiner allowed the original application claims 1-21, as filed, without comment, while citing the '747 patent on a Notice of References Cited. (See '982 patent prosecution history, Exh. 3, pp.43-45).

40.    On August 6, 1998, presumably before it received the Notice of Allowance mailed on August 4, 1998, the Plaintiff filed another IDS ("Plaintiff's

Second IDS"), listing six additional references that were cited in a July 24, 1998 communication from a foreign patent office in a counterpart application.  (See '982 patent prosecution history, Exh. 3, pp.50-54; see also International Application, Exh. J, pp. 23-24).

41.    The following references were among those listed in the Plaintiff's Second IDS (See '982 patent prosecution history, Exh. 3, p.51; Li patent, Exh. I):

|  |  |
|---|---|
| 5,318,577 | Li |
| 5,397,325 | Della Badia et al. |
| EP 0 778 004 A1 | Fukuda (sometimes hereafter "Fukuda's EPO Application") |

42.    After receiving the Plaintiff's Second IDS, the Examiner withdrew his Notice of Allowance and issued an Office Action rejecting application claims 1-4 and 11-15 under 35 U.S.C. § 102(b) as anticipated by U.S. Patent No. 5,318,577 to Li (the "Li patent") (See '982 patent prosecution history, Exh. 3, pp.46-49).  A true and correct copy of the Li patent is attached hereto as **Exhibit "I"**.

43.    The following composite figure based on Figures 1, 23, 26, and 27 from the Li patent fairly and accurately depicts the suture-passing forceps shown in the Li patent (see Li patent, Exh. I, pp. 2 and 6-7):



44.    As shown in the composite figure above, Li's suture passer uses a needle with suture attached thereto and, just like in the '982 patent, the user pulls the suture (blue) to rotate Li's needle (yellow) from a low-profile, not ready to be punched, stowed position into an upright, ready to be punched, suturing position.  (See Li patent, Exh. I)

45.    However, Li's suture passer does not have jaws. (See Li patent, Exh. I)

46.    The Examiner rejected the Plaintiff's claims over Li, but encouraged the Plaintiff to add jaws to the claims in order to overcome his rejection.  In the Office Action, the Examiner said:

> Li discloses a suture device having a support shaft 100, a suturing assembly 300… at the distal end of the shaft and the assembly [has a] member including a passage for supporting a suturing needle at selected angular positions. Concerning claim 3, see figure 10.
>
> NOTE:  The [Examiner] suggest[s] applicant positively recite the forceps jaws to overcome this rejection.

(See '982 patent prosecution history, Exh. 3, p.48).

47.    On December 29, 1998, the Plaintiff filed a Response to the Examiner's Office Action, amending the claims to positively recite "jaws" as suggested by the Examiner.  (See '982 patent prosecution history, Exh. 3, pp.55-61).

48.    In more detail, the Plaintiff amended apparatus claim 1 to require that the claimed combination include "a member underlined as a first jaw" (*see* Exh. 3, p.55, underlined words added), and amended method claim 10 to clarify that the recited method is used "with suture-passing forceps having a member first jaw." (See '982 patent prosecution history, Exh. 3, p.56, struck-out word deleted, underlined words added).

49.    The Plaintiff also differentiated method Claim 10 from the Li patent by adding the additional step of "passing the suture needle from the first jaw to a second jaw":

punching the suture needle through tissue to be sutured, by passing the suture needle from the first jaw to a second jaw pivotally attached to the first jaw for movement toward and away from the first jaw.

(See '982 patent prosecution history, Exh. 3, p.57, underlined words added)

**The Claims are Invalid as Anticipated by the Exhibit 6 - Acufex® Suture Punch**

50.    The Plaintiff produced a physical sample of its old "Acufex®
Suture Punch" suture-passing forceps under Bates No. SNE 14794.  (hereafter
"Acufex® Suture Punch").  The following image fairly and accurately depicts the
Acufex® Suture Punch produced by the Plaintiff under Bates No. SNE 14794,
along with a "Smith & Nephew Suture Needle" produced by the Plaintiff in a
packaged marked with Bates No. SNE 14789:



