IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SMITH & NEPHEW, INC., <br><br> Plaintiff, <br><br> v. <br><br> SURGICAL SOLUTIONS, LLC, <br><br> Defendant. | Civil Action No.  03CV 12310 NMG |

**DEFENDANT SURGICAL SOLUTIONS, LLC'S COMBINED MEMORANDUM IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF PATENT INVALIDITY AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY OF VALIDITY**

**Table of Contents**

Introduction .......................................................................................................................1
I.  REPLY TO PLAINTIFF'S OPPOSITION TO SURGICAL SOLUTIONS'
    MOTION FOR SUMMARY JUDGMENT OF INVALIDITY ..............................3
   A. Acufex Suture Punch ...................................................................................4
      (1) The Acufex Suture Punch was Not Before the Examiner ......................4
      (2) The Acufex Suture Punch Includes a Transverse Passage that
          Supports the Needle in a Stowed Position ...............................................6
      (3) The Enablement of a Hypothetical Method Claim Has No Bearing
          on the Claimed Structure ..........................................................................7
   B. Fukuda's U.S. Patent ...................................................................................8
      (1) Fukuda's U.S. Patent was Not Before the Examiner ..............................8
      (2) Fukuda's U.S. Patent Anticipates the Asserted Claims ..........................9
   C. German Sevinc Application ......................................................................11
      (1) The Claims Only Require that the Member is Configured to
          Support the Needle in the Stowed and Suturing Positions ....................11
      (2) The Claims Do Not Require the Lower Jaw Alone to Support the
          Needle in its Stowed Position ................................................................13
II. OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY
    JUDGMENT THAT THE '982 PATENT IS NOT INVALID .............................14
III. SUMMARY .........................................................................................................14

## **Table of Authorities**

**Cases**

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (*en banc*), *aff'd*, 517 U.S. 370 (1996) ................................................................................................. 1

# Introduction

Surgical Solutions seeks summary judgment of patent invalidity because the asserted claims are anticipated by:

(1) Plaintiff's own Acufex® Suture Punch;

(2) Fukuda's U.S. Patent;  and/or

(3) the German Sevinc Application.

In its motion, Surgical Solutions asks that the Court construe the claims terms pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (*en banc*), *aff'd*, 517 U.S. 370 (1996), and Surgical Solutions provides a "'982 Patent Table" to aid the Court in rendering such construction[1].  Finally, to assist the Court with the second part of the invalidity analysis, Surgical Solutions provides an Acufex Table, a Fukuda Table, and a Sevinc Table that show, element-by-element, how the construed claim terms are found in the prior art references.

In its response to Surgical Solutions' Statement of Material Facts, Plaintiff Smith & Nephew, Inc. accepts paragraphs 1-17, 27-28, and 37-38, and concedes that the Acufex Suture Punch, Fukuda's U.S. Patent, and the German Sevinc Application are prior art.  The Plaintiff only disputes limited portions of the asserted statements of facts in which Surgical Solutions specifies in element-by-element detail where the claim requirements are found in the prior art references. Even then, the Plaintiff concedes that most of the elements are found in the prior

---

[1] The Plaintiff's filing of a separate "*Markman* Brief" was unnecessary since claim construction was subsumed in Surgical Solutions' motions for summary judgment.

art references, and focuses the dispute on the the following, very limited assertions regarding each prior art reference:

| Prior Art | Disputed Facts Relating to Claims 1, 3, 5, and 19-25 | Based on the Erroneous Assertion that |
|---|---|---|
| Acufex Suture Punch | 18-25 | The Acufex Suture Punch does not have a passage transverse to the length of the member for supporting the needle in a stowed position |
| Fukuda's U.S. Patent | 29-36 | Fukuda does not have a jaw that includes a passage transverse to the length of the member for supporting a suture needle in both a suturing position and a stowed position. |
| Sevinc | 39-46 | Sevinc does not have a transverse passage that both supports the needle in a suturing position and in a stowed position. Further, the lower jaw does not alone support the needle in its stowed position. |

This simplifies the task before the Court. The asserted claims are invalid if the claim elements are found in at least one of the three prior art references, or in all of them. Significantly, the Plaintiff does not dispute that the vast majority of the claim elements are, in fact, found in the Acufex Suture Punch, Fukuda's U.S. Patent, and/or in Sevinc's Patent Application. Accordingly, if the Court rejects the Plaintiff's very limited rationale for disputing Surgical Solutions' assertion that the claims are invalid over a related reference, then it follows that the asserted claims are invalid as anticipated by that reference. It only takes one.

The plaintiff filed its own cross-motion for summary judgment that the claims are "not invalid" over Acufex, Fukuda, and Sevinc. This filing is a combined reply/opposition.

