IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SMITH & NEPHEW, INC., | Civil Action No.  03CV 12310 NMG |
| Plaintiff, | |
| v. | |
| SURGICAL SOLUTIONS, LLC, | |
| Defendant. | |

**DECLARATION OF DEBRA A. CHUN SUBMITTED IN SUPPORT
OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**

**Declaration of Debra A. Chun**

I, Debra A. Chun, declare and state as follows:

1.      I am a former Patent Examiner and am currently a registered patent agent.  I am submitting this declaration in support of defendant Surgical Solutions, LLC motion for summary judgment of invalidity, now pending in United States District Court for the District of Massachusetts in the case entitled <u>Smith & Nephew, Inc. v. Surgical Solutions, LLC</u>, civil action no. 03 DV 12310 NMG.  In particular, it is wrong to suggest that a prior-art reference was "essentially before the Examiner" just because the Examiner "considered" a similar, non-art reference.  They are not "identical."  One is prior art, and the other is not.  The Examiner cannot reject claims over a non-art reference.  Therefore, the Examiner's consideration of a non-art reference is not equivalent to his consideration of a prior-art reference.  If the Examiner did not consider the prior-art reference itself, then there is no reason to deferentially believe the Examiner regarded the claims as allowable over that prior-art reference.

2.      In 1984, I earned a Bachelors of Arts in Computer Science from Mills College in Oakland, California.  A year later, in 1985, I earned a Bachelors of Science in Electrical Engineering from Washington University in St. Louis, MO.  In 1994, I earned my Juris Doctor from American University in Washington, D.C.  I attended law school while working as a United States Patent Examiner in the United States Patent and Trademark Office (USPTO).  I worked in the USPTO from January 1987 to May 1994.   I began working as a Junior Examiner and was later promoted to Primary Examiner.  During my employment with the USPTO, I examined hundreds of patent

- 1 -

applications and I received and reviewed hundreds of so-called "Information Disclosure

Statements."  From 1994 to now, I have prepared, filed and/or prosecuted hundreds of

additional patent applications as a working patent agent.  As a result, I am intimately

knowledgeable about the patent examination process as governed by the Manual of

Patent Examination Procedure (MPEP), both generally and in specific association with

the handling of so-called "Information Disclosure Statements."

       3.      Applicants and other individuals substantively involved with the

preparation and/or prosecution of a patent application have a duty to submit information

that is material to patentability.  These individuals may also want the USPTO to

consider information for a variety of other reasons; e.g., to make the information of

record without first determining whether the information meets any particular standard of

materiality, or because another patent office considered the information to be relevant in

a counterpart or related patent application filed in another country, or to make sure that

the examiner has an opportunity to consider the same information that was considered

by the individuals that were substantively involved with the preparation or prosecution of

a patent application.

       4.      An Information Disclosure Statement filed in accordance with the

provisions of 37 CFR §1.97 and 37 CFR §1.98 provides the procedure available to an

applicant to submit information to the USPTO so that the information will be considered

by the examiner assigned to the application.

       5.      Under 37 CFR §1.98, an Information Disclosure Statement must

include a list of all patents, publications, or other information submitted for consideration

by the Office.  Applicants are encouraged to use an "Information Disclosure Statement"

form in order to provide the required list of information.  A blank "Information Disclosure

Statement" form that is currently available from the USPTO website is attached hereto

as **Exhibit "A"**

      6.    As can be seen by reviewing the "Information Disclosure

Statement" form attached hereto as **Exhibit "A"**, the applicant has a place to list

information that is being submitted for consideration by the Office, including "U.S.

Patent Documents," "Foreign Patent Documents," and "Non Patent Literature

Documents."  In addition, the Patent Examiner has a place to put his initials next to each

citation.  After reviewing the Information Disclosure Statement and the attached

materials, the Examiner returns a copy to the Applicant. As noted at the bottom of the

form, the patent examiner can initial a citation to indicate that it was disclosed in

conformance with the rules and has been "considered", or the patent examiner can

draw a line through a citation to indicate that it was not disclosed in conformance with

the rules and has not been "considered."

