IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SMITH & NEPHEW, INC., | Civil Action No.  03CV 12310 NMG |
| Plaintiff, | |
| v. | |
| SURGICAL SOLUTIONS, LLC, | |
| Defendant. | |

---

**DEFENDANT SURGICAL SOLUTIONS, LLC'S MARKMAN BRIEF IN OPPOSITION TO PLAINTIFF SMITH & NEPHEW, INC.'S MOTION FOR CONSTRUCTION OF THE DISPUTED TERMS OF THE '982 PATENT**

---

**Table of Contents**

I. BACKGROUND ...................................................................................3
   A. Generally ..................................................................................3
   B. The Parties ...............................................................................3
   C. The '982 Patent.........................................................................3
      (1) The Claims of the '982 Patent ...............................................3
      (3) Overview of the '982 Patent .................................................4
      (4) The Prosecution History of the '982 Patent ............................6
         a. The '747 Patent Application .................**Error! Bookmark not defined.**
         b. The '982 Patent Application .................**Error! Bookmark not defined.**
II. The Controlling Law.............................................................................7
   A. A Single Opinion Directed to Claim Construction and Summary
      Judgment Conserves Judicial Resources ......................................7
   B. The Required Analysis................................................................7
      (1) Construing the Claims .........................................................8
III. INTERPRETATION OF DISPUTED CLAIM TERMS ...................................10
   A. "Needle with Suture Attached Thereto".......................................10
      (1) "Attached" is a Limitation of Claims 1 and 20 Under the Case
          Law Regarding Preambles ....................................................11
         a. The Preamble Gives "Life and Meaning" to the Claims by
            Making them Valid over the Schweizer Patent.......................11
         b. Deleting the Preamble Affects the Claim Body Because They
            are Intermeshed................................................................13
      (2) "Attached" Cannot Be Construed So Broadly as to Cover the Prior
          Art Schweizer Patent...........................................................17
   B. "Passage Transverse to the Length of the Member"...................19
   C. "Suturing Position" ...................................................................20
   D. "Stowed Position"....................................................................20
   III. CONCLUSION ...................................................................................21

## Table of Authorities

**Cases**

*ACS Hospital Sys., Inc. v. Montefiore Hospital*, 732 F.2d 1572, 1577 (Fec. Cir. 1984) ................................................................................................14

*AFG Industries, Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239, 1249 (Fed. Cir. 2001) ................................................................................................14

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 339 (1961) ...13

*Bell & Howell Document Management Products Co. v. Altek Systems*, 132 F.3d 701, 705 (Fed. Cir. 1997) .............................................................................13

*Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*, 868 F.2d 1251 (Fed. Cir. 1989) ...........................................................................................16, 17

*Eltech Systems Corp. v. PPG Industries, Inc.*, 903 F.2d 805, 809, (Fed. Cir. 1990) ...............................................................................................14

*Genentech, Inc. v. Hoehringer Mannheim GmbH*, 989 F.Supp. 359, 364 (D. Mass. 1997) ........................................................................................1, 12

*Intirtool, Ltd. V. Texar Corp.*, 369 F.3d 1289 (Fed. Cir. 2004) ...........................18

*Kraft Foods, Inc. v. International Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000) ...............................................................................................14

*Laitram Corp. v. Morehouse Industries, Inc.*, 143 F.3d 1456, 1460, n.2 (Fed. Cir. 1998) ...............................................................................................14

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (*en banc*), *aff'd*, 517 U.S. 370 (1996) .................................................................................12, 13

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298 (Fed. Cir. 1999) .....18, 20, 21

*Vitronics v. Conceptronics, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ....13, 14, 22

In related filings, Surgical Solutions seeks summary judgment of non-infringement because its ExpresSew device does not include a "needle with suture attached thereto" and summary judgment of invalidity because the claims are invalid as anticipated by prior art devices that are not only covered by the asserted claims, but are virtually identical to the sole embodiment disclosed in the '982 patent in terms of both structure and function, namely Plaintiff's own Acufex Suture Passer, the U.S. Fukuda Patent, and/or the Sevinc Application.

