## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SMITH & NEPHEW, INC., <br><br> Plaintiff, <br><br> v. <br><br> SURGICAL SOLUTIONS, LLC, <br><br> Defendant. | Civ. Act. No. 03 CV 12310 NMG |

---

### PLAINTIFF SMITH & NEPHEW, INC.'S REPLY *MARKMAN* BRIEF
### IN SUPPORT OF ITS MOTION FOR CONSTRUCTION
### OF THE DISPUTED CLAIM TERMS OF THE '982 PATENT

---

Mark J. Hebert (BBO No. 546,712)
Thomas M. Johnston (BBO No. 644,689)
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Ruffin B. Cordell
Ahmed J. Davis
FISH & RICHARDSON P.C.
1425 K Street N.W.
Washington, DC 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Attorneys for Plaintiff SMITH & NEPHEW, INC.

## **TABLE OF CONTENTS**

I.   INTRODUCTION ..........................................................................................................1

II.  INTERPRETATION OF THE DISPUTED CLAIM TERMS .............................................1

    A.   "Attached"..........................................................................................................1

        1.   "Attached" in the Preambles of Claims 1 and 20 Is Not a Limitation ..............................................................................1

            a.   "Attached" Is Not Required for a Structurally Complete Claim ..........................................................................2

            b.   "Having Suture Attached Thereto" Does Not Give "Life and Meaning" to the Claims ..................................................3

                i.   Surgical Solutions Mischaracterizes *Corning Glass* ........................................................................4

                ii.  "Having Suture Attached Thereto" is Not Necessary to Distinguish Over the Schweizer Prior Art Reference ..............................................................5

        2.   "Attached" is Not Limited to "Permanently Affixed" ................................7

    B.   "Passing a Suture Needle ... Through Tissue" .........................................................9

    C.   "Passage Transverse to the Length of the Member" ................................................9

    D.   "Suturing Position" ...........................................................................................10

    E.   "Stowed Position" .............................................................................................10

III. CONCLUSION ............................................................................................................11

# TABLE OF AUTHORITIES

**Cases**           **Page**

*Abbott Laboratories v. Dey, L.P.*,
287 F.3d 1097 (Fed. Cir. 2002)..................................................................................6

*Abtox, Inc. v. Exitron Corp.*,
122 F.3d 1019 (Fed. Cir. 1997)..................................................................................5

*Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*,
868 F.2d 1251 (Fed. Cir. 1989)..............................................................................3, 4

*Eagle Comtronics, Inc. v. Arrow Communication Lab., Inc.*,
305 F.3d 1303 (Fed. Cir. 2002)..................................................................................6

*Goldenberg v. Cytogen, Inc.*,
373 F.3d 1158 (Fed. Cir. 2004)..................................................................................6

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
355 F.3d 1327 (Fed. Cir. 2004)..............................................................................8, 9

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*,
381 F.3d 1111 (Fed. Cir. 2004)..................................................................................8

*Insituform Tech., Inc. v. Cat Contracting, Inc.*,
99 F.3d 1098 (Fed. Cir. 1996)....................................................................................5

*Intirtool, Ltd. v. Texar Corp.*,
369 F.3d 1289 (Fed. Cir. 2004)..................................................................................2

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004)....................................................................................8

*Loctite Corp. v. Ultraseal Ltd.*,
781 F.2d 861 (Fed. Cir. 1985)....................................................................................2

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
182 F.3d 1298 (Fed. Cir. 1999)..................................................................................5

*STX LLC v. Brine Inc.*,
211 F.3d 588 (Fed. Cir. 2000)....................................................................................3

*Tate Access Floors, Inc. v. Maxcess Technologies, Inc.*,
222 F.3d 958 (Fed. Cir. 2000)....................................................................................8

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
299 F.3d 1313 (Fed. Cir. 2002)..................................................................................8

**Rules**

37 C.F.R. § 1.106(b) (Rev. 3, July 1997)....................................................................3

I.  **INTRODUCTION**

Plaintiff Smith & Nephew, Inc. ("Smith & Nephew" or "S&N") hereby replies to defendant Surgical Solutions, LLC's ("Surgical Solutions") *Markman* Brief in Opposition to Plaintiff Smith & Nephew Inc.'s Motion for Construction of the Disputed Terms of the '982 Patent ("*Markman* Opp.").

