# Manual of
# PATENT
# EXAMINING
# PROCEDURE

### Original Sixth Edition, January 1995
### Latest Revision July 1997




## U.S. DEPARTMENT OF COMMERCE
### Patent and Trademark Office

Rev. 3, July 1997

applications. In circumstances where the common owner is a corporation or other organization an affidavit or declaration may be signed by an official of the corporation or organization empowered to act on behalf of the corporation or organization.

[43 FR 20465, May 11, 1978; 46 FR 29182, May 29, 1981; para. (d), 47 FR 41276, Sept. 17, 1982, effective date Oct. 1, 1982; para. (e), 50 FR 9381, Mar. 7, 1985, effective May 8, 1985; para. (e), 57 FR 29642, July 6, 1992, effective Sept. 4, 1992]

### § 1.105 Completeness of examiner's action.

The examiner's action will be complete as to all matters, except that in appropriate circumstances, such as misjoinder of invention, fundamental defects in the application, and the like, the action of the examiner may be limited to such matters before further action is made. However, matters of form need not be raised by the examiner until a claim is found allowable.

### § 1.106 Rejection of claims.

(a) If the invention is not considered patentable, or not considered patentable as claimed, the claims, or those considered unpatentable will be rejected.

(b) In rejecting claims for want of novelty or for obviousness, the examiner must cite the best references at his command. When a reference is complex or shows or describes inventions other than that claimed by the applicant, the particular part relied on must be designated as nearly as practicable. The pertinence of each reference, if not apparent, must be clearly explained and each rejected claim specified.

(c) In rejecting claims the examiner may rely upon admissions by the applicant, or the patent owner in a reexamination proceeding, as to any matter affecting patentability and, insofar as rejections in applications are concerned, may also rely upon facts within his or her knowledge pursuant to § 1.107.

(d) Subject matter which is developed by another person which qualifies as prior art only under 35 U.S.C. 102(f) or (g) may be used as prior art under 35 U.S.C. 103 against a claimed invention unless the entire rights to the subject matter and the claimed invention were commonly owned by the same person or organization or subject to an obligation of assignment to the same person or organization at the time the claimed invention was made.

(e) The claims in any original application naming an inventor will be rejected as being precluded by a waiver in a published statutory invention registration naming that inventor if the same subject matter is claimed in the application and the statutory invention registration. The claims in any reissue application naming an inventor will be rejected as being precluded by a waiver in a published statutory invention registration naming that inventor if the reissue application seeks to claim subject matter (1) which was not covered by claims issued in the patent prior to the date of publication of the statutory invention registration and (2) which was the same subject matter waived in the statutory invention registration.

[24 FR 10332, Dec. 22, 1959; 34 FR 18857, Nov. 26, 1969; para. (c) added, 47 FR 21752, May 19, 1982, effective July 1, 1982; paras. (d) and (e), 50 FR 9381, Mar. 7, 1985, effective May 8, 1985]

### § 1.107 Citation of references.

(a) If domestic patents are cited by the examiner, their numbers and dates, and the names of the patentees must be stated. If foreign published applications or patents are cited, their nationality or country, numbers and dates, and the names of the patentees must be stated, and such other data must be furnished as may be necessary to enable the applicant, or in the case of a reexamination proceeding, the patent owner, to identify the published applications or patents cited. In citing foreign published applications or patents, in case only a part of the document is involved, the particular pages and sheets containing the parts relied upon must be identified. If printed publications are cited, the author (if any), title, date, pages or plates, and place of publication, or place where a copy can be found, shall be given.

(b) When a rejection in an application is based on facts within the personal knowledge of an employee of the Office, the data shall be as specific as possible, and the reference must be supported, when called for by the applicant, by the affidavit of such employee, and such affidavit shall be subject to contradiction or explanation by the affidavits of the applicant and other persons.

[46 FR 29182, May 29, 1981; para. (a) revised, 61 FR 42790, Aug. 19, 1996, effective Sept. 23, 1996]

# United States Patent [19]

## Schweizer

[11]  **3,842,840**

[45]  Oct. 22, 1974

[54]  **SUTURE APPLICATOR**

[76]  Inventor:  Edward E. Schweizer, P.O. Box 314,
Katonah, N.Y. 10536

[22]  Filed:  May 7, 1973

[21]  Appl. No.: 358,082

[52]  U.S. Cl. ................................ 128/334 R, 128/340
[51]  Int. Cl. ........................................... A61b 17/04
[58]  Field of Search ................ 128/334 R, 326, 340

[56]  **References Cited**
UNITED STATES PATENTS

| | | | |
|---|---|---|---|
| 1,293,565 | 2/1919 | Smit | 128/340 |
| 1,449,087 | 3/1923 | Bugbee | 128/340 |
| 1,822,330 | 9/1931 | Ainslie | 128/334 R |
| 3,470,875 | 10/1969 | Johnson | 128/334 R |

FOREIGN PATENTS OR APPLICATIONS

| | | | |
|---|---|---|---|
| 263,940 | 4/1929 | Italy | 128/334 R |

*Primary Examiner*—Dalton L. Truluck
*Attorney, Agent, or Firm*—Melvin R. Stidham

[57]  **ABSTRACT**

The disclosure is of a suturing clamp in which the jaws are moved toward each other to a pre-set position wherein the flesh is firmly, but not too tightly clamped. A bifurcated needle is moveably carried on one of the jaws and a length of suture is extended from a bobbin on the clamp to a grip at the end of the jaw. After the pre-set clamping position is reached, further operation drives the needle across the space between the jaws to carry a length of suture with it.

**10 Claims, 8 Drawing Figures**





FIG.-3-

FIG.-2-

FIG.-1-

3,842,840



FIG.-4-



FIG.-5-

FIG.-6-

PATENTED OCT 22 1974

3,842,840

SHEET 3 OF 3




FIG-7-



FIG-8-

3,842,840

1

## SUTURE APPLICATOR

### BACKGROUND OF THE INVENTION

Suturing clamps presently available carry a length of suture with needles at one or both ends thereof. The clamps are tightened on the flesh; the needles are driven through; the needles are cut away; and the suture is tied off. Hence, for each stitch the suturing clamp must be loaded, operated and replaced.

### OBJECTS OF THE INVENTION

It is an object of this invention to provide a surgical suture applicator which may be operated repeatedly for placement of a plurality of stitches.

It is a further object of this invention to provide a surgical suture applicator wherein the needles are not attached to the suture.

It is a further object of this invention to provide a surgical suture applicator wherein it is not necessary to cut needles from the suture after the suture is driven through the flesh.

It is a further object of this invention to provide a surgical suture applicator wherein more than one stitch may be placed without reloading.

It is a further object of this invention to provide a surgical suture applicator which clamps the flesh to a preset, limited degree and then drives a length of suture through the flesh to permit a stitch to be tied without removing a needle from the suture.

It is a further object of this invention to provide a surgical suture applicator wherein a needle drives a length of suture through the flesh and then is withdrawn while the suture is held in place.

Other objects and advantages of this invention will become apparent from the description to follow when read in conjunction with the accompanying drawings.

### BRIEF SUMMARY OF THE INVENTION

In carrying out this invention, there is provided a suturing clamp having a one piece jaw and handle elements which are pivoted separable jaw and handle elements. The separable jaw and handle are latched together so that they move as a unit until a pre-set limited clamping position is reached. At that point, the separable jaw is unlatched from its handle and latched to the one piece jaw and handle. Further movement of the separable handle will produce no further movement of the jaw but, instead, drives a pusher rod to force a needle from the separable jaw into the other jaw. A length of suture is extended from a spool and held across the space between the jaws whereby the needle, having a bifurcated end, will carry the suture with it through the flesh and into the other jaw where it is secured by a slidable clamp. Then, the clamp may be released and the length of the suture cut off and tied.

### BRIEF DESCRIPTION OF THE DRAWINGS

In the drawings:

FIG. 1 is an isometric view of a suturing clamp embodying features of this invention;

FIG. 2 is a section view of the suturing clamp prior to operation;

FIG. 3 is a section view of the suturing clamp in relatively closed position;

2

FIG. 4 is an enlarged partial section view of the jaw end of the clamp in relatively closed position but prior to the suturing operation;

FIG. 5 is an end view of the upper jaw component; and

FIG. 6 to 8, inclusive, are enlarged partial section views in various stages of the suturing operation.

## DESCRIPTION OF A PREFERRED EMBODIMENT

Referring now to FIGS. 1 to 3 with greater particularly, the suturing clamp 10 of this invention includes a first lever 12 having a lower jaw element 14 integral therewith and a thumb engaging loop 16 for manual operation thereof. An arcuate ratchet member 18 extended from the one-piece lever 12 engages with a complementary arcuate ratchet member 20 on an actuator level 22 to hold the clamps 10 in relatively closed position as in conventional forceps design.

The actuator lever member 22 is pivoted to the first lever member 12 on a pivot pin 24 on which is also pivotably mounted the upper jaw element 26. As shown in FIGS. 2 and 3, the upper jaw element 26 is normally secured to the actuator lever member 22 by engagement of a pawl or latch 28 thereon on a complementary surface 30 on the actuator lever member, the latch being urged into engaging position by means of a spring 32 carried on the upper jaw element. When the jaw elements 14 and 26 move to a pre-set relatively clamped position shown in FIG. 3, a detent 34 carried on the upper jaw element 26 engages in a recess 36 on the one-piece first lever member 12 effectively to interlock the jaw elements 14 and 26 together under the force of the compression spring 38 biasing the detent 34. At the same instant, the latch 28 engages a camming surface 39 on the lower jaw element which forces the latch out of engagement with the surface 30 to free the actuator lever 22 from driving engagement with the upper jaw 26 and allows it to pivot relative thereto.

