UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SMITH & NEPHEW, INC., <br><br> Plaintiff, <br><br> v. <br><br> SURGICAL SOLUTIONS, LLC, <br><br> Defendant. | Civ. Act. No. 03 CV 12310 NMG |

**PLAINTIFF SMITH & NEPHEW, INC.'S COMBINED SURREPLY BRIEF IN OPPOSITION TO DEFENDANT SURGICAL SOLUTIONS, LLC'S MOTION FOR SUMMARY JUDGMENT OF PATENT INVALIDITY AND REPLY BRIEF IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT OF VALIDITY**

Mark J. Hebert (BBO No. 546,712)
Thomas M. Johnston (BBO No. 644,689)
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Ruffin B. Cordell
Ahmed J. Davis
FISH & RICHARDSON P.C.
1425 K Street N.W.
Washington, DC 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Attorneys for Plaintiff SMITH & NEPHEW, INC.

## TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................... 1

II. EACH OF THE PRIOR ART REFERENCES FAILS TO DISCLOSE
    EVERY LIMITATION OF THE ASSERTED CLAIMS ....................................... 1

    A.  The Acufex Suture Punch ............................................................................ 1

        1.  The '747 Patent is Identical In All Material Respects
            to the Commercial Acufex Suture Punch........................................... 1

        2.  The Acufex Suture Passer Does Not Anticipate the
            Asserted Claims ................................................................................. 5

    B.  The U.S. Fukuda Patent ............................................................................... 5

        1.  Fukuda Was Considered By the PTO ................................................ 5

        2.  Fukuda Does Not Anticipate the Asserted Claims ............................ 7

    C.  The Sevinc Reference .................................................................................. 8

III. CONCLUSION......................................................................................................... 8

<s>
</s>

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page**

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.,*
725 F.2d 1350 (Fed. Cir. 1984)..................................................................................5

*Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.,*
45 F.3d 1550 (Fed. Cir. 1995).....................................................................................7

*Hayes v. Douglas Dynamics, Inc.,*
8 F.3d 88 (1st Cir. 1993)..............................................................................................6

*Helifix Ltd. v. Blok-Lok, Ltd.,*
208 F.3d 1339 (Fed. Cir. 2000)...................................................................................7

*Hughes Aircraft Co. v. United States,*
717 F.2d 1351 (Fed. Cir. 1983)...................................................................................5

*Molins PLC v. Textron, Inc.,*
48 F.3d 1172 (Fed. Cir. 1995).....................................................................................6

*Polaroid Corp v. Eastman Kodak Co.,*
789 F.2d 1556 (Fed. Cir. 1986)...................................................................................5

*In re Portola Packing, Inc.,* ........................................................................................5
110 F.3d 786 (Fed. Cir. 1997)

*Prima Tek II, LLC v. Polypap Sarl,*
316 F. Supp. 2d. 693 (S.D. Ill. 2004)..........................................................................6

*United States Filter Corp. v. Ionics, Inc.,*
68 F. Supp. 2d 48 (D. Mass. 1999) (citing *Molins* PLC, 48 F.3d 1172)....................6


**Other Authorities**

M.P.E.P. § 609............................................................................................................6

## I. INTRODUCTION

Plaintiff Smith & Nephew, Inc. ("Smith & Nephew" or "S&N") hereby files this combined surreply/reply brief, in response to Defendant Surgical Solutions, LLC's ("Surgical Solutions") Combined Memorandum in Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment of Patent Invalidity and in Opposition to Plaintiff's Cross-Motion for Summary Judgment of Validity ("Surgical Solutions' Validity Reply").

As explained below, Surgical Solutions' invalidity arguments are all based on improper claim constructions as well as misrepresentations of the prior art, and should be rejected. Further, Surgical Solutions has failed to raise a genuine issue of material fact in opposition to Smith & Nephew's Cross-Motion for Summary Judgment of Validity.

Accordingly, this Court should find that the asserted claims of Smith & Nephew's U.S. Patent No. 5,947,982 ("the '982 patent") are not anticipated by the asserted Acufex Suture Punch, the U.S. Fukuda patent or the German Sevinc patent application.