*(a) The '747 Patent is Prior Art*

51.    The '747 patent relates to the Acufex® Suture Punch.  (See
'747 Patent, Exh. B, p.3, Figure 1).

52.    The '747 patent itself is prior art to the '982 patent under 35
USC § 102(e).   (See '747 Patent, Exh. B, p.1)

53.    Under 35 USC § 102(e), an inventor is entitled to a patent
<u>unless</u> "the invention was described in … a patent granted on an application for

patent by another filed in the United States before the invention by the applicant for patent…"

54.    Under 35 USC § 102(e), the '747 patent is prior art to the '982 patent because the '747 patent was filed on February 22, 1996, prior to the April 2, 1997 filing date of the '982 patent application, and prior to inventor John Duran's conception and reduction to practice of the invention disclosed in the '982 patent ("some time in late 1996 or early 1997" per Plaintiff's Response to Interrogatory No. 5, Exh. Y, p.11)(see Exh. E, p.1).

*(b) The Acufex® Suture Punch is Prior Art*

55.    The Acufex® Suture Punch is prior art to the '982 patent, under 35 U.S.C. § 102(f).

56.    Under 35 USC § 102(f), an inventor is entitled to a patent unless "he did not himself invent the subject matter sought to be patented."

57.    Under 35 USC § 102(f), the Acufex® Suture Punch is prior art to the '982 patent because the Acufex® Suture Punch was invented by the inventors of the '747 patent (i.e. Steve Ek and others), and was not invented by John Duran, the inventor of the '982 patent

**Deposition of '982 Inventor John Duran**

58.    On May 7, 2004, defendant Surgical Solutions deposed the '982 inventor John Duran.  True and correct copies of relevant pages from the deposition of John Duran are attached hereto as **Exhibit "P"**.

59.    At the May 7, 2004 Deposition of inventor John Duran, the Plaintiff's Acufex® Suture Punch produced under Bates No. 14794 was marked as Duran Exhibit 6 (Exhibit 6 - Box; Exhibit 6A - Instructions; Exhibit 6B - Acufex® Suture Punch)(Duran Dep. Tr, Exh. P, p.58, lines 3-11) (sometimes hereafter the "Exhibit 6 - Acufex® Suture Punch").   In addition, the Plaintiff's suture needle (a needle with suture attached thereto) that was previously produced under Bates No. 14789 was marked as Duran Exhibit 7 (Exhibit 7 – package, Exhibit 7A – suture needle)(Duran Dep. Tr., Exh. P, p.86, line 13 to p.88, line 21).   True and correct photographs of the Acufex® Suture Punch and associated suture needle are attached hereto as **Exhibit "Q"**.

60.    According to Mr. Duran, the person responsible for the design of the Exhibit 6 - Acufex® Suture Punch was Steve Ek, the first-named inventor in the prior art '747 patent.   (See Duran Dep. Tr, Exh. P, p.59, lines 17-19; and '747 patent, Exh. E, p.1).

61.    From about 1990 until about 1995, before working for the Plaintiff Smith & Nephew, John Duran worked for a company called Acufex (See Duran Dep. Tr, Exh. P, p.64, line 14 to p.65, line 7).

62.    In about 1995, Smith & Nephew acquired Acufex.  (See Duran Dep. Tr., Exh. P, p.65, lines 1-7).

63.    Duran first became aware of the Exhibit 6 - Acufex® Suture Punch after Smith & Nephew acquired Acufex.  (See Duran Dep. Tr., Exh. P, p.60, lines 16-24).  (Evidently the Exhibit 6 suture punch was ultimately branded

with the "Acufex" name even though it was developed prior to Plaintiff's acquisition of Acufex).

64.    It was not until about 1996 that inventor Duran learned of the design of the Exhibit 6 - Acufex® Suture Punch.  (See Duran Dep. Tr., Exh. P, p.66, lines 15-21).

65.    After being introduced to the design of the Exhibit 6 - Acufex® Suture Punch, Mr. Duran became responsible for the development of the Exhibit 6 - Acufex® Suture Punch, including the manufacturing of the design, making sure it meets FDA safety requirements, product testing, and reliability testing.  (See Duran Dep. Tr., Exh. P, p.70, line 5 to p.71, line 5)

66.    Mr. Duran testified that he conceived of the invention claimed in the '982 patent while returning from a trip to Missouri, where he met a surgeon named "Dr. Smith" regarding the Exhibit 6 - Acufex® Suture Punch. (See Duran Dep. Tr., Exh. P, p.91, line 1 to p.92, line 1)

67.    According to Mr. Duran, Dr. Smith was concerned over the height of the distal tip of the Exhibit 6 - Acufex® Suture Punch.  (See Duran Dep. Tr., Exh. P, p.91, line 1 to p.92, line 1).