## I. REPLY TO PLAINTIFF'S OPPOSITION TO SURGICAL SOLUTIONS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY

As noted above, Surgical Solutions contends that the '982 patent is invalid over the Plaintiff's own Acufex Suture Punch, Fukuda's U.S. Patent, and/or the Sevinc Application.

The Plaintiff's assertion that Surgical Solutions has not addressed claim construction, or that Surgical Solutions has presented "vague or generalized testimony" is simply off base. In the Weisel Declaration, and in the '982 Patent Table, Acufex Table, Fukuda Table, and Sevinc Table attached thereto, one finds the witness' interpretation of each claim element, and a detailed explanation of how the claim element is disclosed in the prior art reference. The evidence is not "conclusory" given the level of detail and number of supporting illustrations used by the witness.

The Andras Declaration signed by the undersigned attorney simply introduced true and correct copies of the attached documents and, though the documents speak for themselves, was used to organize the facts evidenced by the attached documents into a logical order for the reader.

The Plaintiff's attempt to impugn Mr. Weisel's credibility because he is "not a patent expert", and "not a patent attorney" is strained. Mr. Weisel is an engineer of ordinary skill in the art. Moreover, as evidenced by the short

deposition exchange quoted in Plaintiff's opposition brief, when Mr. Weisel indicated that he did not understand what "suturing position" meant, that was simply because the undersigned attorney requested that he be given an opportunity to review the patent before answering and, for reasons of his own, Plaintiff's counsel elected not to give him that opportunity.

The evidence supporting claim construction and invalidity is extensively detailed, and hardly conclusory in nature.

### A.    Acufex Suture Punch

The first prior art reference that invalidates the Plaintiff's asserted claims is the Plaintiff's own Acufex Suture Punch.

#### (1)    The Acufex Suture Punch was Not Before the Examiner

The Plaintiff falsely asserts that the Acufex Suture Punch was before the Examiner such that Surgical Solutions must overcome a heavy burden of presuming that the Examiner correctly allowed the claims over the Acufex Suture Punch. However, only the 747 patent was before the Examiner, not the Acufex Suture Punch. The Examiner was also unaware that the structure of the Acufex Suture Punch, which is quite different from the structure show in the '747 patent, enabled one to support the suture needle in a "stowed position" as evidenced by Mr. Duran's video demonstration.

The Acufex device is crucially different from the similar device shown in the '747 patent. In particular, the '747 patent that was before the Examiner only shows a transverse passage having vertical, straight up and down

- 4 -

walls.  The '747 patent does <u>not</u> disclose an inclined wall that is capable of supporting the needle in a "stowed position":



By contrast, the Acufex Suture Punch includes structure covered by the asserted claims, namely an "inclined wall" at the top of the transverse passage that permits the needle to lie down in the stowed position, as demonstrated by Mr. Duran [ see e.g. Acufex Table, Claim 3, element b]:



There is no reason to deferentially presume that the Examiner allowed the asserted claims over the Acufex Suture Punch.

- 5 -

### (2) The Acufex Suture Punch Includes a Transverse Passage that Supports the Needle in a Stowed Position

The Plaintiff asserts that Mr. Duran added some sort of "structure" to the Acufex Suture Punch in order to support the needle in the stowed position. To underscore this assertion, the Plaintiff further asserts that this "structure … was missing from the Acufex Suture Punch." Unable to do otherwise, the Plaintiff speaks in generalities regarding this mysterious "structure" and never actually says what structure was added. [Plaintiff's memorandum at 13].

A side-by-side comparison shows that the '982 patent is nearly identical to the prior art Acufex Suture Punch. In particular, the Acufex Suture Punch has an inclined wall at the top of its transverse passage that is virtually identical to the inclined wall 52 provided at the top of the '982 patent's transverse passage 42:

    

**The Acufex Suture Punch includes a transverse passage with an inclined wall.**    The '982 Patent also discloses a transverse passage 42 with an "inclined wall" 52.

In light of the above illustrations, Mr. Duran's video demonstration, and the close-up reenactments thereof, the Plaintiff's assertion that the Acufex Suture Punch can only support the suture needle in an upright, suturing position

- 6 -

is demonstrably false. As shown in the Acufex Table, the claim language that covers the preferred embodiment also covers the Acufex Suture Punch.

### (3) The Enablement of a Hypothetical Method Claim Has No Bearing on the Claimed Structure

The asserted claims are directed to structure, not to a new method of using an old structure[2]. The Plaintiff appears to concede that the Acufex Suture Punch discloses the claimed structure by arguing that even though it contains such structure, Mr. Duran's demonstration would not "enable" one of ordinary skill in the art to understand that the structure could be used to tilt the needle down to reduce the device's overall profile. This argument is misplaced because that would only be of concern with regard to claims directed to a new method of using an old structure.