      7.    As explained in Section 609 of the Manual of Patent Examining

Procedure, if the information is submitted in accordance with 37 CFR §1.97 and 37 CFR

§1.98, the Examiner is required to consider the information. However, "considered" has

a very limited meaning in the context of an Information Disclosure Statement:

> Once the minimum requirements of 37 CFR 1.97 and 37
> CFR 1.98 are met, the examiner has an obligation to
> consider the information. Consideration by the examiner of
> the information submitted in an IDS means <u>nothing more</u>
> than considering the documents in the same manner as
> other documents in Office search files are considered by the
> examiner while conducting a search of the prior art in a
> proper field of search. (emphasis added).

8.    It is a simple matter for a cited publication to be initialed, or "considered," because it has nothing to do with whether or not the claims are allowable over the cited publication.  In fact, the examiner will "consider" and therefore initial every publication cited in an Information Disclosure Statement so long as the applicant complied with the disclosure requirements, i.e. so long as the publication was cited in the list and, if relevant, so long as the Applicant included a copy of the cited publication.

9.    While an initialed citation indicates that it has been "considered" by the Examiner, it does not mean that he has tested the patentability of the claims against the citation.  Why?  Because there are two categories of publications that can be cited by an applicant and initialed as "considered" by the examiner:  (1) publications that do not qualify as prior art; and (2) publications that qualify as prior art.

10.    It is 35 U.S.C. 102 of the United States Patent Law that determines whether or not a publication is prior art.  A cited publication generally qualifies as prior art based on its filing date or its publication date.  For example, under 35 U.S.C. 102(b), a cited publication would qualify as prior art if it were published more than one year before the applicant's effective filing date.

11.    Examiners are required to efficiently and accurately review the claims in each patent application that is presented to them for examination.  Examiners must often process an applicant's Information Disclosure Statement as part of the patent review process.

12.    An Examiner cannot reject an applicant's patent claims over a publication listed on an Information Disclosure Statement unless the cited publication qualifies as prior art.  Consequently, one cannot conclude that the applicant's patent

- 4 -

claims would have been allowed over a publication that was acknowledged and initialed

by an examiner unless it was first recognized as prior art, and then considered as such.

13.    Many examiners apply a three-step process after receiving an

applicant's Information Disclosure Statement.  First, the examiner reviews the stack of

publications to make sure that all of the publications listed in the Information Disclosure

Statement are present and, if so, the Examiner initials the corresponding citation on the

Information Disclosure Statement.  Of significance, the publications are initialed on the

Information Disclosure Statement before relevance or even qualification as prior art is

determined.  Second, the Examiner quickly reviews each cited publication to determine

if it might be relevant to the patentability of the applicant's claims.  Finally, the Examiner

splits the relevant publications into two stacks, those qualifying as prior art and those

not qualifying as prior art.  Only those that qualify as prior art are considered in terms of

allowing the applicant's claims.  Therefore, even if a publication is acknowledged as

present and preliminarily regarded as potentially relevant to the applicant's claims, it

might end up in the pile that does not qualify as prior art, rather than the stack that

constitutes viable prior art that may be used against the application.

14.    A non-art publication is not "identical" to a prior-art publication.

They are different in the most crucial of ways.  One is prior art.  The other is not.  In

view of the fact that no examiner could or would apply a non-art publication against an

applicant's patent claims, it would be inaccurate to imply, infer or conclude that an

application issued "over" a non-cited publication, merely because a similar non-art

publication was cited in an Information Disclosure Statement and initialed by the

- 6 -

examiner.   No special deference is applicable because the prior-art reference itself was not considered.

15.     I declare under penalty of perjury that the foregoing is true and correct.


Date: November 12, 2004         By:     /s/ Debra A. Chun
                                        Debra A. Chun