Surgical Solutions' moving papers address the claim construction issues in the context of its summary judgment motions. More particularly, the claim construction issues are addressed in the support briefs, read in conjunction with the accompanying tables including a "'982 Claim Table," an "Acufex Table," a "Fukuda Table," and a "Sevinc Table." This District, in fact, has noted that "[m]any courts address claim construction and summary judgment in a single opinion, since the way in which a patent claim is construed often affects the determination of whether it has been infringed." *Genentech, Inc. v. Hoehringer Mannheim GmbH*, 989 F.Supp. 359, 364 (D. Mass. 1997). Moreover, by construing the claims in the context of a motion for summary judgment, only those claim terms that need to be construed for purpose of the motion need be addressed. This combined approach, therefore, was intended to conserve the Court's resources.

Notwithstanding Surgical Solutions' efforts to conserve resources, Plaintiff has insisted on preparing and filing a separate "*Markman* Brief." To be

consistent with that approach, Surgical Solutions is hereby responding to Plaintiff's *Markman* Brief in this separate, opposing *Markman* Brief.

As explained further below, and read in conjunction with the previously submitted '982 Table, the Court should construe these claim terms as follows:

- "a suture needle with suture <u>attached</u> thereto " is a claim limitation of all asserted claims, and the '982 patent specifically defines "attached" to mean permanently affixed ("e.g. crimped or clamped") such that "a suture needle with suture attached thereto" means "a needle with suture permanently affixed thereto"

- "transverse passage" means "a substantially perpendicular passage that extends transversely through the lower jaw for supporting the suture needle."

- "Suturing position" is a claim limitation that the '982 patent specially defines to mean the position the needle is in when it is "<u>ready to be punched</u>" through the tissue to be sutured.

- "Stowed position" is a claim limitation that the '982 patent specially defines to mean the position the needle is in when it is "<u>not ready to be punched</u>" through the tissue to be sutured.

# I.  BACKGROUND

## A.    Generally

This is a patent case.  The parties compete in the market for surgical instruments called suture-passing forceps.  These devices are used to pass suture through soft tissue during arthroscopic or open surgery.

## B.    The Parties

The plaintiff Smith & Nephew, Inc. ("Plaintiff") is a Delaware corporation having its principal place of business in Memphis, Tennessee, and having a further place of business in Andover, Massachusetts.

The defendant Surgical Solutions, LLC ("Surgical Solutions") is small startup, a limited liability company having its principal place of business in Valencia, California.  Surgical Solutions was formed by Brett Bannerman in 1999, began doing business in 2001, and currently has seven (7) full-time employees.

## C.    The '982 Patent

The Plaintiff accuses Surgical Solutions of infringing the '982 patent directed to a "SUTURE-PASSING FORCEPS."  A copy of the '982 patent is attached to the Andras Decl. as Exhibit A.

### (1)    The Claims of the '982 Patent

The '982 patent issued with twenty-six (26) claims, including some apparatus claims and some method claims:

| Claim(s) | Subject |
|----------|---------|
| 1-9 | A suture-passing forceps |
| 10-18 | A method of delivering a suture needle |

- 3 -

19          A surgical apparatus

20-26       A suture-passing apparatus


The Plaintiff only accuses Surgical Solutions of infringing eight of its apparatus claims, namely claim 1, 3, 5, 19, 20, 22, 24 and 25.  (see Plaintiff's original and supplemental responses Interrogatory No. 3; Exh. Y, pp.6-8, and Exh. Z, pp.3-10)   The Plaintiff does not assert any of its method claims 10-18.

In the '**982 Claims Table** attached to the Andras Decl. accompanying Surgical Solutions' motions for summary judgment., the language of Claims 1, 3, 5, 19, 20, 22, 24, and 25 are correlated with the relevant drawings and text from the specification of '982 patent.

### (3)    Overview of the '982 Patent

As shown below, the '982 patent is directed to a suture-passing forceps 10 that works with a so-called "needled suture" 20 (shown in blue and yellow) (Based on Figure 1, Exh. A, p.1):



The "needled suture" 20 consists of a needle 30 (yellow) with suture 32 (blue) <u>attached</u> thereto, as shown above and in more detail to the right. (Based on Figure 2, Exh. A, p.2):