As shown below, Surgical Solutions' claim construction arguments fly in the face of well-established Federal Circuit caselaw, as well as the plain meaning of the claims, the specification and the prosecution history. Moreover, Surgical Solutions' arguments are based on gross mischaracterizations of the cases that it cites.

Accordingly, Surgical Solutions' proposed constructions should be rejected. Instead, this Court should adopt Smith & Nephew's proposed constructions of the disputed claim terms.

II.  **INTERPRETATION OF THE DISPUTED CLAIM TERMS**

   A.  **"Attached"**

As set forth in Smith & Nephew's opening *Markman* Brief,[1] the term "attached" is not a limitation in independent claims 1 and 20, where it is undisputed that it appears *only* in the preamble. With respect to claim 19, where the term "attached" *is* a claim limitation, the term should be interpreted to simply mean fastened, connected or joined, consistent with its ordinary meaning, the specification and prosecution history, and the use of the term in the prior art. Surgical Solutions, conversely, argues that "attached" is both a limitation in claims 1 and 20, and that it means "permanently attached." Both prongs of Surgical Solutions' argument are incorrect, and should be rejected.

   1.  **"Attached" in the Preambles of Claims 1 and 20 Is Not a Limitation**

Surgical Solutions argues that the phrase "suture needle, having suture attached thereto" is a limitation in all the claims, even though in claims 1 and 20 it only appears in the preamble.

---

[1] Plaintiff Smith & Nephew, Inc.'s Markman Brief Filed in Support of its Proposed Interpretation of Disputed Claim Terms, filed on October 15, 2004.

### a. "Attached" Is Not Required For a Structurally Complete Claim

In its opening brief, Smith & Nephew showed how removing the disputed preamble language did not affect the structurally complete body of claims 1 and 20. (S&N's *Markman* Br. at 10). Smith & Nephew also pointed out that "***the*** suture needle" would change to "***a*** suture needle" in the body of the claim. *Id*. This change clearly demonstrates that the antecedent basis that need be derived from the preamble is simply to "a suture needle" and not to the phrase "having suture attached thereto." Thus, removing the phrase "having suture attached thereto" from the preamble does not raise any improper antecedent issues, or prevent the rest of the claim from describing the structurally complete invention.

In response, Surgical Solutions argues that because one term from the preamble ("suture needle") provides an antecedent basis for terms in the body of claims 1 and 20, the entire preamble, including the clause "having suture attached thereto," must be a limitation of those claims. (*See Markman* Opp. at 13-15). However, it is well-settled that whether the terms in a preamble constitute claim limitations is not an all or nothing proposition. For example, in *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861 (Fed. Cir. 1985), the Federal Circuit held that the term "anaerobic" in the preamble was a claim limitation, but that the rest of the preamble was merely "language of intended use, not a claim limitation." *Id.* at 868.

Moreover, the very caselaw that Surgical Solutions cites also undercuts its argument that the preamble issue is an all or nothing proposition. For example, in *Intirtool, Ltd. v. Texar Corp.*, 369 F.3d 1289, 1294-95 (Fed. Cir. 2004), the issue was whether the term "connecting" in the preamble was a limitation of the claims. The Federal Circuit held that it was not, despite the fact that other terms in the preamble (*i.e.*, "sheet metal"), did provide an antecedent basis for terms in the body of the claim. In fact, the Federal Circuit said that the body of the claim described the invention in "complete and exacting detail," even though the body of the claim referred to "said sheet metal," and relied on the phrase "overlapping sheet metal" in the preamble to provide an antecedent basis. *See id.* at 1292, 1295.