With the separable upper jaw 26 secured to the lower jaw by means of the detent 34 and further clamping movement also precluded by engagement of stop surfaces 40 and 41 on the upper and lower jaws 26 and 14, further pivotal movement of the lever 22 will swing the arm 42 carried thereon to push the rod 44 lengthwise of the upper jaw element 26. The rod 44 may be secured to the arm 42 as by engagement of an enlargement 46 thereon in a complementary recess on the arm 42.

A cartridge 48 of plastic or the like is snapped in place in a recess 50 in the upper jaw element 26 to be carried thereby. A bobbin 52 rotatably carried in the cartridge carries a supply of suture 54 from which a length of suture may be pulled and retained in a gripping slot 56 (FIG. 5) at the end of the cartridge 48.

Carried on the end of the pusher rod 44 in the separable upper jaw 26 is a slide block 57, having a transverse slot 58 therein in which is slidably and pivotably carried a pin 60 on an arcuate needle 62. As shown in FIG. 5 the end of the needle is bifurcated with a V-notch 63 in the end thereof to grasp the length of suture 54 as the needle emerges from the upper jaw. A passageway 64 in the end of the lower jaw is adapted to receive the end of the needle 62, and a slidable clamp 66 having a serrated forward edge 68 is spring biased into engagement with the wall of the passageway 64 to grip a length of suture therein under the force of the spring 70.

3,842,840

3

While a single suture and needle are here shown, it is obvious that multiple spools 52 and a plurality of needles 62 may be employed if it is desired to apply two or more stitches simultaneously.

Referring now to FIGS. 4 to 8, inclusive, there is illustrated the progressive operation of a suturing clamp 10 of this invention. In FIG. 4 the upper and lower jaws 26 and 14 are in the condition illustrated in FIG. 3 wherein they are locked together in relatively closed position. Since the actuator lever 22 is free to pivot relative to the upper jaw 26, the arm 42 thereon commences to push the rod 44 and drive the slide block 57 toward the end of the upper jaw 26, causing the arcuate needle 62 to slide along its complementary, arcuate guideway 72. Then, as shown in FIG. 6, the bifurcated end 63 of the needle (FIG. 5) grips the suture 54 and commences to carry it into the passageway 64 in the lower jaw element 14. Of course, this would carry the suture through flesh that is gripped between the jaws 14 and 26.

In FIG. 7, the needle 62 has moved further into the passageway 64 to cam the slide clamp 66 back against its spring. The serrated end 68 of the clamp grips the length of suture to prevent it from being withdrawn with the needle as it is retracted. Finally, in FIG. 8, the rod 44 has pulled the slide block back to the left to retract the arcuate needle while the length of suture 54 is gripped by the slide clamp 66. To complete the suturing operation, the length of suture is severed from the supply and tied off. Another length may immediately be placed in the grip 56 at the end of the cartridge and the previously described operation repeated.

While this invention has been described in conjunction with a preferred embodiment thereof, it is obvious that modifications and changes therein may be made by those skilled in the art without departing from the spirit and scope of this invention.

What is claimed is:

1. A surgical suture applicator comprising:
a first lever including a first jaw arm thereon;
a second jaw arm;
a pivotal connection between said first lever and said second jaw arm;
an actuator lever;
means releasably connecting said actuator lever to said second jaw arm to transmit pivotal movement thereto;
a needle slidably carried in said second jaw arm from a retracted position within said second jaw arm to a suturing position extended therefrom toward said first jaw arm;
a needle-receiving passageway in the end of said first jaw arm;
a supply of suture on said second jaw arm;
means on the end of said second jaw arm outward of said needle for gripping a length of suture from said supply across the path of said needle;
means operable to disengage said releasable connecting means when said jaw arms have pivoted to a relatively closed position; and means then operable to

4

restrain further relative movement between said jaw arms;
means responsive to further pivotal movement of said actuator lever toward said first lever for moving said needle into said suturing position; and
means on the end of said needle for grasping said length of suture during said movement.

2. The surgical suture application defined by claim 1 wherein:
the end of said needle is bifurcated.

3. The surgical suture applicator defined by claim 1 including:
a reel carrying said supply of suture rotatably carried on said second jaw arm.

4. The surgical suture applicator defined by claim 3 including:
a magazine containing said reel and said suture gripping means releasably carried on said second jaw arm.

5. The surgical suture applicator defined by claim 1 including:
a clamp slidably carried on said first jaw arm;
spring means normally biasing said clamp across said passageway;
a camming surface on said clamp engageable by said needle moving into said suturing position to retract said clamp against said spring means; and
a gripping surface on said clamp to prevent withdrawal of a length of suture carried into said passageway by said needle.

6. The surgical suture applicator defined by claim 1 wherein said releasable connecting means comprises:
a latch member carried on said second jaw arm engaging a surface on said actuator lever to form the pivotal connection therewith to transmit said pivotal movement through a predetermined angle toward said first jaw arm.

7. The surgical suture applicator defined by claim 1 wherein said needle moving means comprises:
a pusher rod pivotally connected between said actuator lever and said needle and slidable along said second jaw arm.

8. The surgical suture applicator defined by claim 7 wherein:
said needle is of arcuate configuration, and including:
a complementary, arcuate slideway in the end of said second jaw arm opening toward said needle-receiving passageway.

9. The surgical suture applicator defined by claim 1 wherein:
said suture grasping means comprises a bifurcation at the end of said needle.

10. The surgical suture applicator defined by claim 1 wherein:
said suture gripping means comprises a narrow slot at the end of said second jaw arm extending longitudinally thereof.

* * * * *

EXHIBIT V\

Copyright © 1984 by Merriam-Webster Inc.

Philippines Copyright 1984 by Merriam-Webster Inc.

Library of Congress Cataloging in Publication Data
Main entry under title:

Webster's ninth new collegiate dictionary.

Based on Webster's third new international
dictionary.
Includes index.
1. English language—Dictionaries.  1. Merriam-
Webster Inc.
PE1628.W5638    1984       423      83-19499
ISBN 0-87779-508-8
ISBN 0-87779-509-6 (indexed)
ISBN 0-87779-510-X (deluxe)

Webster's Ninth New Collegiate Dictionary principal copyright 1983

COLLEGIATE trademark Reg. U.S. Pat. Off.

All rights reserved. No part of this work covered by the copyrights hereon may be re-
produced or copied in any form or by any means—graphic, electronic, or mechanical,
including photocopying, taping, or information storage and retrieval systems—without
written permission of the publisher.

Made in the United States of America

9RMcN84

¹clam \'klam\ n [ME, fr. OE *clamm* bond, fetter; akin to OHG *klamma* constriction, L *glomus* ball] (bef. 12c) : CLAMP, CLASP

²clam n, often attrib [¹clam; fr. the clamping action of its shells] (1520) 1 a : any of numerous edible marine bivalve mollusks living in sand or mud b : a freshwater mussel 2 a : a stolid or closemouthed person 3 : CLAMSHELL

³clam vi clammed; clam·ming (1636) : to gather clams esp. by digging — clam·mer \-ər\ n

cla·mant \'kla-mənt, 'klam-ənt\ adj [L *clamant-*, *clamans*, prp. of *clamare* to cry out] (1639) 1 : CLAMOROUS, BLATANT 2 : URGENT — cla·mant·ly adv

clam·bake \'klam-,bāk\ n (1835) 1 : an outdoor party; esp : a seashore outing where food is usu. cooked on heated rocks covered by seaweed b : the food served at a clambake 2 : a gathering characterized by noisy sociability; esp : a political rally

clam·ber \'klam-(b)ər\ vi clam·bered; clam·ber·ing \'klam-b(ə-)riŋ\, [ME *clambren*; akin to OE *climban* to climb] (14c) : to climb awkwardly (as by scrambling) ⟨~ed over the rocks⟩ — clam·ber·er \-b)ər-ər\ n

clam·my \'klam-ē\ adj clam·mi·er; -est [ME, prob. fr. *clammen* to smear, stick, fr. OE *clǣman*; akin to OE *clǣg* clay] (14c) 1 : being damp, soft, sticky, and usu. cool ⟨a ~ and intensely cold mist —Charles Dickens⟩ 2 a : lacking normal human warmth (the ~ atmosphere of an institution) b : ALOOF, REPELLENT — clam·mi·ly \'klam-ə-lē\ adv — clam·mi·ness \-nəs\ n

¹clam·or \'klam-ər\ n [ME, fr. MF *clamour*, fr. L *clamor*, fr. *clamare* to cry out — more at CLAIM] (14c) 1 a : noisy shouting b : a loud continuous noise 2 : insistent public expression (as of support or protest) ⟨a ~ against increased taxes⟩

²clamor vb clam·ored; clam·or·ing \'klam-(ə-)riŋ\ vi (14c) 1 : to make a din 2 : to become loudly insistent ⟨~ed for his impeachment⟩ ~ vt 1 : to utter or proclaim insistently and noisily 2 : to influence by means of clamor

³clamor vt [origin unknown] obs (1611) : SILENCE

clam·or·ous \'klam-(ə-)rəs\ adj (15c) 1 : marked by confused din or outcry : TUMULTUOUS (the busy ~ market) 2 : noisily insistent **syn** see VOCIFEROUS — clam·or·ous·ly adv — clam·or·ous·ness n

clam·our \'klam-ər\ chiefly Brit var of CLAMOR

¹clamp \'klamp\ n [ME, prob. fr. (assumed) MD *klampe*; akin to OE *clamm* bond, fetter — more at CLAM] (14c) 1 : a device designed to bind or constrict or to press two or more parts together so as to hold them firmly 2 : any of various instruments or appliances having parts brought together for holding or compressing something