## II. EACH OF THE PRIOR ART REFERENCES FAILS TO DISCLOSE EVERY LIMITATION OF THE ASSERTED CLAIMS

In its opening Validity Brief,[1] Smith & Nephew explained how the prior art references relied upon by Surgical Solutions fail to disclose each and every limitation of the asserted claims as required to show anticipation. Surgical Solutions continues to mischaracterize the references, but fails to present any clear and convincing evidence that would overcome the presumption of validity of the '982 patent.

### A. The Acufex Suture Punch

#### 1. The '747 Patent is Identical In All Material Respects to the Commercial Acufex Suture Punch

The Acufex Suture Punch is covered by United States Patent No. 5,730,747 ("the '747 patent"), which is incorporated by reference into the '982 patent and was cited as prior art

---

[1] Smith & Nephew's Combined Memorandum in Opposition to Surgical Solutions' Motion for Summary Judgment of Invalidity and In Support of Smith & Nephew's Cross-Motion for Summary Judgment of Validity.

against the '982 patent. Surgical Solutions does not dispute this. Instead, Surgical Solutions argues that the commercial Acufex Suture Punch is different than the preferred embodiment disclosed in the '747 patent because of a tiny bevel at the top of the transverse passage in the commercial embodiment. This argument must fail since the tiny bevel does not support the needle in a stowed position as required by the claims of the '982 patent.

The tiny bevel that Surgical Solutions rests its argument upon is only one one-hundredth (0.01) of an inch wide and cannot be clearly seen without significant magnification. The pictures that Surgical Solutions includes in its Validity Reply (at 5 and 6) magnify the jaw of the Acufex Suture Punch by about 600% (the actual jaw is less than 1/8 in. high). To put this tiny bevel into perspective, here is a magnified picture of the needle mounted in the jaw – the needle itself is very small and has a diameter of only about three one-hundredths (0.03) of an inch.



The tiny bevel is included at the top of the jaw simply to make it easier for the surgeon to insert the needle into the hole in the jaw. It is the hole in the jaw that "supports" the needle, not

2

the tiny bevel, as can be seen from the foregoing picture. In fact, as he explained at his deposition, what Mr. Duran was trying to overcome with the invention of the '982 patent was the shortcomings in the Acufex Suture Punch, *i.e.*, its large profile. (S&N Ex. D at 84-85).[2]

Mr. Duran overcame this problem with the Acufex Suture Punch by stowing the needle at a lower profile. *Id.* at 93. The Acufex Suture Punch could not do this because it did not have the proper structure to support the needle in the stowed position (*i.e.*, even with the tiny bevel), so Mr. Duran had a prototype made to show the necessary structure to support the needle in the stowed position. *Id.* at 133-34. That structure, as disclosed in the preferred embodiment of the '982 patent, is the inclined wall 52 (shown below in red):



**FIG. 3**

Note that in the above figure, it is the needle itself that is supported by the inclined wall 52, not the suture.

The Acufex Suture Punch (including its tiny bevel) represented the *problem* that Mr. Duran sought to solve. The tiny bevel in the Acufex Suture Punch clearly will not support the needle as proved by Mr. Duran's demonstration during his deposition, on which Surgical Solutions relies. As can clearly be seen in the picture included in Surgical Solutions' Memorandum in Support of its Motion for Summary Judgment of Patent Invalidity ("Surgical

---

[2] S&N Exhibits A-R were submitted in an Omnibus Appendix filed on October 15, 2004. S&N Exhibits S-W are being submitted in the accompanying Supplemental Omnibus Appendix.

Solutions' Validity Brief") at page 10, the needle is entirely outside the jaw, and is not supported by the tiny bevel. Here is an enlargement of the picture submitted by Surgical Solutions:



Since the reproduction quality is only fair, we have also taken our own pictures with the needle in the exact same position as demonstrated by Mr. Duran:



As can be seen from each of these pictures, the tiny bevel does not support the needle in a stowed position. In fact, it is the suture that is resting on the bevel.

4

### 2. The Acufex Suture Passer Does Not Anticipate the Asserted Claims

As Smith & Nephew showed in its Validity brief (at 13-14), the asserted claims all require a structure (*i.e.*, member or jaw) "for supporting the suture needle at a stowed position." Since the Acufex Suture Punch does not have such a structure, it does not anticipate any of the claims of the '982 patent.