68.    According to inventor John Duran, the invention of the '982 patent is directed to supporting the needle in a low profile position for delivery to a surgical site.  (See Duran Dep. Tr., Exh. P, p.89, lines 2-10):

> A.  *** What my invention was, was to lay the needle down in a low profile position and be able to deliver it.

69.    Mr. Duran emphasized that his claims cover "any construction" that supports the needle in a low profile position.  (Duran Dep. Tr., Exh. P, p.188, line 9 to p.189, line 9):

> Q.  I'm trying to understand, I guess, Mr. Duran, if the word configured was put in this claim that you helped write to describe a particular structure or rather to describe any structure that accomplished the function that follows the word configured.
>
> MR. HEBERT:  Objection.  Asked and answered.  You can answer again.
>
> A.  Any construction?
>
> Q.  Any construction.
>
> A.  Okay   That is – that's the patent.
>
> Q.  Mr. Hebert will object, but basically any means for performing that function?
>
> MR. HEBERT:  I'll take Mr. Andras' suggestion and I'll object.  Calls for legal conclusion.
>
> A.  Low profile, yes.  I mean that is what – that is what I was trying to describe there.
>
> Q.  Anything, anything.
>
> A.  (witness indicated affirmatively)
>
> Q.  That's a yes.
>
> A.  Yes.

70.    The Exhibit 6 - Acufex® Suture Punch is already structured to permit the suture needle to lie down at an inclined or reduced angle.  (See Duran Dep. Tr., Exh. P, p.86, lines 1-14).

71.    Mr. Duran himself conceded that the Exhibit 6 - Acufex® Suture Punch already achieved his alleged invention of supporting the needle in a low profile position.  (See Duran Dep. Tr., Exh. P, p.89, lines 2-10):

> A.  *** What my invention was, was to lay the needle down in a low profile position and be able to deliver it.
>
> Q.  Okay.  Now you've actually literally just laid the needle down in the Exhibit 6 suture punch.  So it's -- if I were holding the device with the distal tip away from me, the needle is lying backward toward me?
>
> A.  Yes.

72.    Mr. Duran further conceded that the Exhibit 6 - Acufex® Suture Punch is already structured to support the suture needle in both a low-profile stowed position and in an upright suturing position (See Duran Dep. Tr., Exh. P, p.90, lines 3-20):

> Q.  And then if I understand correctly from my reading over the past couple of days, if the tip of that Exhibit 6 device were inserted in a so-called cannula, it could be a smaller cannula?  That's the advantage?
>
> A.  Yes.
>
> Q.  And then once it's inside of the cannula, the tip can be opened and the suture deployed -- or the suture needle rather?
>
> A.  Yes.
>
> Q.  And you just did that by pulling on the suture?
>
> A.  Yes.
>
> Q.  And it popped into the --
>
> A.  Yes.
>
> Q.  -- Passage?
>
> A.  Yes.  So I just deployed it.
>
> Q.  OK.  Thank you.

73.    Mr. Duran even physically demonstrated that the Exhibit 6 - Acufex® Suture Punch is already structured to support the suture needle in both a low-profile stowed position and in an upright suturing position during his videotaped deposition.



Inventor John Duran With
Prior Art Acufex Suture Punch

 

 Stowed Position                    Suturing Position

(*See* relevant excerpt from the videotaped deposition of Mr. Duran, to be lodged with the Court, corresponding roughly to Duran Dep. Tr., Exh. p.84 to p.90).

74.    Attached hereto as part of **Exhibit "Q"** are photographs of the Exhibit 6 suture punch that, as referenced in the accompanying declaration of Tom Weisel, fairly and accurately depict what Mr. Duran is demonstrating above, in close-up detail, including the following:

<u>Without the "Needled Suture"</u>





Plaintiff's Prior Art Acufex® Suture Punch
Closed

Plaintiff's Prior Art Acufex® Suture Punch
Open

<u>With the "Needled Suture"</u>





Needle Tilted Back in the "Stowed Position"
as Demonstrated by John Duran

Needle Pulled into the "Suturing Position"
as Demonstrated by John Duran

75.    Attached to the accompanying declaration of Tom Weisel is an **"Acufex Table"** that shows, for each asserted claim, a clause designation in the first column ("a", "b", etc…"), the associated language of the asserted claims in the second column, relevant excerpts from the disclosure of the '982 patent in the third column, and photographs of the Exhibit 6 - Acufex® Suture Punch.