The Acufex Suture Punch's "inclined wall" is structure that permits the needle to lie down in a stowed position, as demonstrated by Mr. Duran. Mr. Duran and his attorneys chose to draft structure claims. The Acufex Suture Punch includes the claimed structure. Under such circumstances, the intended use of the prior art structure makes no difference.

Surgical Solutions respectfully submits that the facts of record support a summary judgment finding that the asserted claims are invalid as anticipated by the Acufex Suture Punch.

---

[2] The '982 Patent includes unasserted method claims 10-18.

- 7 -

## B.   Fukuda's U.S. Patent

The second prior art reference that invalidates the Plaintiff's asserted claims is Fukuda's U.S. Patent.

### (1)   Fukuda's U.S. Patent was Not Before the Examiner

The Plaintiff asserts that Fukuda's U.S. Patent was "essentially" before the Examiner and that the '982 patent was allowed to issue over it. [Plaintiff's memo at 16-17].  However, this is misleading, if not blatantly false, because the Plaintiff did not disclose Fukuda's U.S. Patent to the Examiner, and it was not considered by the Examiner at all.  The Examiner only considered Fukuda's EPO Application, a "non-art" reference that does not qualify as prior art.

The falsity of the Plaintiff's assertion that Fukuda's U.S. Patent was "essentially" considered by the Examiner was addressed in Surgical Solutions' opening brief at 16-18, and is further evidenced by the accompanying declaration of former Patent Examiner Debra Chun:

> … it is wrong to suggest that a prior-art reference was "essentially before the Examiner" just because the Examiner "considered" a similar, non-art reference. They are not "identical."  One is prior art, and the other is not.  The Examiner cannot reject claims over a non-art reference.  Therefore, the Examiner's consideration of a non-art reference is not equivalent to his consideration of a prior-art reference.  If the Examiner did not consider the prior-art reference itself, then there is no reason to deferentially believe the Examiner regarded the claims as allowable over that prior art reference. [¶1]

There is absolutely no reason to believe that the Examiner allowed the asserted claims over Fukuda's U.S. Patent.

- 8 -

### (2) Fukuda's U.S. Patent Anticipates the Asserted Claims

In an effort to prevent the asserted claims from reading on Fukuda's U.S. Patent, the Plaintiff argues that: (1) the claims require a <u>single jaw</u> having a transverse passage for supporting the suture needle in a suturing position and in a stowed position; and (2) Fukuda's U.S. Patent requires both jaws to support the needle in the stowed position. The Plaintiff is wrong on both counts.

First, contrary to Plaintiff's assertion, the asserted claims do not require that the transverse passage that supports the needle in the suturing and stowed positions be included in only one jaw. If that were true, then the claims would not even cover the sole embodiment show in the '982 patent where, as best shown in Figure 3, both jaws work together for supporting the needle 30 in the stowed position. In particular, as shown in the following illustrations based on Figure 3, the needle 30 is supported in the transverse aperture 42 (pink) of the lower jaw 14, <u>and</u> when the upper jaw is closed, also supported in the "retaining hole" 60 (green) of the upper jaw 16:



- 9 -

In an analogous fashion, as shown in the following illustrations based on Figure 9A, Fukuda's U.S. Patent discloses a suture-passing forceps where the needle is supported by a transverse aperture (pink) in one jaw, and when the other jaw is closed to a low-profile position[3], is also supported in an aperture (green) in the opposing jaw:



The fact that Fukuda chose to call the combination of the pink and green portions a "container" does not change the structure that is actually disclosed.

Moreover, as shown in the following illustration based on Figure 8, Fukuda discloses at least one other embodiment where the transverse aperture is formed entirely within one jaw:



---

[3] It is important to note that Fukuda completely contradicts the Plaintiff's assertion that the '982 patent represents the first suture-passing forceps with a low-profile configuration.

The '982 patent's sole embodiment precludes the claims from being construed to require a transverse passage in just one jaw.  However, even if one accepted that construction, Fukuda's U.S. Patent includes such an embodiment.

Surgical Solutions respectfully submits that the facts of record support a summary judgment finding that the asserted claims are invalid as anticipated by Fukuda's U.S. Patent.

### C.    German Sevinc Application

The third prior art reference that invalidates the Plaintiff's asserted claims is the German Sevinc Application.  The Plaintiff concedes that the Sevinc Application is prior art, but urges the Court to adopt very narrow constructions as to the operation of the "transverse passage" and the operation of the lower jaw in an effort to avoid invalidity.