FIG. 2

        The '982 patent is directed to a suture-passer that very much like the suture-passers disclosed in the Acufex Suture Punch, the U.S. Fukuda Patent, and the Sevinc Application.  In particular, it not only supports the suture needle at a selected angle in a "ready to be punched" suturing position (figure on right), but also in a "not ready to be punched" stowed position (figure on left) at an angle <u>less</u> than the selected angle of the suture needle in the "ready to be punched" suturing position (Based on Figure 3, Exh. A, p.3):



<u>Angle in "**Not Ready to be Punched**"</u>
<u>Stowed Position</u>

      <u>Angle in "**Ready to be Punched**"</u>
<u>Suturing Position</u>

        In Figure 6A, the suture passer is supporting the needled suture in the "not ready to be punched" stowed position during delivery to the surgical site, and in Figure 6B, the suture passer is supporting the needled suture in the "ready to be punched" or "ready-for-use suturing position" after arriving at the surgical site:

FIG. 6A        FIG. 6B

**(4)    The Prosecution History of the '982 Patent**

The '982 patent claims should be construed in light of the three prosecution histories that are attached to the Andras Decl. as Exhibits 1, 2 and 3, respectively:

(1) "The '747 Parent Application" - Pat. Appl. No. 08/479,514, filed 06/07/95, abandoned (**Exhibit "1")**.

(2) "The '747 Child Application" - Pat. Appl. No. 08/603,859, filed 02/22/96 as a continuation-in-part ("CIP") of Pat. Appl. No. 08/479,514, and issued as the '747 patent (**Exhibit "2"**); and

(3) "The '982 Application" - Pat. Appl. No. 08/832,061, filed 04/02/97, and issued as the '982 patent (**Exhibit "3"**).

The prosecution history is detailed in Surgical Solutions' Memorandum in Support of Defendant Surgical Solutions, LLC's Motion for Summary Judgment of Non-Infringement at pages 7-11.

# II.   The Controlling Law

## A.   A Single Opinion Directed to Claim Construction and Summary Judgment Conserves Judicial Resources

Surgical Solutions urges the Court to find that the claims of the '982 patent are not infringed by the ExpresSew® Suture Passer as set forth below, and/or that the claims are invalid as discussed in the accompanying Motion for Summary Judgment of Invalidity.

In order to decide its motions for summary judgment, the Court will need to construe at least some of the disputed claim terms in order to determine their scope. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (*en banc*), *aff'd*, 517 U.S. 370 (1996). The Court can construe the claims and decide its motion for summary judgment together.

This District, in fact, has noted that "[m]any courts address claim construction and summary judgment in a single opinion, since the way in which a patent claim is construed often affects the determination of whether it has been infringed." *Genentech, Inc. v. Hoehringer Mannheim GmbH*, 989 F.Supp. 359, 364 (D. Mass. 1997). Moreover, by construing the claims in the context of a motion for summary judgment, only those claim terms that need to be construed for purpose of the motion need be addressed. This combined approach, therefore, conserves the Court's resources.

## B.   The Required Analysis

A patent infringement analysis involves two steps: (1) claim construction and, (2) application of the properly construed claim to the accused

product.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (*en banc*),

*aff'd*, 517 U.S. 370 (1996).  In the context of anticipation, of course, the claims

would be reviewed against the prior art rather than the accused device.

### (1) Construing the Claims

The starting point for claim construction is the language of the

disputed claims themselves, for they are the measure of a patent's scope.  *Aro*

*Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 339 (1961);

*Markman v. Westview Instruments*, 52 F.3d 967 (Fed. Cir. 1995) (*en banc*), *aff'd*,

517 U.S. 370 (1996)(hereafter "*Markman I*");  *Vitronics v. Conceptronics, Inc.*, 90

F.3d 1576, 1582 (Fed. Cir. 1996).

In construing a claim term, the Court should look to the intrinsic

evidence--the claim language, the written description and the prosecution history.

*Bell & Howell Document Management Products Co. v. Altek Systems*, 132 F.3d

701, 705 (Fed. Cir. 1997).

The words of an asserted claim are looked to first and are to be

given their ordinary meaning -- unless a special meaning is clearly defined in the

specification.  *Markman I*, 52 F.3d at 980.

Claims must be read in light of the specification of which they are a

part.  *Markman I*, 52 F.3d at 979.  Because it provides essential context for even

the most ordinary of claim terms, "the specification is always highly relevant to

the claim construction analysis."  *Vitronics v. Conceptronics, Inc.*, 90 F.3d 1576,

1582 (Fed. Cir. 1996).