2

Finally, Surgical Solutions' argument is undercut by the prosecution history of the '982 patent. During prosecution, the Examiner rejected claim 1 of the application (which included the phrase "suture needle, having suture attached thereto" in the preamble), as anticipated by the prior art Li patent. (S&N Ex. B at SNE 14735, 14760-763).[2] If the Examiner had thought that "having suture attached thereto" in the preamble was a limitation of the claim, he would have been required to identify the corresponding structure in the Li patent to support his rejection.[3] *See* 37 C.F.R. § 1.106(b) (Rev. 3, July 1997) (Exhibit T). The fact that he identified the corresponding structure for the other elements, but not for "suture attached thereto" (S&N Ex. B at SNE 14762), is proof that the Examiner did not think that "attached" in the preamble was a limitation. Also significant is the fact that Smith & Nephew never argued that Li's suture was not "attached" to his needle since it was threaded through an eyelet, rather than permanently attached. (S&N Ex. B at SNE 14771-76). This is further proof that the term "attached" in the preambles of claims 1 and 20 does not constitute a limitation. *STX, LLC v. Brine Inc.*, 211 F.3d 588, 591 (Fed. Cir. 2000) (preamble language "was not decisive in securing allowance of the claim during prosecution").

      **b.**    **"Having Suture Attached Thereto" Does Not Give "Life and Meaning" to the Claims**

Surgical Solutions argues that the preamble's recitation of "having suture attached thereto" gives "life and meaning" to the claims, because otherwise the claims would be anticipated by the prior art Schweizer patent. (*Markman* Opp. at 12-13). As support for the notion that the "life and meaning" test for preamble language is based on avoidance of the prior art, Surgical Solutions relies on *Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*, 868 F.2d 1251 (Fed. Cir. 1989).

---

[2] S&N Exhibits A-R were submitted in an Omnibus Appendix filed on October 15, 2004. S&N Exhibits S-W are being submitted in the accompanying Supplemental Omnibus Appendix.

[3] In the Li patent, the suture is not permanently attached to the needle, but rather is attached to the needle by threading the suture through a "needle hole" (*i.e.*, eyelet) in the needle. (S&N Ex. S at col. 6, lines 52-68 and Figs. 29A-30B).

3

But Surgical Solutions' argument is wrong in two respects. First, the *Corning Glass* case does not look to avoidance of the prior art to determine whether the preamble is a limitation of the claim -- in fact, the *Corning Glass* court expressly rejects such an approach. Second, the claims do not require the preamble phrase "having suture attached thereto" to be a limitation in order to avoid anticipation by Schweizer.

### i. Surgical Solutions Mischaracterizes *Corning Glass*

Surgical Solutions grossly mischaracterizes the *Corning Glass* case when it says the Federal Circuit held in that case that the preamble language "was not merely a statement of intended purpose, but rather a claim limitation, ***because otherwise the claim would be invalid***." (*Markman* Opp. at 12) (emphasis added). In fact, in *Corning Glass* the Federal Circuit said just the opposite. It explained that it was interpreting "what the patentee meant by particular *words or phrases in the claim*" and not "redraft[ing] a claim for purposes of avoiding a defense of anticipation." 868 F.2d at 1257 (emphasis in original).

Instead of reading the preamble as a limitation simply to save the validity of the claim as Surgical Solutions asserts, the *Corning Glass* court held that the patent as a whole required such a construction. After reviewing the extensive discussion of the disputed preamble language ("optical waveguide") in the specification, including the detailed "complex equation" that the specification included for optical waveguides (*id.* at 1256), the Federal Circuit held:

> The effect preamble language should be given can be resolved only on review of the entirety of the patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim. Here, the [patent] specification makes clear that the inventors were working on a particular problem of an effective optical communication system not on general improvements in conventional optical fibers. To read the claim in light of the specification indiscriminately to cover all types of optical fibers would be divorced from reality.

*Id.* at 1257.