²clamp vt (1677) 1 : to fasten with or as if with a clamp 2 a : to place by decree : IMPOSE — often used with on ⟨~ed on a curfew after the riots⟩ b : to hold tightly

clamp·down \'klamp-,daůn\ n (1940) : the act or action of making regulations and restrictions more stringent : CRACKDOWN ⟨a ~ on charge accounts, bank loans, and other inflationary influences —Time⟩

clamp down \'klamp-'daůn\ vi (1937) : to impose restrictions : become repressive (the police are clamping down on speeders)

clams casino n pl but sing or pl in constr, often cap 2d C (1952) : clams on the half shell usu. topped with green pepper and baked or broiled

clam·shell \'klam-,shel\ n (1877) 1 : a bucket or grapple (as on a dredge) having two hinged jaws 2 : an excavating machine having a clamshell 3 : either of a pair of doors (as in an airplane tail) that open out and away from each other

clam up vi (1916) : to become silent (he clammed up when asked for details)

clam worm n (ca. 1885) : any of several large burrowing polychaete worms (as a *nereis*) often used as bait

clan \'klan\ n [ME, fr. ScGael *clann* offspring, clan, fr. OIr *cland* plant, offspring, fr. L *planta* plant] (15c) 1 a : a Celtic group esp. in the Scottish Highlands comprising a number of households whose heads claim descent from a common ancestor b : SIB 3 2 : a group united by a common interest or common characteristics

clan·des·tine \klan-'des-tən also -,tīn or -,tēn or 'klan-dəs-\ adj [MF or L; MF *clandestin*, fr. L *clandestinus*, irreg. fr. *clam* secretly; akin to L *celare* to hide — more at HELL] (1566) : held in or conducted with secrecy : SURREPTITIOUS **syn** see SECRET — clan·des·tine·ly adv — clan·des·tine·ness n — clan·des·tin·i·ty \,klan-dəs-'stin-ə-tē, ,klan-,des-\ n

¹clang \'klaŋ\ vb [L *clangere*; akin to Gk *klazein* to scream, bark, OE *hlēhhan* to laugh] vi (1576) 1 a : to make a loud metallic ringing sound (anvils ~ed) b : to go with a clang ⟨a ~ed bell⟩ ~ vt : to cause to clang ⟨~ a bell⟩

²clang n (1596) 1 : a loud ringing metallic sound (the ~ of a fire alarm) 2 : a harsh cry of a bird (as a crane or goose)

clan·gor \'klaŋ-ər also -gər\ n [L *clangor*, fr. *clangere*] (1593) : a resounding clang or medley of clangs (the ~ of hammers) — clan·gor·ous \-(g)ə-rəs\ adj — clan·gor·ous·ly adv

²clangor vi (1837) : to make a clangor

clan·gour \'klaŋ-ər, -gər\ chiefly Brit var of CLANGOR

¹clank \'klaŋk\ vb [prob. imit.] vi (1656) 1 : to make a clank or series of clanks (the radiator hissed and ~ed) 2 : to go with or as if with a clank (tanks ~ing through the streets) ~ vt : to cause to clank — clank·ing·ly \'klaŋ-kiŋ-lē\ adv

²clank n (1656) : a sharp brief metallic ringing sound

clan·nish \'klan-ish\ adj (1776) 1 : of or relating to a clan 2 : tending to associate only with a select group of similar background or status (~ immigrants) — clan·nish·ly adv — clan·nish·ness n

clans·man \'klanz-mən\ n (1810) : a member of a clan

¹clap \'klap\ vb clapped also clapt; clap·ping [ME *clappen*, fr. OE *clappian*; akin to OHG *klaphōn* to beat, L *glēba* clod — more at CLIP] vi (bef. 12c) 1 : to strike (as two flat hand surfaces) together so as to produce a sharp percussive noise 2 a : to strike (the hands) together repeatedly usu. in applause b : APPLAUD 3 : to strike with the flat of the hand in a friendly way (clapped his friend on the shoulder) 4 : to place, put, or set esp. energetically (~ him into jail) 5 : to improvise hastily ⟨~ vi 1 : to produce a percussive sound; esp : SLAM 2 : to go abruptly or briskly 3 : APPLAUD

²clap n (13c) 1 : a device that makes a clapping noise 2 obs : a sudden stroke of fortune and esp. ill fortune 3 : a loud percussive noise; specif : a sudden crash of thunder 4 a : a sudden blow b : a friendly slap ⟨a ~ on the shoulder⟩ 5 : the sound of clapping hands; esp : APPLAUSE

³clap n [MF *clapoir* bubo] (1587) : GONORRHEA — often used with the

clap·board \'klab-ərd; 'klap(,)-, bó(ə)rd, -,bó(ə)rd\ n [part trans. of D *klaphout* stave wood] (1598) 1 archaic : a size of board for making staves and wainscoting 2 : a narrow board usu. thicker at one edge than the other used for siding — clapboard vt

clapped-out \(')klapt-'daůt, (')klapt-'aůt\ adj, Brit (1946) : WORN-OUT; also : TIRED

clap·per \'klap-ər\ n (14c) : one that claps: as a : the tongue of a bell b : a mechanical device that makes noise esp. by the banging of one part against another c : a person who applauds

clap·per·claw \'klap-ər-,klo\ vt [perh. fr. clapper + claw (v.)] (1590) 1 dial Eng : to claw with the nails 2 dial Eng : SCOLD, REVILE

clap·trap \'klap-,trap\ n [¹clap; fr. its attempt to win applause] (1799) : pretentious nonsense : TRASH

²claptrap adj (1815) : characterized by or suggestive of claptrap; esp : of a cheap showy nature (~ sentiment)

¹claque \'klak\ n [F, fr. claquer to clap, of imit. origin] (1864) 1 : a group hired to applaud at a performance 2 : a group of sycophants

claqueur \kla-'kər\ n [F, fr. claquer to clap] (1837) : a member of a claque

clar·ence \'klar-ən(t)s\ n [duke of Clarence, later William IV of England] (1837); a closed four-wheeled four-passenger carriage

clar·et \'klar-ət\ n [ME, fr. MF (vin) claret clear wine, fr. claret clear, fr. cler clear] (14c) 1 : a red Bordeaux wine; also : a similar wine procured elsewhere 2 : a dark purplish red — claret adj

clar·i·fy \'klar-ə-,fī\ vb -fied; -fy·ing [ME clarifien, fr. MF clarifier, fr. LL clarificare, fr. L clarus clear — more at CLEAR] vt (14c) 1 : to make (as a liquid) clear or pure usu. by freeing from suspended matter 2 : to free of confusion 3 : to make understandable ~ vi : to become clear — clar·i·fi·ca·tion \,klar-ə-fə-'kā-shən\ n — clar·i·fi·er \'klar-ə-,fī(-ə)r\ n

clar·i·net \,klar-ə-'net, 'klar-ə-nət\ n [F clarinette, prob. deriv. of ML clarion-, clarial] (1796) : a single-reed woodwind instrument having a cylindrical tube with a moderately flared bell and a usual range from C below middle C upward for 3½ octaves — clar·i·net·ist or clar·i·net·tist \,klar-ə-'net-əst\ n

clar·i·on \'klar-ē-ən\ n [ME, fr. MF & ML; MF clairon, fr. ML clarion-, clario, fr. L clarus] (14c) 1 : a medieval trumpet with clear shrill tones 2 : the sound of or as if of a clarion

²clarion adj (1841) : brilliantly clear; esp : STENTORIAN (a ~ call to action)

clar·i·ty \'klar-ət-ē\ n [ME clarite, fr. L claritat-, claritas, fr. clarus] (14c) : the quality or state of being clear : LUCIDITY (the ~ of her voice)

clark·ia \'klär-kē-ə\ n [NL, fr. William Clark] (1827) : a showy annual herb (genus Clarkia) of the evening-primrose family of the Pacific slope of No. America

¹claro \'klä-(,)ō\ n, pl claros [Sp, fr. claro light, fr. L clarus] (1891) : a light-colored generally mild cigar

²claro \'kla(ə)r-ē, 'kle(ə)r-ē, n, pl clar·ies [ME clarie, fr. MF sclaree, fr. ML sclareia] (14c) : an aromatic mint (Salvia sclarea) of southern Europe used as an adulterant in wines, as a condiment, and medicinally

¹clash \'klash\ vb (1500) 1 a : to make a clash (cymbals ~ed) b : to come into conflict (where ignorant armies ~ by night —Matthew Arnold) ~ vt : to cause to clash — clasher n

²clash n (1513) 1 : a noisy usu. metallic sound of collision 2 a : a hostile encounter : SKIRMISH (a ~ between the two armies) b : a sharp conflict (a ~ of opinions)

¹clasp \'klasp\ n [ME claspe] (14c) 1 a : a device (as a hook) for holding objects or parts together b : a device (as a bar) attached to a military medal to indicate an additional award of the medal or the action or service for which it was awarded 2 : a holding or enveloping with or as if with the hands or arms

²clasp vt (14c) 1 : to fasten with or as if with a clasp (a robe ~ed with a brooch) 2 : to enclose and hold with the arms; specif : EMBRACE 3 : to seize with or as if with the hand : GRASP

clasp·er \'klas-pər\ n (1839) : a male copulatory structure: a : one of a pair of external anal processes of an insect b : one of a pair of organs on the pelvic fins of elasmobranch fishes

clasp knife n (ca. 1755) : POCKETKNIFE esp : a large one-bladed folding knife having a catch to hold the blade open

¹class \'klas\ n, often attrib [F classe, fr. L classis group called to arms, class of citizens; akin to L calare to call — more at LOW] (1602) 1 a : a group of students meeting regularly to study the same subject b : a body of students meeting regularly as a class c : a course of instruction : the period during which such a body meets 2 : a group of students or alumni whose year of graduation is the same 3 a : a group sharing the same economic or social status (the working ~) b : social rank; esp : high social rank (high quality : ELEGANCE 3 : a group, set, or kind sharing common attributes: as a : a major category in biological taxonomy ranking above the order and below the phylum or division b : a collection of adjacent and discrete or continuous values of a random variable c : SET 21 4 : a division or rating based on grade or quality