### B. The U.S. Fukuda Patent

#### 1. Fukuda Was Considered By the PTO

In its Validity Brief (at 7), Smith & Nephew discussed the legal effect of Surgical Solutions' relying on prior art that was already considered by the Patent Office:

> When a Patent Examiner has already considered the reference offered to invalidate a patent during prosecution of the patent, the challenger "has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job . . . and whose duty it is to issue only valid patents." *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984); *see also Polaroid Corp v. Eastman Kodak Co.*, 789 F.2d 1556 (Fed. Cir. 1986); *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1359 (Fed. Cir. 1983). Furthermore, an examiner is assumed to have "evaluate[d] each cited reference and then determine[d] which of those references, alone or in combination, provide[d] the most appropriate statutory ground for rejecting the claims." *In re Portola Packing, Inc.*, 110 F.3d 786, 790 (Fed. Cir. 1997).

Since this law presents a problem for Surgical Solutions, it tries to argue that the Fukuda device was not considered by the Examiner, despite the Examiner's initials to the contrary on the IDS. In support of this argument, Surgical Solutions relies on an incompetent declaration from a former examiner, Ms. Debra Chun. However, all this declaration establishes is that Ms. Chun failed to follow the rules of the Patent Office during her tenure there.

Ms. Chun is not competent to submit a declaration regarding the procedures that were followed during prosecution of the '982 patent. First of all, Ms. Chun left the patent office in 1994 (Chun Decl., ¶ 2), three years before the '982 application was even filed. Moreover, Ms. Chun's technical background was in computers and electrical engineering (*id.*), so she would not even have been in the same art unit (*i.e.*, area of the Patent Office) that handled the '982 patent application. Thus, her statements about her own practices and what she observed "many

examiners" doing (*id.*, ¶ 13),[3] are not competent, and should be disregarded. *See, e.g., Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92-93 (1st Cir. 1993)(the declaration was "not evidence of what actually happened in the [incident] with which we are concerned").[4]

Surgical Solutions' attempt to use the Chun Declaration to undercut well-established caselaw must fail. As a matter of law, it is presumed that examiners consider all references in an IDS. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1184 (Fed. Cir. 1995) ("The examiner initialed each reference, indicating his consideration of the same, and stated that he had considered all of the cited prior art. Absent proof to the contrary, we assume that the examiner did consider the references."). "[D]eference is owed to the patent examiner's finding of validity (*i.e.*, the prior art did not anticipate the patent in suit)" when the examiner has the prior art before it and places initials next to the prior art citations. *See United States Filter Corp. v. Ionics, Inc.*, 68 F. Supp. 2d 48, 60–61 (D. Mass. 1999) (citing *Molins PLC*, 48 F.3d 1172). The courts have been clear that when an examiner initials the IDS form, and that reference appears on the face of the patent, it is assumed that the examiner did his or her job and considered the prior art against the claims' patentability. *Prima Tek II, LLC v. Polypap Sarl*, 316 F. Supp. 2d. 693, 710 (S.D. Ill. 2004) ("The PTO examiner is presumed to have read the brochure in its entirety [because] the brochure is listed on the face of the '856 patent and initialed with the . . . "IDS" submitted during the prosecution of the '532 patent, the Court finds that the PTO examiner specifically reviewed the document and found that it failed to render either application unpatentable.").

It is undisputed that the Examiner who reviewed the '982 patent application initialed the IDS, indicating that he considered the Fukuda EPO application. Further, since the Fukuda EPO application and the U.S. Fukuda patent are virtually identical -- a fact not disputed by Surgical Solutions -- the U.S. Fukuda patent would have been cumulative art, which is not even required

---

[3] Although she does not identify how many is "many," it would be reasonable to infer that these other examiners that she observed were also in the computer and electrical engineering area.

[4] Further, the version of MPEP § 609 that she quotes (Chun Decl. ¶ 7) was not in effect at the time of the prosecution of the '982 patent, but is from a version that issued many years later. The version of MPEP § 609 that was in effect in 1997 is included as S&N Ex. W. As can be seen from that Exhibit, the paragraph quoted by Ms. Chun was not in effect during the prosecution of the '982 patent.