76.    Each of the asserted claims is invalid as anticipated by Exhibit 6 - Acufex® Suture Punch, as clearly shown in the **Acufex Table** attached to the Weisel Decl.

## The Claims are Invalid as Anticipated by Fukuda's U.S. Patent

77.    In 1995, foreign inventors Masatoshi Fukuda and Tadashi Ohtsuka filed two patent applications; one in the European Patent Office (hereafter "Fukuda's EPO Application") and one in the United States Patent Office that resulted in U.S. Patent No. 5,824,009 (hereafter "Fukuda's U.S. Patent").  True and correct copies of Fukuda's EPO Application and Fukuda's U.S. Patent are attached hereto as **Exhibit "K"** and **Exhibit "L"**.

 *(a) Fukuda's EPO Application is Not Prior Art*

78.    The Plaintiff also filed an International counterpart of its '982 patent application (hereafter "Plaintiff's International Application").  The Plaintiff's International Application was filed under the Patent Cooperation Treaty on March 31, 1998, which application claimed priority to U.S. Application No. 08/832,061 filed on April 2, 1997, and which application was published on October 8, 1998 as International Application No. WO 98/43545.  A copy of International Application No. WO 98/43545 is attached hereto as **Exhibit "J"**.

79.    On or about July 24, 1998, while examining the Plaintiff's International Application in its role as the International Searching Authority, the European Patent Office ("EPO") issued an International Search Report that cited Fukuda's EPO Application.  (See International Application No. WO 98/43545, Exh. J, p.23; Fukuda's EPO Application, Exh. K)

80.    Fukuda's EPO Application was cited as a novelty-destroying "X" reference against Plaintiff's International Application No. WO 98/43545. (See International Application No. WO 98/43545, Exh. J, p.23).

81.    However, Fukuda's EPO Application is not prior art to the '982 patent.  (See Fukuda's EPO Application, Exh. P, p.1)

82.    Fukuda's EPO Application was filed December 7, 1995, but was not published until June 11, 1997.  (See Fukuda's EPO Application, Exh. K, p.1).

83.    Fukuda's EPO Application is <u>not</u> prior art against the '982 patent because it was published <u>after</u> Duran filed the '982 patent application (the '982 patent application was filed in April 1997, and Fukuda's EPO Application was published in June 1997). (See '982 patent, Exh. A, p.1; Fukuda's EPO Application, Exh. K, p.1).

84.    The Plaintiff disclosed Fukuda's EPO Application to the United States Patent Office in an Information Disclosure Statement ("IDS") filed on or about August 6, 1998.  (See '982 patent prosecution history, Exh. 3, pp.50-51; and '982 patent, Exh. A, p.1)

85.    The Manual of Patent Examining Procedures indicates that an Examiner's initials placed next to a citation on an IDS simply means that he has "considered" the document to the extent that is considered in the same manner as other documents in Office search files are considered while conducting a search in such files:

> Consideration by the examiner of the information submitted in an IDS means that the examiner will consider the documents in the same manner as other documents in Office search files are considered by the examiner while conducting a search of the prior art in a proper field of search. The initials of the examiner placed adjacent to the citations on the PTO--1449 or PTO/SB/08A and 08B or its equivalent mean

that the information has been considered by the
examiner to the extent noted above.

An excerpt from the Manual of Patent Examining Procedure § 609,

Section C(2), "Complying Information Disclosure Statements", is attached hereto

as **Exhibit "M"**.

86.    There is no evidence that the Examiner regarded Fukuda's

EPO Application as prior art.

_(b) Fukuda's U.S. Patent is Prior Art_

87.    As noted above, Fukuda also filed a U.S. Patent Application

on December 6, 1995, which application issued on October 20, 1995 as U.S.

Patent No. 5,824,009.  (hereafter "Fukuda's U.S. Patent, Exh. L).

88.    Fukuda's U.S. Patent is prior art to the '982 patent under 35

USC § 102(e).