#### (1)    The Claims Only Require that the Member is Configured to Support the Needle in the Stowed and Suturing Positions

As exemplified by Claim 19, the asserted claims simply require that the "member" or "jaw member" include a transverse passage for supporting the suture needle in a suturing position, and that the member (as opposed to the transverse passage) be configured to support the needle in a stowed position at an angle that is less than the angle in the suturing position.  The claims do not require that the transverse passage alone support the needle in the two positions.  Claim 19 is exemplary:

19. A surgical apparatus comprising:

a suture needle having suture attached thereto;

a suture-passing forceps for passing the suture needle through tissue at a surgical site,

the suture-passing forceps including:

>a support shaft elongated along a longitudinal axis; and

>a suturing assembly disposed at a distal end of the support shaft and including:

>>first and second jaw members, each supported by the support shaft,

>>the first jaw member having a passage transverse to the length of the first jaw member for supporting the suture needle in a suturing position at a selected angular orientation relative to the length of the member,

>>the first jaw member configured to support the suture needle in a stowed position at an angle less than the selected angle of the suture needle in the suturing position.

The Sevinc Application clearly meet the claims as shown by the following illustrations which show Sevinc's first jaw member and its transverse passage are configured to support the suture needle in a suturing position, and Sevinc's first jaw member is configured to support the needle in a stowed position within a hollow 16:



### (2) The Claims Do Not Require the Lower Jaw Alone to Support the Needle in its Stowed Position

Contrary to Plaintiff's goal-based assertion, the asserted claims do not require that the lower jaw *alone* support the needle in its stowed position. Such a construction is impossible because then the claims would not even cover the sole embodiment show in the '982 patent where, as best shown in Figure 3, *both* jaws work together for supporting the needle 30 in the stowed position. In particular, as shown in the following illustrations based on Figure 3, the needle 30 is supported in the transverse aperture 42 (pink) of the lower jaw 14, and when the upper jaw is closed, also supported in the "retaining hole" 60 (green) of the upper jaw 16:



Even assuming that one accepts the Plaintiff's argument that the Sevinc device supports its needle in the stowed position only through the cooperation of both jaws working together (a stretch), the Sevinc device necessarily meets the claim limitations in the same way that the sole embodiment covered by the '982 patent meets those limitations.

Surgical Solutions respectfully submits that the facts of record support a summary judgment finding that the asserted claims are invalid as anticipated by the Sevinc Application.

## II.  OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT THAT THE '982 PATENT IS NOT INVALID

The sole basis for Plaintiff's cross-motion for summary judgment that the asserted claims are "not invalid" over the prior art references is that one particular element of the asserted claims is missing from each such reference.

However, as noted above in detail, the Plaintiff's limited arguments as to why the claims do not read on the prior art fail upon even a minimal amount of scrutiny.  As such, Plaintiff's motion for summary judgment that the claims are "not invalid" should be denied and Surgical Solutions motion for summary judgment of invalidity should be granted.

## III.  SUMMARY

The USPTO was not aware of the Acufex® Suture Punch, Fukuda's U.S. Patent, or the German Sevinc Application when it issued the '982 patent. The '747 Patent is not identical to the Acufex Suture Punch because the patent

does not disclose inclined walls and the commercial suture punch has such walls.  Fukuda's EPO application is not identical to Fukuda's U.S. Patent as one is non-art and the other is prior-art.  If the USPTO had been aware of what this Court knows, the asserted claims of the '982 patent would not have issued.

The Plaintiff concedes that the Acufex® Suture Punch, U.S. Fukuda Patent, or Sevinc Application are prior art.  The Plaintiff does not dispute that the vast majority of the claim requirements are found in these prior art references.  The Plaintiff puts all of its eggs in one basket with respect to each prior art reference, arguing in each case that one particular claim limitation is not met by the reference.  As noted above, the Plaintiff's arguments rely on false assertions that the references were "essentially" considered (Acufex Suture Punch and Fukuda's U.S. Patent), mischaracterizations of what the prior art references disclose (e.g. ignoring the inclined wall in the Acufex Suture Punch), and proposed claim constructions that are inconsistent with specification of the '982 patent (e.g. advancing an argument that the jaw member *alone* must support the suture needle in the stowed position when that is not even true with the sole embodiment disclosed in the '982 patent).

Based upon the above, Surgical Solutions respectfully requests that the Court deny Plaintiff's cross-motion for summary judgment, and enter summary judgment in favor of Surgical Solutions, finding that the asserted claims of the '982 patent are invalid as anticipated by the Acufex® Suture Punch, Fukuda's U.S. Patent, and/or the German Sevinc Application.

SURGICAL SOLUTIONS, LLC

Date: November 17, 2004    By:    /S/: Joseph C. Andras
Joseph C. Andras (CA Bar No. 138,181)
Vic Y. Lin (CA Bar No. 192,292)
Myers Dawes Andras & Sherman, LLP
19900 MacArthur Boulevard, 11th Floor
Irvine, CA 92612
Tel: (949) 223-9600
Fax: (949) 223-9610

/S/: Louis M. Ciavarra
Louis M. Ciavarra (546,481)
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
Tel:  (508) 926-3408
Fax: (508) 929-3011