The specification provides essential context for even the most ordinary of claim terms and general dictionaries should be used with caution. "Dictionary definitions of ordinary words are rarely dispositive of their meanings in a technological context." *AFG Industries, Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239, 1249 (Fed. Cir. 2001).

While other claims may shed light on the construction pursuant to the doctrine of claim differentiation, "claim differentiation can not broaden claims beyond their correct scope" as it appears from the specification. *Kraft Foods, Inc. v. International Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000).

The cited prior art is also an intrinsic evidentiary source since it is a part of the prosecution history and was considered by the examiner in allowing the claims. The prior art offers clues as to what the claims do <u>not</u> cover. *Vitronics v. Conceptronics, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).

Claims should be construed to sustain their validity in view of the prior art. *ACS Hospital Sys., Inc. v. Montefiore Hospital*, 732 F.2d 1572, 1577 (Fec. Cir. 1984). Hence, if a claim is susceptible to two interpretations, one rendering the claim valid and the other rendering the claim invalid, the interpretation sustaining the validity of the claim should be adopted.

Depending on the degree of relatedness, the specification or prosecution history of another application or patent can be relied upon in construing the same claim term in the patent-in-suit. *Laitram Corp. v. Morehouse Industries, Inc.*, 143 F.3d 1456, 1460, n.2 (Fed. Cir. 1998); and *Eltech Systems Corp. v. PPG Industries, Inc.*, 903 F.2d 805, 809, (Fed. Cir. 1990).

# III.  INTERPRETATION OF DISPUTED CLAIM TERMS

## A.    "Needle with Suture Attached Thereto"

Surgical Solutions' motion for summary judgment of non-infringement focuses on a single claim limitation, namely the universal requirement of a "needle with suture <u>attached</u> thereto."

"Attached" should be construed as permanently affixed because that is how the term defined in the '982 specification ("e.g. crimped or clamped"), and because this is the only construction of "attached" that makes the claims valid over the prior art Schweizer Patent which, like the ExpresSew, simply carries the suture forward in a needle notch:



'982 Needle
with its <u>Attached</u> Suture

The Schweizer '840 and ExpresSew®
Needles Carry <u>Unattached</u> Suture

     (1)     **"Attached" is a Limitation of Claims 1 and 20 Under the Case Law Regarding Preambles**

Claims 1 and 20 clearly require "a suture needle having suture attached thereto."  The Plaintiff argues, however, that a "suture needle having suture attached thereto" is not a requirement of Claims 1 or 20 because it appears in the preamble and, according to Plaintiff, merely states a purpose for the claimed invention ("A suture-passing forceps <u>for passing a suture needle, having suture attached thereto, through tissue at a surgical site</u>").

The Plaintiff cites various cases, and then urges the court to ignore its preamble because it does "not recite essential structure", does not give "life, meaning, or vitality" to the claims, and/or merely states a purpose or intended use of the invention.  However, when the law is properly considered, when the overall claim language is reviewed as to antecedent structure, and when the claim language is considered relative to the prior art Schweizer Patent, it is clear that the Plaintiff's arguments must fail.

     a.     **The Preamble Gives "Life and Meaning" to the Claims by Making them Valid over the Schweizer Patent**

The Plaintiff does not cite one of the seminal cases on whether or not a preamble should be interpreted as a claim limitation.  That case is *Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*, 868 F.2d 1251 (Fed. Cir. 1989).  In *Corning Glass*, the Federal Circuit questioned the usefulness of the "life and meaning" standard, noting that:

> To say that a preamble is a limitation if it gives "meaning to the claim" may merely state the problem rather than lead one to the answer.  *Id.* at 1257.

Faced with a claim that would be invalid unless the preamble were a limitation, as here when Claims 1 and 20 are compared with the Schweizer Patent, the Federal Circuit affirmed the trial court's finding that the preamble gave "life and meaning" to the claim by operating as a limitation that distinguished the claim over the prior art.