Surgical Solutions' reading of the '982 claims is similarly "divorced from reality." Looking at the '982 patent, it is readily apparent that the inventor was working on a new, low-profile design for a suture passing forceps so that it could be passed down a cannula for

4

arthroscopic surgery. (*See* '982 patent, S&N Ex. A at col. 1, lines 7-16 and col. 5, lines 4-5). The inventor was not working on a needle and suture assembly or a method for attaching suture to a needle. Thus, how the suture is "attached" to the needle is irrelevant and non-limiting, and "having suture attached" to the needle does not give "life and meaning" to the claims. *See, e.g., Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999) ("[I]f the preamble offers no distinct definition of any of the claimed invention's limitations, but rather merely states [a] purpose or intended use of the invention, then the preamble is of no significance to claim construction . . . .").

      ii. **"Having Suture Attached Thereto" Is Not Necessary to Distinguish Over the Schweizer Prior Art Reference**

Surgical Solutions argues that the scissor-like Schweizer patent discloses each limitation of the asserted claims except "a needle with suture attached thereto," and thus that the claims would be anticipated unless "attached" was construed to be a limitation. (*Markman* Opp. at 17). However, Surgical Solutions' argument is wrong since -- even without regard to the "attached" language -- there are several limitations in each of the independent claims of the '982 patent that are not met by the Schweizer reference.

First, as Smith & Nephew pointed out in its Combined Mem. in Opp. to Surgical Solutions' Mot. for Summary Judgment . . . of Infringement (at 12), each claim requires that the instrument not only have "*a* support shaft," but further requires that there is "a suturing assembly disposed at the distal end of *the* support shaft" (emphasis added). The word "*the*" in the clause "*the* support shaft" refers back to the singular support shaft ("*a* support shaft") mentioned earlier in the claim. Thus, each claim of the '982 patent requires that the entire suturing assembly be disposed at the distal end of a *single* support shaft. *See, e.g., Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023-24 (Fed. Cir. 1997) (holding "a metallic gas-confining chamber" means a single chamber); *Insituform Tech., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098, 1105-06 (Fed. Cir. 1996) (holding that "a cup" refers to a single vacuum cup). Surgical Solutions completely ignores the suturing assembly, and pretends it would be enough if Schweizer simply had a

5

support shaft. (*See Markman* Opp., at 17). However, even if, *arguendo*, one were to view the scissor-arms of Schweizer as being "support shafts" as Surgical Solutions argues, neither arm has "a suturing assembly" disposed at its distal end as required by the claims. Indeed, this was admitted by Tom Weisel, Surgical Solutions' Vice President of Engineering during his deposition. (*See* S&N's *Markman* Br. at 12; S&N Ex. C at 204).

Second, Schweizer does not include "a support shaft" as that term in used in the claims. The purpose of the support shaft is so that the instrument can be used in arthroscopic procedures through a cannula. (*See* '982 patent, S&N Ex. A at col. 1, lines 7-16). A scissor-type device, such as Schweizer, is completely unsuitable for such procedures (imagine trying to open a pair of scissors in a garden hose). To bolster its argument that Schweizer's scissor-arms are each "support shafts," Surgical Solutions refers to the prosecution history of a ***different and unrelated*** Smith & Nephew patent (U.S. Patent No. 5,730,747 ("the '747 patent")), which is prior art to the '982 patent. (*See* Mem. in Support of Defendant Surgical Solutions' Mot. for Summary Judgment of Non-Infringement, at 7-9, 26).[4] However, it is legally improper to base claim construction on the prosecution history of an unrelated patent. *See, e.g., Abbott Laboratories v. Dey, L.P.*, 287 F.3d 1097, 1104-05 (Fed. Cir. 2002) (no formal relationship between patents even though they were commonly owned and shared a common inventor). In fact, the Federal Circuit has recently explained that there is a "distinct line between patents that have a familial relationship and those that do not" such as the '981 patent and the '747 patent. *Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1167 (Fed. Cir. 2004).