²class vt (1705) : CLASSIFY

class act n (1976) : something of outstanding quality or prestige

class action n (1952) : a legal action undertaken by one or more plaintiffs on behalf of themselves and all other persons having an identical interest in the alleged wrong

class-conscious adj (1903) 1 : actively aware of one's common status with others in a particular economic or social level of society 2 : believing in and actively aware of class struggle — class consciousness n

\ə\ abut \ᵊ\ kitten, F table \ər\ further \a\ ash \ā\ ace \ä\ cot, cart \aú\ out \ch\ chin \e\ bet \ē\ easy \g\ go \i\ hit \ī\ ice \j\ job \ŋ\ sing \ō\ go \ó\ law \ói\ boy \th\ thin \th\ the \ü\ loot \ú\ foot \y\ yet \zh\ vision \à, ḱ, ⁿ, œ, œ̄, ᵫ, ᵫ̄, ⁿ\ see Guide to Pronunciation

EXHIBIT W

# Manual of
# PATENT
# EXAMINING
# PROCEDURE

Original Sixth Edition, January 1995
Latest Revision July 1997

 

## U.S. DEPARTMENT OF COMMERCE
### Patent and Trademark Office

Rev. 3, July 1997

MANUAL OF PATENT EXAMINING PROCEDURE

**¶ 6.02.04   Computer Program Listing As Printout In Appendix (More Than Ten Pages )**

This application contains an appendix consisting of a computer program listing of more than ten (10) pages. In accordance with 37 CFR 1.96(c), a computer program listing contained on more than ten (10) pages, must be submitted as a "microfiche appendix" conforming to the standards set forth in 37 CFR 1.96(c)(2) and must be appropriately referenced in the specification (see 37 CFR 1.77(c)(6)). Accordingly, applicant is required to cancel the computer program listing appearing in the current appendix to the specification, file a "microfiche appendix" in compliance with 37 CFR 1.96(c), and insert an appropriate reference to the newly added "microfiche appendix" at the beginning of the specification.

**Examiner Note:**

This form paragraph must be used whenever an application filed on or after September 23, 1996 contains a computer program listing consisting of a paper printout appendix of more than ten pages.<

Copies of publicly available computer program listings are available from the Patent and Trademark Office on paper and on microfiche at the cost set forth in 37 CFR 1.19(a)(5) and (6).

### OTHER INFORMATION

The micrographic standards >are set forth in 36 CFR part 1230.<

** A microfiche filed with a patent application will be referred to as a "Microfiche Appendix," and will be identified as such on the front page of the patent but will not be part of the printed patent. "Microfiche Appendix" denotes the total microfiche, whether only one or two or more. One microfiche is equivalent to a maximum of either 63 (9x7) or 98 (14x7) frames (pages), or less.

The face of the file jacket will bear a label to denote that a Microfiche Appendix is included in the application. A statement must be included in the specification to the effect that a microfiche appendix is included in the application. The specification entry must appear at the beginning of the specification immediately following any cross−reference to related applications, 37 CFR 1.77 ** >(a)(6)<. The patent front page and the *Official Gazette* entry will both contain information as to the number of microfiche and frames of computer program listings appearing in the microfiche appendix.

When an application containing microfiche is received in the Correspondence and Mail Division, a special pocket will be affixed to the center section of the inside of the file wrapper underneath all papers, and the microfiche inserted therein. The application file will then proceed on its normal course, and when it reaches the Application Branch, a label which sticks up above the

file wrapper will be placed at the center section of the face of the wrapper. When the application file reaches the Micrographics Division, the Microfiche Appendix label will be placed on the face of the file wrapper. When the Allowed Files and Assembly Branch of the Office of Publications receives the application file, the person placing the patent number on the face of the file, upon seeing the Microfiche Appendix label, will give the file to the Supervisor who will call Micrographics Division and give the serial number and patent number, and request copies of the microfiche. Micrographics Division personnel will then put the patent number on the microfiche(s), making certain each microfiche is the most recent, and numbering each correctly; e.g., 1 of 1, 1 of 2, etc. Upon completion, two copies will be produced and provided to Allowed and Assembly Branch Files — one for the grant head and one for the file wrapper.

At the time of assembly, the Microfiche Appendix will be placed inside the grant head behind the patent grant for eyeletting, ribboning, and mailing to the patentee/attorney. During the signing of the grant heads by the Attesting Officer, the patent will be checked to assure proper assembly prior to mailing.

## 609   Information Disclosure Statement [R−3]

*37 CFR 1.97.   Filing of information disclosure statement.*

** >(a) In order for an applicant for a patent or for a reissue of a patent to have an information disclosure statement in compliance with § 1.98 considered by the Office during the pendency of the application, it must satisfy paragraph (b), (c), or (d) of this section.

(b) An information disclosure statement shall be considered by the Office if filed by the applicant:

(1) Within three months of the filing date of a national application;

(2) Within three months of the date of entry of the national stage as set forth in § 1.491 in an international application; or

(3) Before the mailing date of a first Office action on the merits,

whichever event occurs last.

(c) An information disclosure statement shall be considered by the Office if filed after the period specified in paragraph (b) of this section, provided that the statement is accompanied by either a certification as specified in paragraph (e) of this section or the fee set forth in § 1.17(p), and is filed before the mailing date of either:

(1) A final action under § 1.113 or

(2) A notice of allowance under § 1.311,

whichever occurs first.

(d) An information disclosure statement shall be considered by the Office if filed by the applicant after the period specified in paragraph (c) of this section, provided that the statement is filed on or before payment of the issue fee and is accompanied by:

(1) A certification as specified in paragraph (e) of this section;

(2) A petition requesting consideration of the information disclosure statement; and

(3) The petition fee set forth in § 1.17(i).<

PARTS, FORM, AND CONTENT OF APPLICATION

(e) A certification under this section must state either:

(1) That each item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the statement, or

(2) That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application or, to the knowledge of the person signing the certification after making reasonable inquiry, was known to any individual designated in § 1.56(c) more than three months prior to the filing of the statement.

(f) No extensions of time for filing an information disclosure statement are permitted under § 1.136. If a bona fide attempt is made to comply with §1.98, but part of the required content is inadvertently omitted, additional time may be given to enable full compliance.

(g) An information disclosure statement filed in accordance with this section shall not be construed as a representation that a search has been made.

(h) The filing of an information disclosure statement shall not be construed to be an admission that the information cited in the statement is, or is considered to be, material to patentability as defined in § 1.56(b).

(i) Information disclosure statements, filed before the grant of a patent, which do not comply with this section and § 1.98 will be placed in the file, but will not be considered by the Office.

*37 CFR 1.98. Content of information disclosure statement.*

(a) Any information disclosure statement filed under § 1.97 shall include:

(1) A list of all patents, publications or other information submitted for consideration by the Office;

(2) A legible copy of :

(i) Each U.S. and foreign patent;

(ii) Each publication or that portion which caused it to be listed; and

(iii) All other information or that portion which caused it to be listed, except that no copy of a U.S. patent application need be included; and

(3) A concise explanation of the relevance, as it is presently understood by the individual designated in § 1.56(c) most knowledgeable about the content of the information, of each patent, publication, or other information listed that is not in the English language. The concise explanation may be either separate from the specification or incorporated therein.

(b) Each U.S. patent listed in an information disclosure statement shall be identified by patentee, patent number and issue date. Each foreign patent or published foreign patent application shall be identified by the country or patent office which issued the patent or published the application, an appropriate document number, and the publication date indicated on the patent or published application. Each publication shall be identified by author (if any), title, relevant pages of the publication, date and place of publication.

(c) When the disclosures of two or more patents or publications listed in an information disclosure statement are substantively cumulative, a copy of one of the patents or publications may be submitted without copies of the other patents or publications provided that a statement is made that these other patents or publications are cumulative. If a written English-language translation of a non-English language document, or portion thereof, is within the possession, custody or control of, or is readily available to any individual designated in § 1.56(c), a copy of the translation shall accompany the statement.

(d) A copy of any patent, publication or other information listed in an information disclosure statement is not required to be provided if it was previously cited by or submitted to the Office in a prior application, provided that the prior application is properly identified in the statement and relied upon for an earlier filing date under 35 U.S.C. 120.

Information Disclosure Statements are not permitted in provisional applications filed under 35 U.S.C. 111(b). Since no substantive examination is given in provisional applications, a disclosure of information is unnecessary. Any such statement filed in a provisional application will be returned or destroyed at the option of the Office. In applications filed under 35 U.S.C. 111(a), applicants and other individuals substantively involved with the preparation and/or prosecution of the application have a duty to submit to the Office information which is material to patentability as defined in 37 CFR 1.56. These individuals also may want the Office to consider information for a variety of other reasons; e.g., without first determining whether the information meets any particular standard of materiality, or because another patent office considered the information to be relevant in a counterpart or related patent application filed in another country, or to make sure that the examiner has an opportunity to consider the same information that was considered by the individuals that were substantively involved with the preparation or prosecution of a patent application.

An information disclosure statement filed in accordance with the provisions of 37 CFR 1.97 and 1.98 provides the procedure available to an applicant to submit information to the Office so that the information will be considered by the examiner assigned to the application. The requirements for the content of a statement have been simplified in the new rules which became effective on March 16, 1992, to encourage individuals associated in a substantive way with the filing and prosecution of a patent application to submit information to the Office so the examiner can determine its relevance to the claimed invention. The procedures for submitting an information disclosure statement under the new rules are designed to encourage individuals to submit information to the Office promptly.