6

to be cited to the PTO. *See id.* ("Since the Charrin patent application was merely cumulative of the art of record in the prosecution . . . neither Plaintiffs nor their patent counsel were under any obligation whatsoever to cite it."); *cf. Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.*, 45 F.3d 1550, 1557–59 (Fed. Cir. 1995).

Thus, the device discussed in the U.S. Fukuda patent was indeed considered by the PTO during prosecution of the '982 patent, and Surgical Solutions' attempt to argue the contrary should be rejected.

### 2. Fukuda Does Not Anticipate the Asserted Claims

The U.S. Fukuda patent does not anticipate the asserted claims of the '982 patent. Most importantly, Surgical Solutions does not compare the Fukuda reference against the asserted claims, but rather against the preferred embodiment disclosed in the specification. This is improper. The proper analysis is to compare the claims themselves against the prior art. *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000).

Specifically, the asserted claims of the '982 patent require the first jaw alone to support the needle. (S&N Ex. A at claims 1, 19 and 20). Moreover, Surgical Solutions has mischaracterized the hole 60 in the '982 figures. That hole is merely a space into which the needle tip can fit, and does not support the needle. (S&N Ex. A at Figs. 3 and 4). This is further supported by the specification, which discloses that "needle tip 38 can slide from retaining hole 60 and along channel 62" when the jaws are open, indicating that the hole is larger than the needle. As the Court can clearly see, the retaining hole 60 is provided for clearance when the needle is in its stowed position.

Fukuda, on the other hand, clearly discloses that the needle will fall out if not retained by the second jaw member – "[w]hen the shafts 1,2 are made closed while the needle with thread is contained in container 6…the container 6 prevents the needle with thread 3 from dropping out…" (S&N Ex. O, col. 8, lines 13-17). The asserted claims of the '982 patent would not cover the Fukuda device because the claims require that the needle be supported solely by a single jaw. Thus, the Fukuda references cannot anticipate the '982 patent.

7

## C. The Sevinc Reference

The issues with respect to the German Sevinc patent application are similar to those with the U.S. Fukuda patent, discussed above. As it did with the Fukuda reference, Surgical Solutions relies on a mischaracterization of the '982 specification to argue that the needle need not be supported solely by a single jaw. However, for the reasons discussed above, Surgical Solutions' arguments should be rejected. The claims of the '982 patent all clearly require that the needle solely be supported by a single jaw or member. As Smith & Nephew showed in its Validity Brief (at 21), the Sevinc reference expressly states that both jaws are required to support the needle in the stowed position. Thus, the Sevinc reference cannot anticipate any claim of the '982 patent.

In addition, Surgical Solutions has apparently decided to limit its argument that the Sevinc reference anticipates to only claim 19 of the '982 patent. In its Validity Reply (at 11-12), it limits its discussion to claim 19 and argues that claim 19 does not require the transverse passage alone to support the needle in both the suturing and stowed positions. By doing so, it has obviously overlooked the other claims of the '982 patent which do include that requirement. (See, e.g., claim 1 "passage transverse to the length of the member for supporting the suture needle in a suturing position ... and for supporting the suture needle in a stowed position"). Accordingly, Surgical Solutions should be held to have waived its argument that the Sevinc reference anticipates these other claims.

## III. CONCLUSION

For the foregoing reasons, Smith & Nephew respectfully requests that Surgical Solutions' Motion for Summary Judgment of Invalidity be denied, and that Smith & Nephew's Cross-

Motion for Partial Summary Judgment that the '982 Patent is not Invalid As Anticipated By the Cited References be granted.

Dated: December 7, 2004

Respectfully submitted,

By: _____
Mark J. Hebert (BBO No. 546,712)
Thomas M. Johnston (BBO No 644,689)
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Ruffin B. Cordell
Ahmed J. Davis
FISH & RICHARDSON P.C.
1425 K Street N.W.
Washington, DC 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Attorneys for Plaintiff SMITH & NEPHEW, INC.

I hereby certify that a true copy of the foregoing document was served on counsel for each other party (Mr. Andras and Mr. Ciavarra) by mail and Federal Express on December 7, 2004.

_____

20985735.doc

9