89.    Under 35 USC § 102(e), an inventor is entitled to a patent

unless "the invention was described in … a patent granted on an application for

patent by another filed in the United States before the invention by the applicant

for patent…"

90.    Under 35 USC § 102(e), Fukuda's U.S. Patent is prior art

against the '982 patent because it was filed in 1995, prior to the April 2, 1997

filing date of the '982 patent application, and prior to inventor John Duran's

conception and reduction to practice of the invention disclosed in the '982 patent

("some time in late 1996 or early 1997").  (see Plaintiff's Response to

Interrogatory No. 5, Exh. Y, p.11; and also Fukuda's EPO Application, Exh. K, p.1).

91.    The Plaintiff did <u>not</u> disclose Fukuda's U.S. Patent to the United States Patent Office (See the Information Disclosure Statement in the '982 patent prosecution history, Exh. 3, pp.50-51; and the face of the '982 patent, Exh. A, p.1, neither of which list Fukuda's U.S. Patent No. 5,824,009).

92.    The Examiner did not know about Fukuda's U.S. Patent when he allowed the asserted claims. (See the Information Disclosure Statement in the '982 patent prosecution history, Exh. 3, pp.50-51; and the face of the '982 patent, Exh. A, p.1, neither of which list Fukuda's U.S. Patent No. 5,824,009).

93.    Attached to the accompanying declaration of Tom Weisel is a **"Fukuda Table"** that shows, for each asserted claim, a clause designation in the first column ("a", "b", etc…"), the associated language of the asserted claims in the second column, relevant excerpts from the disclosure of the '982 patent in the third column, and relevant excerpts from the disclosure of the Fukuda's U.S. Patent  in the fourth column.

94.    Each of the asserted claims is invalid as anticipated by Fukuda's U.S. Patent, as clearly shown in the **Fukuda Table** attached to the Weisel Decl.


**The Claims are Invalid as Anticipated by the German Sevinc Application**

95.    German Patent Application NO. DE 42 35 602 A1 to Sevinc was published on April 28, 1994.  (hereafter "the German Sevinc Application")

(See Exh. N; and also the English translation thereof, Exh. O)  A true and correct copy of German Sevinc Application" is attached hereto as **Exhibit "N"**, and a certified English translation is attached hereto as **Exhibit "O"**.

96.    The German Sevinc Application is prior art to the '982 patent under 35 USC § 102(b).

97.    Under 35 USC § 102(b), an inventor is entitled to a patent <u>unless</u> "the invention was patented or described in a printed publication in this or a foreign country … more than one year prior to the date of the application for patent in the United States."

98.    Under 35 USC § 102(b), the German Sevinc Application is prior art to the '982 patent because it was published on April 28, 1994, more than one year before the April 2, 1997 filing date of the '982 patent application.  (See '982 patent, Exh. A, p.1; German Sevinc Application, Exh  N, p.1; English translation of the German Sevinc Application, Exh. O, p.1, "Date laid open").

99.    Attached to the accompanying declaration of Tom Weisel is a **"Sevinc Table"** that shows, for each asserted claim, a clause designation in the first column ("a", "b", etc…"), the associated language of the asserted claims in the second column, relevant excerpts from the disclosure of the '982 patent in the third column, and relevant excerpts from the disclosure of the German Sevinc Application in the fourth column.

100.    Each of the asserted claims is invalid as anticipated by the German Sevinc Application, as clearly shown in the **Sevinc Table** attached to the Weisel Decl.

**Plaintiff's Responses to Surgical Solutions' Interrogatories**

101.   A true and correct copy of relevant excerpts from "Plaintiff Smith & Nephew, Inc.'s Response to Surgical Solutions' First Set of Interrogatories (Nos. 1-7)" is attached hereto as **Exhibit "Y"**.

102.   A true and correct copy of relevant excerpts from "Plaintiff Smith & Nephew, Inc.'s First Supplemental Responses to Surgical Solutions' First Set of Interrogatories (Nos. 1-7)" is attached hereto as **Exhibit "Z"**.


103.   Therefore, Defendant Surgical Solutions respectfully requests an order granting Surgical Solutions' motion for summary judgment of non-infringement and/or patent invalidity relative to the '982 patent, thereby disposing of this case in its entirety.

104.   I declare under penalty of perjury that the foregoing is true and correct.


Date: August 27, 2004          By:     /S/: Joseph C. Andras                        
                                        Joseph C. Andras