In *Corning Glass*, the plaintiff's '915 patent was directed to an optical waveguide fibers of the type used for telecommunications.  *Id.* at 1254. The dispute focused on the preamble of Claim 1, which was directed to "An <u>optical waveguide</u> comprising: [element a; and element b]." (emphasis added). *Id.* at 1256.  The prior art disclosed a transparent glass fiber that satisfied the limitations set out in paragraphs (a) and (b) (*id.* at 1257), but the glass fiber was only capable of transmitting light for a very short distance and thus was not an "optical waveguide".

The Federal Circuit affirmed the trial court finding of validity, holding that the "optical waveguide" language within the preamble was not merely a statement of intended purpose, but rather a claim limitation, because otherwise the claim would be invalid.  ("the claim preamble … does not merely state a purpose or intended use for the claimed structure. *** Rather, those words do give 'life and meaning' and provide further positive limitations to the invention claimed.")  *Id.* at 1257.

- 12 -

Here, as clearly shown in the Schweizer Table accompanying Defendant's Motion for Summary Judgment, the preamble gives "life" to the claims because the only limitation not literally found in Schweizer is a "suture needle having suture attached thereto".  Schweizer has everything else.  If "a suture needle having suture attached thereto" is not construed as a limitation, then Claims 1 and 20 are anticipated by the Schweizer Patent.  That would be improper.

Accordingly, "a suture needle having suture attached thereto" must be construed as a limitation to preclude the claims from being invalid.  As in *Corning Glass*, therefore, the preamble is what makes Claims 1 and 20 valid over the prior art and, therefore, the preamble gives "life and meaning" to the claims and must be construed as a limitation.


### b.    Deleting the Preamble Affects the Claim Body Because They are Intermeshed

The Plaintiff argues that the preamble is not a limitation because the preamble can be deleted without affecting the structure of the claimed invention (See Non-Infringement Opposition p.10, Plaintiff's Markman Brief pp.9-10).  The Plaintiff's argument relies on *Intirtool, Ltd. V. Texar Corp.*, 369 F.3d 1289 (Fed. Cir. 2004), which cites *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298 (Fed. Cir. 1999).

*Intertool*

In *Intertool*, the preamble at issue was as follows (emphasis added):

> 1. A hand-held punch pliers for simultaneously punching **and connecting** overlapping sheet metal such as at the corners of overlapping ceiling tile grids comprising:"

The district court held that the claim with the above preamble was invalid because the patentee only disclosed pliers that punched, as opposed to pliers that punched <u>and connected</u>.  The Federal Circuit reversed the district court because the "and connecting" language only appeared in the preamble, and did not appear anywhere within the long and structurally detailed claim body, such that deletion of the preamble did not affect the structure of the claimed invention.

Inspired by this concept, the Plaintiff argues that its own preamble is not limiting because a "structurally complete" claim body is left behind if the preamble is deleted.   However, this is demonstrably false.  In fact, the Plaintiff's preambles introduces "**a** suture needle having suture attached thereto" and thus provides an antecedent basis for not one, but two references within the claim body to "**the** suture needle".

The Plaintiff's own brief shows how its claims should be construed to require "a suture needle with suture attached thereto."  In particular, in order to present what superficially appears like a "structurally complete" claim body at page 10 of its Markman Brief, the Plaintiff improperly severs the antecedent connection between the preamble and the body by simply deleting the preamble

- 14 -

and its antecedent reference to "a suture needle having suture attached thereto."

and then tidies up the resulting antecedent problem by changing the body

language from "**the** suture needle" to "**a** suture needle":

### Claim 1 in Original Form

**Preamble**

1. A suture-passing forceps for passing
   a suture needle, having suture attached thereto,
   through tissue at a surgical site, the suture-passing
   forceps comprising:

**Body**

a support shaft elongated along a
longitudinal axis; and

a suturing assembly disposed at a distal
end of the support shaft and including:

a member configured as a first jaw and
supported by the support shaft, the
member having a passage transverse to the
length of the member

for supporting the suture needle in
a suturing position at a selected
angular orientation inclined relative
to the length of the member and

for supporting the suture needle in
a stowed position at an angle less
than the selected angle of the
suture needle in the suturing
position.