Third, as Smith & Nephew also pointed out in its Combined Mem. In Opp. to Surgical Solutions' Mot. for Summary Judgment . . . of Infringement (at 12), each claim also requires that the lower jaw (or member) have a "passage transverse to the length of the [jaw or member] for supporting the suture needle in a suturing position ...." However, Schweizer does not have such

---

[4] Even then, Surgical Solutions mischaracterizes the prosecution of the unrelated '747 patent. Contrary to its argument, there was no concession during that prosecution that a scissor-arm was a support shaft. *See, e.g., Eagle Comtronics, Inc. v. Arrow Communication Lab., Inc.*, 305 F.3d 1303, 1316 (Fed. Cir. 2002) (argument based estoppel requires "clear and unmistakable surrender").

a "transverse passage." To be sure, Schweizer does have a passage for supporting its needle, which it calls "arcuate guideway 72" (S&N Ex. U at col. 3, line 14) -- not "arcuate needle 62" which Surgical Solutions misleadingly colored in yellow in its *Markman* Opp. (at 18). The actual passage, arcuate guideway 72, is colored red in the following copy of Schweizer Figure 4:



As can be clearly seen in the figure, the arcuate guideway 72 is not anywhere close to being transverse. Instead, it is at approximately a 45° angle to the surface of the jaw element 26 (colored yellow) where the needle emerges from the jaw.[5] Thus, as Mr. Weisel admitted, Schweizer does not have the transverse passage required by the claims of the '982 patent. (*See* S&N's *Markman* Br. at 12; S&N Ex. C at 205).

Accordingly, Surgical Solutions' argument that "a needle with suture attached thereto" must be interpreted to be a limitation of the claims in order to avoid anticipation by the Schweizer patent is clearly incorrect.

### 2. "Attached" is Not Limited to "Permanently Affixed"

There is simply no evidence or disclosure in the '982 patent that would limit "attached" to anything other than its ordinary and customary meaning of fastened, connected or joined. Surgical Solutions' argument that "attached" should be interpreted to mean "permanently affixed" is based on two misplaced theories – that "attached" must mean "permanently affixed" to avoid the prior art Schweizer patent and that the only disclosure in the specification discloses crimping or clamping. (*Markman* Opp. at 10). As shown above, Surgical Solutions' argument

---

[5] Note that item no. 48 is not part of the jaw, but is a separate plastic cartridge. (S&N Ex. U at col. 2, lines 50-52). Note further that the plastic cartridge 48 does not support the needle.

7

based on Schweizer falls far short. Surgical Solutions' argument based on the specification is no more availing.

First, the Federal Circuit has repeatedly held that it is completely improper to read a limitation from the specification into the claims. *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1331 (Fed. Cir. 2004) ("While claims must be construed in light of the specification, limitations from the specification are not to be read into the claims, for it is the claims that measure the invention."); *Tate Access Floors, Inc. v. Maxcess Technologies, Inc.*, 222 F.3d 958 (Fed. Cir. 2000). There is absolutely no evidence in the specification or prosecution history suggesting that Smith & Nephew meant to limit the attachment of the suture to the needle to only crimping or clamping, much less to a permanent affixation. To the contrary, the disclosure in the specification of a needle with suture "attached (*e.g.*, by crimping or clamping)" ('982 patent, S&N Ex. A at 3: 44-45) is only a disclosure of two preferred embodiments, which are expressly described as ***examples*** ("*e.g.*") of possible attaching methods. Claims are limited to preferred embodiments only in very narrow circumstances, which are not applicable here. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) ("Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'") (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)).

Further, even if, *arguendo*, the Court interprets "attached" to mean "crimping or clamping," that does not translate to a permanent fixation. Clamping, for example, does not require any permanence. Instead, a "clamp" is an instrument "for holding or compressing something." (S&N Ex. V). There are numerous methods of clamping, *i.e.*, holding, that are not permanent. For example, paper clips and binder clamps hold papers together, but are easily removed. Also, carabiners are a type of clamp that hold a climber to his rope in mountaineering, but allow the rope to move through it while the climber ascends or descends, and is easily removable from the rope. The clip on a pen can hold the pen to your shirt pocket, but the pen is

readily removable. Indeed, the most common characteristic of all clamps is that they hold to the extent necessary for the particular application, and then are *removable*. Therefore, to hold that "attached" means "permanently affixed" would be even narrower than the examples in the specification, and Surgical Solutions' argument to that effect should be rejected.