In order to have information considered by the Office during the pendency of a patent application, an information disclosure statement in compliance with 37 CFR 1.98 as to content must be filed in accordance with the procedural requirements of 37 CFR 1.97. The

Rev. 3, July 1997

MANUAL OF PATENT EXAMINING PROCEDURE

**609**

requirements as to content are discussed in A below. The requirements based on the time of filing the statement are discussed in B below. Examiner handling of information disclosure statements is discussed in C below.

The Office has set forth the minimum requirements for information to be considered in 37 CFR 1.97 and 1.98. Once the minimum requirements are met, the examiner has an obligation to consider the information. These rules provide certainty for the public by defining the requirements for submitting information to the Office so that the Office will consider information before a patent is granted. Information submitted to the Office that does not comply with the requirements of 37 CFR 1.97 and 1.98 will not be considered by the Office but will be placed in the application file.

The filing of an information disclosure statement shall not be construed as a representation that a search has been made. 37 CFR 1.97(g). There is no requirement that an applicant for a patent make a patentability search. Further, the filing of an information disclosure statement shall not be construed to be an admission that the information cited in the statement is, or is considered to be, material to patentability as defined in 37 CFR 1.56(b). 37 CFR 1.97(h). See MPEP § 2129 regarding admissions by applicant.

Multiple information disclosure statements may be filed in a single application, and they will be considered, provided each is in compliance with the appropriate requirements. Use of form PTO−1449, "Information Disclosure Citation," is encouraged as a means to provide the required list of information. See C(2) below.

Information which **>has been considered by< the Office in the parent application of a file wrapper continuing application under 37 CFR 1.62 will be part of the file before the examiner and need not be resubmitted in the continuing application to have the information considered and listed on the patent. Likewise, the examiner will consider information **>which has been considered by< the Office in a parent application when examining a continuation or continuation−in−part application (See MPEP § *>201.06(b)< which is not a file wrapper continuing application, and a list of the information need not be submitted in the * >continuation or continuation−in−part< application unless applicant desires the information to be printed on the patent. >Information which is cited or submitted to the Office in the parent application of a divisional application which is not a file wrapper continuing application under 37 CFR

1.62 must be resubmitted in the divisional application to have the information considered and listed on the patent.<

The examiner will consider the documents cited in the international search report in a PCT national stage application, when the Form PCT/DO/EO/903 indicates that both the international search report and the copies of the documents are present in the national stage file. In such a case, the examiner should consider the documents from the international search report and indicate by a statement in the first Office action that the information has been considered. There is no requirement that the examiner list the documents on a PTO−892 form.

### A. CONTENT

An information disclosure statement must comply with the provisions of 37 CFR 1.98 as to content in order to be considered by the Office. Each information disclosure statement must comply with the applicable provisions of A(1), A(2), and A(3) below.

**A (1)** Each information disclosure statement must include a list of all patents, publications, or other information submitted for consideration by the Office.

37 CFR 1.98(b) requires that each U.S. patent listed in an information disclosure statement be identified by patentee, patent number, and issue date. Each foreign patent or published foreign patent application must be identified by the country or patent office which issued the patent or published the application, an appropriate document number, and the publication date indicated on the patent or published application. Each publication must be identified by author (if any), title, relevant pages of the publication, date and place of publication. The date of publication supplied must include at least the month and year of publication, except that the year of publication (without the month) will be accepted if the applicant points out in the information disclosure statement that the year of publication is sufficiently earlier than the effective U.S. filing date and any foreign priority date so that the particular month of publication is not in issue. The place of publication refers to the name of the journal, magazine, or other publication in which the information being submitted was published.

To comply with this requirement, the list may not be incorporated into the specification but must be submitted in a separate paper. A separate list is required so that it is easy to confirm that applicant intends to submit an

Rev. 3, July 1997

PARTS, FORM, AND CONTENT OF APPLICATION

information disclosure statement and because it provides a readily available checklist for the examiner to indicate which identified documents have been considered. A copy of a separate list will also provide a simple means of communication to applicant to indicate the listed documents that have been considered and those listed documents that have not been considered. Use of form PTO—1449, Information Disclosure Citation, is encouraged. See C(2) below.

**A (2)** In addition to the list, each information disclosure statement must also include a legible copy of:

(i) Each U.S. and foreign patent;

(ii) Each publication or that portion which caused it to be listed; and

(iii) All other information or that portion which caused it to be listed, except that no copy of a U.S. patent application need be included.

There are exceptions to this general rule that a copy must be provided. First, 37 CFR 1.98(d) states that a copy of any patent, publication, or other information listed in an information disclosure statement is not required to be provided if it was previously cited by or submitted to the Office in a prior application, provided that the prior application is properly identified in the statement and relied on for an earlier filing date under 35 U.S.C. 120. The examiner will consider information cited or submitted to the Office in a prior application relied on under 35 U.S.C. 120. This exception to the requirement for copies of information does not apply to information which was cited in an international application under the Patent Cooperation Treaty. If the information cited or submitted in the prior application was not in English, a concise explanation of the relevance of the information to the new application is not required unless the relevance of the information differs from its relevance as explained in the prior application. See A(3) below.

Second, 37 CFR 1.98(c) states that when the disclosures of two or more patents or publications listed in an information disclosure statement are substantively cumulative, a copy of one of the patents or publications may be submitted without copies of the other patents or publications provided that a statement is made that these other patents or publications are cumulative. The examiner will then consider only the patent or publication of which a copy is submitted and will so indicate on

the list or form PTO—1449 submitted; e.g., by crossing out the listing of the cumulative information.

37 CFR 1.98(c) further states that if a written English language translation of a non—English language document, or thereof, is within the possession, custody or control of, or is readily available to any individual designated in 37 CFR 1.56(c), a copy of the translation shall accompany the statement. Translations are not required to be filed unless they have been reduced to writing and are actually translations of what is contained in the non—English language information. If no translation is submitted, the examiner will consider the information in view of the concise explanation and insofar as it is understood on its face; e.g., drawings, chemical formulas, English language abstracts, in the same manner that non—English language information in Office search files is considered by examiners in conducting searches.

**A (3)** Each information disclosure statement must further include a concise explanation of the relevance, as it is presently understood by the individual designated in 37 CFR 1.56(c) most knowledgeable about the content of the information of each patent, publication, or other information listed that is <u>not in the English language</u>. The concise explanation may be either separate from the specification or incorporated therein.

The requirement for a concise explanation of relevance is limited to information that is not in the English language. The explanation required is limited to the relevance as understood by the individual designated in 37 CFR 1.56(c) most knowledgeable about the content of the information at the time the information is submitted to the Office. If a translation of the information into English is submitted with the foreign language information, no concise explanation is required. An English-language equivalent application may be submitted to fulfill this requirement if it is, in fact, a translation of a foreign language application being listed in an information disclosure statement. There is no requirement for a translation to be verified. Submission of an English language abstract of a reference which does not deal with its relevance to the invention will not fulfill the requirement for a concise explanation. Where the information listed is not in the English language, but was cited in a search report or other action by a foreign patent office in a counterpart foreign application, the requirement for a concise explanation of relevance can be satisfied by submitting an English—language version of the search

Rev. 3, July 1997

MANUAL OF PATENT EXAMINING PROCEDURE

report or action which indicates the degree of relevance found by the foreign office. This may be an explanation of which portion of the reference is particularly relevant, to which claims it applies, or merely an "X", "Y", or "A" indication on a search report. The requirement for a concise explanation of non–English language information would not be satisfied by a statement that a reference was cited in the prosecution of a United States application which is not relied on under 35 U.S.C.120.

If information cited or submitted in a prior application relied on under 35 U.S.C. 120 was not in English, a concise explanation of the relevance of the information to the new application is not required unless the relevance of the information differs from its relevance as explained in the prior application.

The concise explanation may indicate that a particular figure or paragraph of the patent or publication is relevant to the claimed invention. It might be a simple statement pointing to similarities between the item of information and the claimed invention. It is permissible but not necessary to discuss differences between the cited information and the claims.

Applicants may, if they wish, provide a concise explanation of why English–language information is being submitted and how it is understood to be relevant. Concise explanations are helpful to the Office, particularly where documents are lengthy and complex and applicant is aware of a section that is highly relevant to patentability or where a large number of documents are submitted and applicant is aware that one or more are highly relevant to patentability.

B. TIME FOR FILING

The procedure and requirements for submitting an information disclosure statement are linked to four stages in the processing of a patent application: (1) within 3 months of filing, or before first Office action, whichever is later; (2) after the period in (1), but before final Office action or a Notice of Allowance, whichever is earlier; (3) after the period in (2) but on or before the date the issue fee is paid; and (4) after the period in (3) and up to the time the patent application can be effectively withdrawn from issue. The procedures and requirements apply to applications filed under 35 U.S.C. 111 (utility), 161 (plants), 171 (designs), and 251 (reissue), as well as international applications entering the national stage under 35 U.S.C. 371.

The requirements based on the time when the information disclosure statement is filed are summarized as follows.

| Time when IDS is filed | 37 CFR 1.97 Requirements |
|---|---|
| (1) Within 3 months of filing or before first Office action on the merits, whichever is later. | None (always considered). |
| (2) After (1) but before final action or notice of allowance. | Certification or 1.17(p) fee. |
| (3) After final action or notice of allowance and before payment of issue fee | Certification, petition, and petition fee. |

**B (1)** Statement filed **BEFORE** first action on the merits or within three (3) months of actual filing date (37 CFR 1.97(b)).