### Claim 1 as Modified by Plaintiff

1. A suture-passing forceps for passing
   a suture needle, having suture attached thereto,
   through tissue at a surgical site, the suture-passing
   forceps comprising:

a support shaft elongated along a
longitudinal axis; and

a suturing assembly disposed at a distal
end of the support shaft and including:

a member configured as a first jaw and
supported by the support shaft, the
member having a passage transverse to the
length of the member

**[a]**

[i] for supporting //// suture needle
in a suturing position at a selected
angular orientation inclined relative
to the length of the member and

[ii] for svupporting the suture needle
in a stowed position at an angle less
than the selected angle of the suture
needle in the suturing position.

The Plaintiff's own contortions show that the deletion of the

preamble affects the structure of the claimed invention.  Under *Intertool*,  "a

suture needle having suture attached thereto" is a limitation of Claims 1 and 20.


*Pitney Bowes*

In *Pitney Bowes*, the plaintiff sued Hewlett-Packard for patent

infringement in connection with some of its laser printers.  The claim dispute was

whether the phrase "spots of different sizes" referred to spots of laser light, or

spots of discharged area that were formed on a photoreceptor drum contacted by

the laser light.  Hewlett-Packard's laser spot never changed size, but it was pulsed on for longer or shorter periods of time to vary the size of the discharge area spots on the photoreceptor.  Claim 3 from *Pitney Bowes* is representative:

| | |
|---|---|
| **Preamble** | 3. Apparatus for producing on a photoreceptor an image of generated shapes made up of spots comprising: |
| **Body** | means for directing a plurality of beams of light toward a photoreceptor to generating [sic] a plurality of spots on the photoreceptor and means for generating spots of different sizes whereby the appearance of smoothed edges are given to the generated shapes. |

In conflict with the preamble's guidance on the meaning of "spots", the trial court granted Hewlett-Packard's motion for summary judgment of non-infringement based on its conclusion that "spots of different size" described the spots of laser light, not the spots of discharged area that ultimately formed the image.  The Federal Circuit began its analysis by noting that:

> If the claim preamble, when read in the context of the entire claim, recites limitations of the claim, or, if the claim preamble is 'necessary to give life, meaning, and vitality' to the claim, then the preamble should be construed as if in the balance of the claim. [citations omitted].  Indeed, when discussing the "claim" in such a circumstance, there is no meaningful distinction to be drawn between the claim preamble and the rest of the claim, for only together do they comprise the "claim." *Id.* at 1305.

The Federal Circuit reversed, holding that the preamble operated as a limitation because the preamble was "<u>intimately meshed</u>" with the body because "spots" appeared in both the preamble and the body (see highlighted words above).  *Id.* at 1306.  In like fashion, the Plaintiff's preamble offers

- 16 -

guidance on what kind of suture needle is required, i.e. "a suture needle with suture attached thereto," and the Plaintiff's preamble is intermeshed with the "suture needle" that is referenced twice within the Plaintiff's claim body. Accordingly, "a suture needle with suture attached thereto" must be construed as a claim limitation.

### (2)    "Attached" Cannot Be Construed So Broadly as to Cover the Prior Art Schweizer Patent

The '982 patent cannot cover the ExpresSew because the claims would be invalid for covering the Schweizer patent.   Nonetheless, the Plaintiff urges the Court to construe the claims without regard to the prior art Schweizer patent simply because the Examiner did not comment on Schweizer during prosecution.  However, as shown in the Schweizer Table attached to the Weisel Declaration, Schweizer discloses everything in Claims 1, 19 and 20 other than "a needle with suture attached thereto."  It is fundamental that the prior art offers clues as to what the claims do not cover.  *Vitronics v. Conceptronics, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).  While prior art used to reject an applicant's claims is particularly useful to the issue of claim construction, the relevant prior art consists of all of the prior art that was of record when the claims were allowed, not just that relied upon to reject claims.

Plaintiff's attempt to dismiss Schweizer based on Mr. Weisel's testimony is based on smoke and mirrors.  First, Mr. Weisel's testimony that each of Schweizer's jaws is on a "separate" support shaft is irrelevant since the claims merely require "a" support shaft, not "only one" support shaft.  Moreover,

Schweizer's support shafts are connected to one another such that either support shaft supports the other.