**B.     "Passing a Suture Needle . . . Through Tissue"**

Surgical Solutions does not dispute Smith & Nephew's interpretation of this phrase in its Opposition brief. Thus, it appears that Surgical Solutions now agrees with Smith & Nephew's interpretation that "passing a suture needle…through tissue" means "moving in a path such that at least a portion of the needle approaches and continues beyond the tissue, but the whole needle need not go all the way through the tissue." Accordingly, the Court should adopt that construction.

**C.     "Passage Transverse to the Length of the Member"**

Surgical Solutions proposed claim construction with respect to this phrase improperly reads a limitation into the claims. Specifically, Surgical Solutions is reading "through" into the claims to require that the "passage transverse to the length of the [jaw] member" go entirely through the jaw.

Again, like with "attached" discussed above, Surgical Solutions is trying to read a limitation into the claims from the disclosure of the preferred embodiment, which is improper. *Golight*, 355 F.3d at 1331. Nothing in the claims, specification or prosecution history suggests that the inventor intended for the claims to be so limited, and Surgical Solutions does not point to any such evidence. In fact, the prosecution history undercuts Surgical Solutions' construction. The Li patent, which the Examiner thought anticipated the claim, had a member with a passage that supported the needle, but did not go all of the way through the member. (S&N Ex. S at Figs. 10-12).

Thus, Surgical Solutions' construction should be rejected, and "passage transverse to the length of the [jaw] member" should be interpreted to mean "a passage substantially perpendicular to a reference plane where the needle emerges from the lower jaw."

9

### D. "Suturing Position"

Surgical Solutions' proposed construction of this phrase is contrary to the specification and is awkward and ambiguous. Thus, it should be rejected. Surgical Solutions argues that "suturing position" should mean "ready to be punched." However, this definition is ambiguous because it is not clear when the needle is "ready." Is the needle "ready" when the forceps are passed through the cannula into the surgical site? Is it "ready" when the needle is moved forward to an angle greater than the stowed position? Or is it "ready" when the tissue is grasped and the needle about to engage the tissue? One could interpret "ready to be punched" in any of these ways. Further, the selected portions of the specification that Surgical Solutions relies on clearly state "ready to be punched *through the tissue to be sutured*." The needle can only be truly ready to punch through tissue when it engages the tissue.

Therefore, Smith & Nephew's construction of "suturing position" as "the position of the needle within the suture passing forceps when the needle engages tissue to be sutured" should be adopted instead of Surgical Solutions' construction.

### E. "Stowed Position"

Again, Surgical Solutions proposes another ambiguous construction, that is based on when the needle is or is not "ready." Under Surgical Solutions' construction, depending on what is meant by "ready," the needle could be in the same position when it is in the "stowed position" as when it is in the "suturing position." Moreover, Surgical Solutions' construction does not take into account the specific disclosure in the patent which explains that the "stowed position" is not ready to be punched because the needle is in a retrograde position, *i.e.*, at a lesser angle. ('982 patent, S&N Ex. A at col. 1, lines 46-49 and col. 5, lines 29-40).

Thus, Smith & Nephew's interpretation of "stowed position" as "any position supported by the lower jaw resulting in a lower-profile configuration than in the suturing position, including a zero degree angle," should be adopted.

10

## III. CONCLUSION

For all of the forgoing reasons, as well as the reasons in Smith & Nephew's opening *Markman* Brief, Smith & Nephew respectfully requests that this Court adopt its proposed construction of the disputed claim terms.

Respectfully submitted,

Dated: December 7, 2004

By: _____
Mark J. Hebert (BBO No. 546,712)
Thomas M. Johnston (BBO No 644,689)
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Ruffin B. Cordell
Ahmed J. Davis
FISH & RICHARDSON P.C.
1425 K Street N.W.
Washington, DC 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Attorneys for Plaintiff SMITH & NEPHEW, INC.

I hereby certify that a true copy of the foregoing document was served on counsel for each other party (Mr. Andras and Mr. Ciavarra) by mail and Federal Express on December 7, 2004.

_____

20983257.doc