An information disclosure statement will be considered by the examiner if filed:

(i) within 3 months of the filing date of a national application;

(ii) within 3 months of the date of entry of the national stage as set forth in 37 CFR 1.491 in an international application; or

(iii) before the mailing date of a first Office action on the merits,

whichever event occurs last. A statement filed within this period requires neither a fee nor a certification of prompt filing.

The term "national application" includes continuing applications (continuations, divisions, continuations–in–part) so 3 months will be measured from the actual filing date of an application as opposed to the effective filing date of a continuing application.

All information disclosure statements that comply with the content requirements of 37 CFR 1.98 and are filed within three months of the filing date will be considered by the examiner, regardless of whatever else has occurred in the examination process up to that point in time. Thus, in the rare instance that a final Office action or a notice of allowance is prepared and mailed prior to a date which is 3 months from the filing date, any information contained in a complete information disclosure statement filed within that 3–month window will be considered by the examiner.

Rev. 3, July 1997

Likewise, an information disclosure statement will be considered if it is filed later than 3 months after the filing date but before the mailing date of a first Office action on the merits. An action on the merits means an action which treats the patentability of the claims in an application, as opposed to only formal or procedural requirements. An action on the merits would, for example, contain a rejection or indication of allowability of a claim or claims rather than just a restriction requirement (37 CFR 1.142) or just a requirement for additional fees to have a claim considered (37 CFR 1.16(d)). Thus, if an application was filed on January 1 and the first Office action on the merits was not mailed until 6 months later on July 1, the examiner would be required to consider any proper information disclosure statement filed prior to July 1.

An information disclosure statement will be considered to have been filed on the day it was received in the Office, or on an earlier date of mailing if accompanied by a properly executed certificate of mailing or facsimile transmission under 37 CFR 1.8, or ** >if it is in proper compliance with the provisions for "Express Mail" delivery< under 37 CFR 1.10. An Office action is mailed on the date indicated in the Office action.

**B (2)** Statement filed after B(1), but **BEFORE** mailing of final action or notice of allowance (37 CFR 1.97(c)).

An information disclosure statement will be considered by the examiner if filed after the period specified in B(1) above, but before (not on the same day as) the mailing date of either

    a final action under 37 CFR 1.113; e.g., final rejection or notice of allowability, or
    a notice of allowance under 37 CFR 1.311,

whichever occurs first, provided: (1) the statement is accompanied by either a certification as specified in 37 CFR 1.97(e) or (2) the fee set forth in 37 CFR 1.17(p). If a final action or notice of allowance is mailed in an application and later withdrawn, the application will be considered as not having had a final action or notice of allowance mailed for purposes of considering an information disclosure statement.

An *Ex parte Quayle* action is not a final action under 37 CFR 1.113 as referred to in 37 CFR 1.97. Therefore, an information disclosure statement filed after an *Ex parte Quayle* action, but before mailing of a notice of allowance, must comply with the provisions of 37 CFR 1.97(c) rather than those of 37 CFR 1.97 (d). However, where an *Ex parte Quayle* action is issued after a final rejection which has not been withdrawn, any information disclosure statement filed after the *Ex parte Quayle* action must comply with the provisions of 37 CFR 1.97(d).

(i) If information submitted during the period set forth in 37 CFR 1.97(c) with a certification is used in a new ground of rejection on unamended claims, the next Office action will not be made final since in this situation it is clear that applicant has submitted the information to the Office promptly after it has become known and the information is being submitted prior to a final determination on patentability by the Office. The information submitted with a certification can be used in a new ground of rejection and the next Office action made final, however, if the new ground of rejection was necessitated by amendment of the application by applicant. Where the information is submitted during this period with a fee, the examiner may use the information submitted; e.g., printed publication or evidence of public use, and make the next Office action final whether or not the claims have been amended, provided that no other new ground of rejection which was not necessitated by amendment to the claims is introduced by the examiner. See MPEP § 706.07(a). If a new ground of rejection is introduced that is neither necessitated by an amendment to the claims nor based on the information submitted with the fee set forth in 37 CFR 1.17(p), the Office action shall not be made final.

(ii) A certification under 37 CFR 1.97(e) must state either

    (a) that each item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the statement, or

    (b) that no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application or, to the knowledge of the person signing the certification after making reasonable inquiry, was known to any individual designated in 37 CFR 1.56(c), more than three months prior to the filing of the statement.

A certification can contain either of two statements. One statement is that each item of information in an

Rev. 3, July 1997

MANUAL OF PATENT EXAMINING PROCEDURE

**609**

information disclosure statement was cited in a communication, such as a search report, from a patent office outside the U.S. in a counterpart foreign application not more than 3 months prior to the filing date of the statement. Under this certification, it does not matter whether any individual with a duty of disclosure actually knew about any of the information cited before receiving the search report. The date on the communication by the foreign patent office begins the 3−month period in the same manner as the mailing of an Office action starts a 3−month shortened statutory period for response. If the communication contains two dates, the mailing date of the communication is the one which begins the 3−month period. The date which begins the 3−month period is not the date the communication was received by a foreign associate or the date it was received by a U.S. registered practitioner. Likewise, the statement will be considered to have been filed on the date the statement was received in the Office, or on an earlier date of mailing or transmission if accompanied by a properly executed certificate of mailing or facsimile transmission under 37 CFR 1.8, or ** >if it is in compliance with the provisions for "Express Mail" delivery< under 37 CFR 1.10.

The term counterpart foreign patent application means that a claim for priority has been made in either the U.S. application or a foreign application based on the other, or that the disclosures of the U.S. and foreign patent applications are substantively identical (e.g., an application filed in the European Patent Office claiming the same U.K. priority as claimed in the U.S. application).

Communications from foreign patent offices in foreign applications sometimes include a list of the family of patents corresponding to a particular patent being cited in the communication. The family of patents may include a United States patent or other patent in the English language. Some applicants submit information disclosure statements to the PTO which list and include copies of both the particular patent cited in the foreign patent office communication and the related United States or other English language patent from the family list. Since this is to be encouraged, the United States or other English language patent will be construed as being cited by the foreign patent office for purposes of a certification under 37 CFR 1.97(e)(1). The examiner should consider the United States or other English language patent if 37 CFR 1.97 and 1.98 are complied with.

If an information disclosure statement includes a copy of a dated communication from a foreign patent office which clearly shows that the statement is being submitted within 3 months of the date on the communication, the copy will be accepted as the required communication. It will be assumed, in the absence of evidence to the contrary, that the communication was for a counterpart foreign application.

In the alternative, a certification can be made if no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application and, to the knowledge of the person signing the certification after making reasonable inquiry, neither was it known to any individual having a duty to disclose more than 3−months prior to the filing of the statement.

The phrase "after making reasonable inquiry" makes it clear that the individual making the certification has a duty to make reasonable inquiry regarding the facts that are being certified. The certification can be made by a registered practitioner who represents a foreign client and who relies on statements made by the foreign client as to the date the information first became known. A registered practitioner who receives information from a client without being informed whether the information was known for more than 3 months, however, cannot make the certification without making reasonable inquiry. For example, if an inventor gave a publication to the attorney prosecuting an application with the intent that it be cited to the Office, the attorney should inquire as to when that inventor became aware of the publication and should not submit a certification under 37 CFR 1.97(e)(2) to the Office until a satisfactory response is received. The certification can be based on present, good faith knowledge about when information became known without a search of files being made.

Certification need not be in the form of an oath or a declaration under 37 CFR 1.68. Certification by a registered practitioner or any other individual that the statement was filed within the 3−month period of either first citation by a foreign patent office or first discovery of the information will be accepted as dispositive of compliance with this provision in the absence of evidence to the contrary. For example, a certification could read as follows:

"I hereby certify that each item of information contained in this Information Disclosure Statement was cited in a communication from a foreign patent office in a counterpart foreign application not more than 3 months prior to the filing of this statement.", or

"I hereby certify that no item of information in the Information Disclosure Statement filed herewith was cited in a communication from a foreign patent office in a counterpart foreign application or, to my knowledge after making reasonable inquiry, was known to any individual designated in 37 CFR 1.56(c) more than 3 months prior to the filing of this Information Disclosure Statement."

An information disclosure statement may include two lists and two certifications, similar to the above examples, in situations where some of the information listed was cited in a communication from a foreign patent office not more than 3 months prior to filing the statement and some was not, but was not known more than 3 months prior to filing the statement.

A copy of the foreign search report need not be submitted with the certification, but an individual may wish to submit an English−language version of the search report to satisfy the requirement for a concise explanation where non−English language information is cited. The time at which information was known to any individual designated in 37 CFR 1.56(c) is the time when the information was discovered in association with the application even if awareness of the materiality came later. The Office wishes to encourage prompt evaluation of the relevance of information and to have a date certain for determining if a certification can properly be made. A statement on information and belief would not be sufficient. Examiners should not remind or otherwise make any comment about an individual's duty of candor and good faith, but questions about the adequacy of any certification received in writing by the Office should be directed to the Office of the Assistant Commissioner for Patents.

**B(3)** Statement Filed After B(2), but Prior to Payment of Issue Fee (37 CFR 1.97(d)).

An information disclosure statement will be considered by the examiner if filed on or after the mailing date of either a final action under 37 CFR 1.113 or a notice of allowance under 37 CFR 1.311, whichever occurs first, but before or simultaneous with payment of the issue fee, provided the statement is accompanied by:

(i) a certification as specified in 37 CFR 1.97(e) (see the discussion in B(2)(ii) above),

(ii) a petition requesting consideration of the information disclosure statement, and

(iii) the petition fee set forth in 37 CFR 1.17(i)*.

These requirements are appropriate in view of the late stage of prosecution when the information is being submitted; i.e., after the examiner has reached a final determination on the patentability of the claims presented for examination. The petition should be directed to the Group Director of the examining group handling the application. The petition need do nothing more than request consideration of the information being submitted. Payment of the petition fee (37 CFR 1.17(i)*) **and** submission of the appropriate certification 37 CFR 1.97(e)) are the essential elements for having information considered at this advanced stage of prosecution, assuming the content requirements of 37 CFR 1.98 are satisfied.