As to the "transverse passage," since the Plaintiff contends that "transverse passage" is broad enough to read on the ExpresSew which contains a parallel channel and a bend, it is obviously broad enough to read on the Schweizer device which also contains a parallel channel and a bend.



| ExpresSew | Schweizer |

The Plaintiff should not be heard to dismiss Schweizer by asserting that Tom Weisel "admitted" that Schweizer does not have a "transverse passage" as this testimony simply reflects Surgical Solutions' contention that its own ExpresSew does not have a "transverse passage" as Surgical Solutions believes that claim term **should** be construed (see below).  Surgical Solutions has consistently contended that the ExpresSew  is very similar to the Schweizer device because both carry suture in a needle notch (i.e. it is not "attached") and because both include a curved channel that does not extend <u>through</u> the lower jaw (i.e. neither has a transverse passage).  In light of the similarities to the Schweizer device that logically provide Surgical Solutions with a safe harbor, Surgical Solutions necessarily contends that the suture is not "attached" to the

Schweizer needle and that the Schweizer device does not have a "transverse passage."  Plaintiff contends just the opposite.

### B.    "Passage Transverse to the Length of the Member"

The Plaintiff correctly notes that each of the asserted claims requires a suture-passing forceps with a "transverse passage."  However, a "transverse passage" should not be construed to mean "a passage substantially perpendicular to a reference plane at a point where the needle emerges from the lower jaw", but rather should be interpreted to mean "a substantially perpendicular passage that extends transversely through the lower jaw for supporting the suture needle.":



The '982 patent explicitly teaches with reference to Figure 3, shown above, that the "transverse passage" extends through the lower jaw.  In particular, the specification says that "[n]eedle holding region 40 is defined by a suture passage 42 which extends through lower jaw 14 from a lower opening 44 to a larger, upper opening 46 at a face 48 of lower jaw 14."  [col.3, lines 45-56].  The claims also make it clear that the "transverse passage" is for supporting the suture needle in the stowed and suturing positions.

### C.    "Suturing Position"

The Plaintiff's proposed construction of "suturing position" as "the position of the needle within the suture passing forceps when the needle engages the tissue to be sutured" is contradicted by the '982 specification.  In particular, the '982 patent defines a needle in "a suturing position" as one where the needle is "<u>ready</u> to be punched" through the tissue to be sutured (emphasis added):

- "… the suture … attached to the needle is pulled to move the needle into the suturing position where it is <u>ready to be punched</u> through the tissue to be sutured." (*see* '982 patent, Exh. A, p.7, col.2, lines 23-25);

- "… the suturing position where the needle is <u>ready to be punched</u> through the tissue to be sutured."  (*see* '982 patent, Exh. A, p.7, col.2, lines 31-33).

- Once at the surgical site, suturing assembly 12 is also configured to support needled suture 20 in the suturing position where it is <u>ready to be punched</u> through tissue."  (*see* '982 patent, Exh. A, p.8, col.3, lines 40-42).

### D.    "Stowed Position"

The Plaintiff's proposed definition of "stowed position" as "any position resulting in a lower-profile configuration than the suturing position, including a zero degree angle" is also contradicted by the '982 specification.  In particular, the '982 patent expressly defines a needle in a "stowed position" as

being in a "non-suturing" or "not-ready to be punched" position (emphasis added):

- "… suturing assembly 12 is configured to support needle suture 20 in a stowed, <u>non-suturing position</u> (i.e. <u>not ready to be punched</u>) prior to delivering suture-passing forceps 10 to the surgical site."  (*see* '982 patent, Exh. A, p.8, col. 3, lines 36-40).

# IV.  CONCLUSION

Surgical Solutions respectfully requests that the Court adopt its proposed construction of the disputed claim terms as set forth above.

SURGICAL SOLUTIONS, LLC

Date: November 17, 2004      By:    /S/: Joseph C. Andras
                                            Joseph C. Andras (CA Bar No. 138,181)
                                            Vic Y. Lin (CA Bar No. 192,292)
                                            Myers Dawes Andras & Sherman, LLP
                                            19900 MacArthur Boulevard, 11th Floor
                                            Irvine, CA 92612
                                            Tel: (949) 223-9600
                                            Fax: (949) 223-9610

                                            /S/: Louis M. Ciavarra
                                            Louis M. Ciavarra (546,481)
                                            Bowditch & Dewey, LLP
                                            311 Main Street, P.O. Box 15156
                                            Worcester, MA 01615-0156
                                            Tel:  (508) 926-3408
                                            Fax: (508) 929-3011