>Form Paragraph 6.52 may be used to inform the applicant that the information disclosure statement is being considered.

¶ 6.52    *Information Disclosure Statement, Petition Granted*
The information disclosure statement (IDS) submitted on [1] was filed after the mailing date of the [2] on [3]. The submission is in compliance with the provisions of 37 CFR 1.97. Accordingly, the petition is granted and the information disclosure statement is being considered by the examiner.

**Examiner Note:**
1. This form paragraph may be used in an Office action only when signed by a Supervisory Patent Examiner.
2. In bracket 2, insert either − −final Office action− − or − −Notice of Allowance− −, as appropriate.<

The requirements of 37 CFR 1.97 provide for consideration by the Office of information which is submitted within a reasonable time; i.e., within 3 months after an individual designated in 37 CFR 1.56(c) becomes aware of the information or within 3 months of the information being cited in a communication from a foreign patent office in a counterpart foreign application. This undertaking by the Office to consider information would be available throughout the pendency of the application until the point where the patent issue fee was paid. If an applicant chose not to comply, or could not comply, with the requirements of 37 CFR 1.97(d), a continuing application could be filed to have the information considered by

Rev. 3, July 1997

MANUAL OF PATENT EXAMINING PROCEDURE

**609**

the examiner. The parent application could be permitted to become abandoned by not paying the issue fee required in the Notice of Allowance, for example, or by the filing of a file wrapper continuing application under 37 CFR 1.62. >In order to ensure consideration of information in a continuing application which has not been considered in a parent application, applicant must either resubmit the information in compliance with the requirements of 37 CFR 1.97 and 1.98 or request that a previously submitted information be considered in a continuing application filed under 37 CFR 1.62.< It would not be proper to make final a first Office action in the continuing application if the information submitted is used in a new ground of rejection.

**B(4)**    Statement Filed After Payment of Issue Fee.

After the issue fee has been paid on an application, it is impractical for the Office to attempt to consider newly submitted information. Information disclosure statements filed after payment of the issue fee in an application will not be considered but will merely be placed in the application file. See C below. The application may be withdrawn from issue at this point, however, pursuant to 37 CFR 1.313(b)(5) so that the information can be considered in a continuing application. In this situation, a file wrapper continuing application under 37 CFR 1.62 could be filed even though the issue fee had already been paid. The Office will consider the filing of a petition under 37 CFR 1.313(b)(5) as sufficient grounds to waive the requirement that an application under 37 CFR 1.62 be filed before payment of the issue fee. >In order to ensure consideration of information in a continuing application which has not been considered in a parent application, applicant must either resubmit the information in compliance with the requirements of 37 CFR 1.97 and 1.98 or request that the previously submitted information be considered in a continuing application filed under 37 CFR 1.62.< Alternatively, for example, a petition pursuant to 37 CFR 1.313(b)(3) could be filed if applicant states that one or more claims are unpatentable. This statement that one or more claims are unpatentable over the information must be unequivocal. A statement that a serious question as to patentability of a claim has been raised, for example, would not be acceptable to withdraw an application from issue under 37 CFR 1.313(b)(3). Form Paragraph 13.09 may be used.

¶ 13.09   *Information Disclosure Statement, Issue Fee Paid*
Applicant's Information Disclosure Statement of [1] was filed after the issue fee was paid. Information Disclosure Statements filed after payment of the issue fee will not be considered, but will be placed in the file. However, the application may be withdrawn from issue in order to file a File Wrapper Continuing application upon the grant of a petition filed under the provisions of 37 CFR 1.313(b)(5). Alternatively, the other provisions of 37 CFR 1.313 may apply, e.g., a petition to withdraw the application from issue under the provisions of 37 CFR 1.313(b)(3) may be filed together with an unequivocal statement by the applicant that one or more claims are unpatentable over the information contained in the Statement. The Information Disclosure Statement would then be considered upon withdrawal of the application from issue under 37 CFR 1.313(b)(3).

**Examiner Note:**
1.   For Information Disclosure (Prior Art) Statements submitted after the issue fee has been paid, use this paragraph on form PTOL-90.
2.   In bracket 1, insert the filing date of the IDS.

If an application has been withdrawn from issue under one of the provisions of 37 CFR 1.313(b)(1)-(4), it will be treated as though no notice of allowance had been mailed and the issue fee had not yet been paid with regard to the time for filing information disclosure statements. Petitions under 37 CFR 1.313(b) should be directed to the Office of Petitions in the Office of the Assistant Commissioner for Patents.

**B(5)**   Extensions of Time (37 CFR 1.97(f))

No extensions of time for filing an information disclosure statement are permitted under 37 CFR 1.136(a) or (b). If a bona fide attempt is made to comply with the content requirements of 37 CFR 1.98, but part of the required content is inadvertently omitted, additional time may be given to enable full compliance.

C.   EXAMINER HANDLING OF INFORMATION DISCLOSURE STATEMENTS

Information disclosure statements will be reviewed for compliance with the requirements of 37 CFR 1.97 and 1.98 as discussed in A and B above. Applicant will be notified of compliance and noncompliance with the rules as discussed below.

**C(1)**   Noncomplying Statements

Pursuant to 37 CFR 1.97(i), submitted information, filed before the grant of a patent, which does not comply with 37 CFR 1.97 and 1.98 will be placed in the file, but will not be considered by the Office. Information submitted after the grant of a patent must comply with 37 CFR 1.501.

600 − 100

Rev. 3, July 1997

PARTS, FORM, AND CONTENT OF APPLICATION

(i)If an information disclosure statement does not comply with the requirements based on the time of filing the statement as discussed in B above, including the requirements for fees and/or certification, the statement will be placed in the application file, but none of the information will be considered by the examiner. The examiner may use Form Paragraph 6.49 which is reproduced below to inform applicant that the information has not been considered. Applicant may then file a new information disclosure statement or correct the deficiency in the previously filed statement, but the date that the new statement or correction is filed will be the date of the statement for purposes of determining compliance with the requirements based on the time of filing the statement (37 CFR 1.97).

The examiner should write "not considered" on an information disclosure statement where none of the information listed complies with the requirements; e.g., no copies of listed items submitted. If none of the information listed on a PTO–1449 form is considered, a diagonal line should be drawn in pencil across the form and the form placed on the right side of the application file to instruct the printer not to list the information on the face of the patent if the application goes to issue. The paper containing the disclosure statement or list will be placed in the record in the application file. The examiner will inform applicant that the information has not been considered and the reasons why by using form *>paragraphs< 6.49 >through 6.49.09<. If the improper citation appears as part of another paper; e.g., an amendment, which may be properly entered and considered, the portion of the paper which is proper for consideration will be considered.

¶ 6.49    Information Disclosure Statement Not Considered
The information disclosure statement filed [1] fails to comply with the provisions of MPEP § 609 because [2]. It has been placed in the application file, but the information referred to therein has not been considered as to the merits. Applicant is advised that the date of any re–submission of any item of information contained in this information disclosure statement or the submission of any missing element(s) will be the date of submission for purposes of determining compliance with the requirements based on the time of filing the statement, including all certification requirements. See MPEP § 609 ¶C(1).

**Examiner Note:**
See MPEP § 609 for situations where the use of this form paragraph would be appropriate.

>¶ 6.49.01    Information Disclosure Statement Not Considered, After First Action, Before Final or Allowance, No Certification
The information disclosure statement filed [1] fails to comply with 37 CFR 1.97(c) because it lacks a certification as specified in 37 CFR 1.97(e). It has been placed in the application file, but the information referred to therein has not been considered.

¶ 6.49.02    Information Disclosure Statement Not Considered, After First Action, Before Final or Allowance, No Fee
The information disclosure statement filed [1] fails to comply with 37 CFR 1.97(c) because it lacks the fee set forth in 37 CFR 1.17(p). It has been placed in the application file, but the information referred to therein has not been considered.

¶ 6.49.03    Information Disclosure Statement Not Considered, After Final or Allowance, Issue Fee Not Paid, No Certification
The information disclosure statement filed [1] fails to comply with 37 CFR 1.97(d) because it lacks a certification as specified in 37 CFR 1.97(e). It has been placed in the application file, but the information referred to therein has not been considered.

¶ 6.49.04    Information Disclosure Statement Not Considered, After Final Or Allowance, Issue Fee Not Paid No Petition Requesting Consideration
The information disclosure statement filed [1] fails to comply with 37 CFR 1.97(d) because it lacks a petition requesting consideration of the information disclosure statement. It has been placed in the information disclosure file, but the information referred to therein has not been considered.

¶ 6.49.05    Information Disclosure Statement Not Considered, After Final or Allowance, Issue Fee Not Paid No Petition Fee
The information disclosure statement filed [1] fails to comply with 37 CFR 1.97(d) because it lacks the petition fee set forth in 37 CFR 1.17(i)(1). It has been placed in the application file, but the information referred to therein has not been considered.

¶ 6.49.06    Information Disclosure Statement Not Considered, References Listed in Specification
The listing of references in the specification is not a proper information disclosure statement. 37 CFR 1.98(b) requires a list of all patents, publications, or other information submitted for consideration by the Office, and MPEP § 609 A(1) states, "the list may not be incorporated into the specification but must be submitted in a separate paper." Therefore, unless the references have been cited by the examiner on form PTO–892, they have not been considered.

¶ 6.49.07    Information Disclosure Statement Not Considered, No Copy of References
The information disclosure statement filed [1] fails to comply with 37 CFR 1.98(a)(2), which requires a list of each U.S. and foreign patent; each publication or that portion which caused it to be listed; and all other information or that portion which caused it to be listed. It has been placed in the application file, but the information referred to therein has not been considered.

¶ 6.49.08    Information Disclosure Statement Not Considered, No List of References
The information disclosure statement filed [1] fails to comply with 37 CFR 1.98(a)(1), which requires a list of all patents, publications, or other information submitted for consideration by the Office. It has been placed in the application file, but the information referred to therein has not been considered.

Rev. 3, July 1997

MANUAL OF PATENT EXAMINING PROCEDURE

**609**

¶ 6.49.09  *Information Disclosure Statement Not Considered, No Explanation of Relevance*

The information disclosure statement filed [1] fails to comply with 37 CFR 1.98(a)(3) because it does not include a concise explanation of the relevance, as it is presently understood by the individual designated in 37 CFR 1.56(c) most knowledgeable about the content of the information, of each patent listed that is not in the English language. It has been placed in the application file, but the information referred to therein has not been considered.<

(ii) If an information disclosure statement complies with the requirements based on the time of filing the statement as discussed in B above, including the requirements for fees/or certification, but part of the content requirements as discussed in A above has been inadvertently omitted, the examiner may set a one-month time period to correct the omission. Form paragraph 6.51 may be used for this purpose.

¶ 6.51  *Time Limit for Completing Information Disclosure Statement*

The information disclosure statement filed on [1] does not comply with the requirements of 37 CFR 1.98 because [2]. Since the submission appears to be *bona fide*, but through an apparent oversight or inadvertence failed to comply with the necessary requirements, applicant is required to complete the statement within a TIME LIMIT of ONE MONTH from the date of this letter. NO EXTENSION OF THIS TIME LIMIT MAY BE GRANTED UNDER EITHER 37 CFR 1.136(a) OR (b). Failure to comply with this notice will result in the information disclosure statement being placed in the application file with the non-complying information not being considered.

**Examiner Note:**

This practice does not apply where there has been a deliberate omission of some necessary part of an information disclosure statement or where the requirements based on the time of filing the statement as set forth in 37 CFR 1.97 have not been complied with.

If a statement fails to comply with requirements as discussed in this section for an item of information, that item of information in the statement will not be considered and a line should be drawn through the citation to show that it has not been considered. However, other items of information that do comply with all the requirements will be considered by the examiner.

If information is listed in the specification rather than in a separate paper, or if the other content requirements as discussed in A above are not complied with, the examiner will notify applicant in the next Office action that the information has not been considered. It should be noted, however, that no copy of a U.S. patent application is required to be submitted. See A(2)(iii) above. Where a U.S. patent application is properly cited on a

separate list, the examiner should obtain access to that file within the Office.

**C (2)**  Complying Statements

The information contained in information disclosure statements which comply with both the content requirements as discussed in A above and the requirements based on the time of filing the statement as discussed in B above will be considered by the examiner.

Applicants, patent owners, reexamination requesters, protestors, and others are encouraged to use form PTO−1449), "Information Disclosure Citation," when preparing an information disclosure statement. A copy of this form is reproduced in this section to indicate how the form should be completed. This form will enable persons to comply with the requirement to list each item of information being submitted and to provide the Office with a uniform listing of citations and with a ready way to indicate that information has been considered. Examiners must consider all citations submitted in conformance with the rules and this section and their initials when placed adjacent to the considered citations on the list or in the boxes provided on a form PTO−1449 provides a clear record of which citations have been considered by the Office. The examiner must also fill in his or her name and the date the information was considered in blocks at the bottom of the PTO−1449 form. If the citations are submitted on a list other than on a form PTO−1449, the examiner may write "all considered" and his or her initials to indicate that all citations have been considered. If any of the citations are considered, a copy of the submitted list or form PTO−1449, as reviewed by the examiner, will be returned to the applicant with the next communication. Those citations not considered by the examiner will have a line drawn through the citation and any citations considered will have the examiner's initials adjacent thereto. The original copy of the list or form PTO−1449 will be entered into the application file. The copy returned to applicant will serve both as acknowledgement of receipt of the information disclosure statement and as an indication as to which references were considered by the examiner. Forms PTO−326 and PTOL−37 include a box to indicate the attachment of form PTO−1449.

Information which complies with requirements as discussed in this section but which is in a non−English language will be considered in view of the concise explanation submitted (A(3) above) and insofar as it is

Rev. 3, July 1997

understood on its face; e.g., drawings, chemical formulas, in the same manner that non—English language information in Office search files is considered by examiners in conducting searches. The examiner need not have the information translated unless it appears to be necessary to do so. The examiner will indicate that the non—English language information has been considered in the same manner as consideration is indicated for information submitted in English. The examiner should not require that a translation be filed by applicant. The examiner should not make any comment such as that the non—English language information has only been considered to the extent understood, since this fact is inherent.

Since information is required to be submitted in a separate paper listing the citations rather than in the specification, there is no need to mark "All checked" or "Checked" in the margin of a specification containing citations.

If a statement fails to comply with requirements as discussed in this section for an item of information, a line should be drawn through the citation to show that it has not been considered. The other items of information listed that do comply with the rules and this section will be considered by the examiner and will be appropriately initialed.

**C (3)** Documents Submitted As Part of Applicant's Response to Office Action

Occasionally, documents are submitted and relied on by an applicant when responding to an Office action. These documents may be relied on by an applicant, for example, to show that an element recited in the claim is operative or that a term used in the claim has a recognized meaning in the art. Documents may be in any form but are typically in the form of an affidavit, declaration, patent, or printed publication.

To the extent that a document is submitted as evidence directed to an issue of patentability raised in an Office action, and the evidence is timely presented, applicant need not satisfy the requirements of 37 CFR 1.97 and 1.98 in order to have the examiner consider the information contained in the document relied on by applicant. In other words, compliance with the information disclosure rules is not a threshold requirement to have information considered when submitted by applicant to

support an argument being made in a response to an Office action.

At the same time, the document supplied and relied on by applicant as evidence need not be processed as an item of information that was cited in an information disclosure statement. The record should reflect whether the evidence was considered, but listing on a form (e.g., PTO—892 or PTO—1449) and appropriate marking of the form by the examiner is not required.

For example, if applicant submits and relies on three patents as evidence in response to the first Office action and also lists those patents on a PTO—1449 along with two journal articles, but does not file a certification or $200 fee, it would be appropriate for the examiner to indicate that the teachings relied on by applicant in the three patents have been considered, but to line through the citation of all five documents on the PTO—1449 and to inform applicant that the information disclosure statement did not comply with 37 CFR 1.97(c).

## D. INFORMATION PRINTED ON PATENT

A citation listed on form PTO—1449 and considered by the examiner in accordance with this section will be printed on the patent. A citation listed in a separate paper, equivalent to but not on form PTO—1449, and considered by the examiner in accordance with this section will be printed on the patent if the list is on a separate sheet which is clearly identified as an information disclosure statement and the list lends itself to easy capture of the necessary information by the Office printing contractor; i.e., each item of information is listed on a single line, the lines are at least double—spaced from each other, the information is uniform in format for each listed item, and the list includes a column for the examiner's initials to indicate that the information was considered. If a U.S. patent application serial number is listed on a PTO—1449 form or its equivalent and the examiner considers the information and initials the form, the serial number will be printed on the patent.

Applicants may wish to list U.S. patent application serial numbers on other than a form PTO—1449 format to avoid the serial numbers of pending applications being published on the patent. If a citation is not printed on the patent but has been considered by the examiner in accordance with this section, the patented file will reflect that fact as noted in C(2) above.

Rev. 3, July 1997

MANUAL OF PATENT EXAMINING PROCEDURE

609

PTO/SB/08 (2–92)

Sheet 1 of 4

| | | | | | Docket Number (Optional) 32210 | Application Number 07/123,456 | | |
|---|---|---|---|---|---|---|---|---|

**Form PTO–1449**

**INFORMATION DISCLOSURE CITATION IN AN APPLICATION**

*(Use several sheets if necessary)*

Applicant: C. Benson, et al
Filing Date: 1–2–91
Group Art Unit: 3401

### U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| J.D. | 3 7 0 3 4 4 5 | 11-72 | Tew | 418 | 61 | |
| J.D. | 3 9 9 4 0 0 0 | 6-75 | Reitter | 418 | 61 | |
| J.D. | 3 6 9 4 5 0 9 | 1-71 | Sarich | 418 | 61 | |
| J.D. | 4 3 2 5 7 7 7 | 5-90 | Wolfe | 418 | 63 | |

### FOREIGN PATENT DOCUMENTS

| EXAMINER INITIAL | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | Translation YES | NO |
|---|---|---|---|---|---|---|---|
| | 2 3 8 5 4 0 | 06-75 | ~~France~~ | 418 | 63 | X | |
| J.D. | 1 1 3 7 7 2 9 | 06-65 | Federal Republic of Germany | | | | |
| J.D. | 9 1 4 1 | 08-79 | European Patent Office | | | | |
| J.D. | WO86/0 1 8 7 1 | 09-80 | PCT International | 260 | 424 | | X |
| J.D. | 5 0 3 1 0 6 | 11-79 | Japan | | | | |

### OTHER DOCUMENTS *(Including Author, Title, Date, Pertinent Pages, Etc.)*

| | |
|---|---|
| J.D. | Kovach, et al "Simple Precision RC Oscillator," IBM Tech. Disclosure Bulletin Vol. 16, No. 10. 3/74, p.p. 3174–3175 ~~Tiers, J. Am. Chem. Soc. 025513 (1960)~~ |

EXAMINER: J. Doe

DATE CONSIDERED: Sept. 30, 1991

EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP § 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to the applicant.

Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

PTO/SB/ 08 (2–92)

Rev. 3, July 1997